UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT NEW YORK

-------------------------------------------------------------x

GIDEON RAPAPORT,                          :
                                          :          Case No. 1:23-cv-6709 (JGLC)
                      Plaintiff,          :
                                          :
         - against -                      :          ORAL ARGUMENT REQUESTED
                                          :
AJAY SRINIVASAN IYER, ZACHARY             :
GEORGE GARRETT, and RICHARD ALLEN         :
EPSTEIN,                                  :
                                          :
                      Defendants.         :
-------------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION BY DEFENDANT RICHARD A. EPSTEIN TO DISMISS
## <u>PLAINTIFF'S FIRST AMENDED COMPLAINT</u>

Jeremy Chase
Nimra H. Azmi
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 21st Floor
New York, NY 10020-1104
Phone:      (212) 489-8230
Fax:        (212) 489-8340
jeremychase@dwt.com
nimraazmi@dwt.com

*Attorneys for Richard A. Epstein*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................1

FACTUAL & PROCEDURAL BACKGROUND .................................................................2

    A.    The Parties ...............................................................................................2

    B.    Plaintiff's Kirkland & Ellis Summer Associateship .................................2

    C.    The Complaint & Amended Complaint .................................................5

ARGUMENT .......................................................................................................................5

I.    Plaintiff's Claims Are Barred by Section 230 of the Communications Decency Act .........5

II.    The Defamation Claim Must Be Dismissed. ....................................................7

    A.    Plaintiff Has Not Adequately Pled Any Allegedly Defamatory Statements Made by Professor Epstein ...................................................8

    B.    Plaintiff Fails to Plead Professor Epstein Acted with Actual Malice. ..................10

        1.    The Actual Malice Standard of Fault Applies to the Defamation Claim Against Professor Epstein .................................................10

        2.    Plaintiff Has Failed to Plausibly Plead Actual Malice.............................11

III.    Plaintiff's Other Tort Claims Are Duplicative And Meritless.........................................14

    A.    Plaintiff's Claims for IIED, Tortious Interference, Injurious Falsehood, and False Light Are Duplicative of the Defective Libel Claim...................................14

    B.    Plaintiff's IIED Claim Fails ...................................................................15

    C.    Plaintiff's Tortious Interference Claim Fails .......................................17

    D.    Plaintiff's Injurious Falsehood Claim Fails .........................................19

    E.    New York Does Not Recognize the Tort of False Light. ....................21

IV.    Plaintiff's Fraud Claim Fails..........................................................................23

V.    The Civil Conspiracy Claim Fails..................................................................24

CONCLUSION.....................................................................................................................25

## **TABLE OF AUTHORITIES**

**Page**

**Federal Cases**

*Adelson v. Harris,*
    973 F. Supp. 2d 467 (S.D.N.Y. 2013).......................................................................................8

*ADYB Engineered for Life, Inc. v. Edan Admin. Servs. Ltd.,*
    2021 WL 1177532 (S.D.N.Y. Mar. 29, 2021) ...........................................................................9

*Almeida v. Amazon.com, Inc.,*
    456 F.3d 1316 (11th Cir. 2006) ...............................................................................................6

*Anyanwu v. Columbia Broad. Sys., Inc.,*
    887 F. Supp. 690 (S.D.N.Y. 1995) .........................................................................................14

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)..............................................................................................................5, 12

*Baiqiao Tang v. Wengui Guo,*
    2019 WL 6169940 (S.D.N.Y. Nov. 20, 2019) ...................................................................15, 21

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)..............................................................................................................5, 12

*Berwick v. New World Network Int'l, Ltd.,*
    2007 WL 949767 (S.D.N.Y. Mar. 28, 2007) ...............................................................8, 21, 22

*Biro v. Condé Nast,*
    963 F. Supp. 2d 255 (S.D.N.Y. 2013), *aff'd*, 807 F.3d 541 (2d Cir. 2015) ......................12, 20

*Bobal v. Rensselaer Polytechnic Inst.,*
    916 F.2d 759 (2d Cir. 1990).....................................................................................................9

*BYD Co. v. VICE Media LLC,*
    2022 WL 598973 (2d Cir. Mar. 1, 2022) ...........................................................................12, 13

*Carlson v. Geneva City Sch. Dist.,*
    679 F. Supp. 2d 355 (W.D.N.Y. 2010) ...................................................................................17

*Chen Gang v. Zhao Zhizhen,*
    799 F. App'x 16 (2d Cir. 2020) ..............................................................................................25

*Chord Assocs. v. Protech 2003-D, LLC,*
    2010 WL 3780380 (E.D.N.Y. Sept. 21, 2010) .......................................................................15

*Conboy v. AT&T Corp.*,
  241 F.3d 242 (2d Cir. 2001) .......................................................................16

*Conte v. Newsday, Inc.*,
  703 F. Supp. 2d 126 (E.D.N.Y. 2010) ...............................................15, 20

*Ctr. for Med. Progress v. Planned Parenthood Fed'n of Am.*,
  551 F. Supp. 3d 320 (S.D.N.Y. 2021) .........................................................8

*Daleiden v . Planned Parenthood Fed'n of Am.*,
  2022 WL 1013982 (2d Cir. Apr. 5, 2022) ...................................................8

*Daniels v. St. Luke's-Roosevelt Hosp. Ctr.*,
  2003 WL 22410623 (S.D.N.Y. Oct. 21, 2003) ....................................20, 21

*Dayter v. Ploof*, 2022 WL 18399473 (N.D.N.Y. Dec. 19, 2022),
  *R. & R. adopted*, 2023 WL 346241 (N.D.N.Y. Jan. 19, 2023) ..................9

*Deaton v. Napoli*,
  2019 WL 4736722 (E.D.N.Y. Sept. 27, 2019) .........................................18

*DeIuliis v. Engel*,
  2021 WL 4443145 (S.D.N.Y. Sept. 27, 2021) ..........................................22

*Diario El Pais, S.L. v. Nielsen Co. (U.S.), LLC*,
  2008 WL 4833012 (S.D.N.Y. Nov. 6, 2008) ............................................20

*DiFowlco v. MSNBC Cable L.L.C.*,
  622 F.3d 104 (2d Cir. 2010) .............................................................18, 19

*Evliyaoglu Tekstil A.S. v. Turko Textile LLC*,
  2020 WL 7774377 (S.D.N.Y. Dec. 30, 2020) .........................................18

*Franco v. Diaz*,
  51 F. Supp. 3d 235 (E.D.N.Y. 2014) ......................................................14

*Garrison v. Louisiana*,
  379 U.S. 64 (1964) ...................................................................................12

*Germain v. M & T Bank Corp.*,
  111 F. Supp. 3d 506 (S.D.N.Y. 2015) .....................................................10

*Gertz v. Robert Welch, Inc.*,
  418 U.S. 323 (1974) .................................................................................13

*Gibson v. Craigslist, Inc.*,
  2009 WL 1704355 (S.D.N.Y. June 15, 2009) ............................................6

*Hengjun Chao v. Mount Sinai Hosp.*,
   476 F. App'x 892 (2d Cir. 2012) ......................................................14

*Henneberry v. Sumitomo Corp. of Am.*,
   415 F. Supp. 2d 423 (S.D.N.Y. 2006).............................................19

*Hodges v. Lutwin*,
   595 F. Supp. 3d 12 (S.D.N.Y. 2022), *aff'd*,
   2023 WL 3362836 (2d Cir. May 11, 2023) ................................11, 13

*Hollander v. Pressreader, Inc.*,
   2020 WL 2836189 (S.D.N.Y. May 30, 2020) ..............................19, 20

*Ithaca Cap. Invs. I S.A. v. Trump Panama Hotel Mgmt. LLC*,
   450 F. Supp. 3d 358 (S.D.N.Y. 2020)..............................................24

*James v. DeGrandis*,
   138 F. Supp. 2d 402 (W.D.N.Y. 2001) .............................................17

*Just Play, LLC v. A.S. Plastic Toys Co.*,
   2022 WL 580876 (S.D.N.Y. Feb. 25, 2022)......................................18

*Kesner v. Dow Jones & Co.*,
   515 F. Supp. 3d 149 (S.D.N.Y. 2021).................................................8

*Kinsey v. N.Y. Times Co.*,
   991 F.3d 171 (2d Cir. 2021)...............................................................21

*Knelman v. Middlebury Coll.*,
   570 F. App'x 66 (2d Cir. 2014) ........................................................23

*Leung v. New York Univ.*, 2010 WL 1372541 (S.D.N.Y. Mar. 29, 2010),
   *affirmed in part on relevant grounds*, 580 F. App'x 38 (2d Cir. 2014)....................8

*Levin v. McPhee*,
   917 F. Supp. 230 (S.D.N.Y. 1996), *aff'd*, 119 F.3d 189 (2d Cir. 1997) ................14

*Loeb v. New Times Commc'ns Corp.*,
   497 F. Supp. 85 (S.D.N.Y. 1980) .....................................................13

*Marino v. Westfield Bd. of Educ.*,
   2017 WL 216691 (D.N.J. Jan. 18, 2017) ..........................................23

*McCollum v. Baldwin*,
   688 F. Supp. 3d 117 (S.D.N.Y. 2023)...............................................13

*McDougal v. Fox News Network, LLC*,
   489 F. Supp. 3d 174 (S.D.N.Y. 2020)...............................................12

*Mitan v. A. Neumann & Assocs.*,
  2010 WL 4782771 (D.N.J. Nov. 17, 2010) ...........................................................7

*Monge v. Univ. of Pa.*,
  2023 WL 2471181 (E.D. Pa. Mar. 10, 2023) .........................................................6

*Morin v. Fordham Univ.*,
  2022 WL 4586042 (S.D.N.Y. Sept. 28, 2022) ......................................................17

*N.Y. Times Co. v. Sullivan*,
  376 U.S. 254 (1964) ........................................................................................10, 12

*Navarra v. Marlborough Gallery, Inc.*,
  2012 WL 13210272 (S.D.N.Y. Apr. 4, 2012) ......................................................20

*Neal v. Asta Funding, Inc.*,
  2014 WL 3887760 (S.D.N.Y. June 17, 2014) .........................................................9

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*,
  591 F.3d 250 (4th Cir. 2009) ................................................................................6

*Nielsen Co. (U.S.), LLC v. Success Sys., Inc.*,
  112 F. Supp. 3d 83 (S.D.N.Y. 2015) ...................................................................24

*Nova v. Smith*,
  2019 WL 2636817 (N.D.N.Y. June 27, 2019) ......................................................17

*Novins v. Cannon*,
  2010 WL 1688695 (D.N.J. Apr. 27, 2010) .............................................................7

*O'Brien v. Alexander*, 898 F. Supp. 162 (S.D.N.Y. 1995),
  *aff'd in part and rev'd in part on other grounds*,
  101 F.3d 1479 (2d Cir. 1996) .............................................................................14

*Ortiz v. Ardolino*,
  2021 WL 2075714 (E.D.N.Y. May 21, 2021) .......................................................17

*Palin v. N.Y. Times Co.*,
  510 F. Supp. 3d 21 (S.D.N.Y. 2020) ...................................................................10

*Pedraglio Loli v. Citibank, Inc.*,
  173 F.3d 845 (2d Cir. 1999) ...............................................................................21

*Peters v. LifeLock Inc.*,
  2014 WL 12544495 (D. Ariz. Sept. 19, 2014) .......................................................7

*Printers II, Inc. v. Pros. Publ'g, Inc.*,
  784 F.2d 141 (2d Cir. 1986) .................................................................................9

*Restis v. Am. Coal. Against Nuclear Iran, Inc.*,
    53 F. Supp. 3d 705 (S.D.N.Y. 2014)........................................................................................14

*Sawyer v. Musumeci*, 1997 WL 381798 (S.D.N.Y. July 9, 1997), *aff'd*,
    165 F.3d 14 (2d Cir. 1998)....................................................................................................8

*Schneider v. Pearson Educ., Inc.*,
    2013 WL 1386968 (S.D.N.Y. Apr. 5, 2013)........................................................................24

*Snyder v. Phelps*,
    562 U.S. 443 (2011)..............................................................................................................16

*St. Amant v. Thompson*,
    390 U.S. 727 (1968)........................................................................................................12, 13

*Strujan v. Teachers Coll. Columbia Univ.*,
    2010 WL 3466251 (S.D.N.Y. Sept. 3, 2010)......................................................................25

*Tannerite Sports, LLC v. NBCUniversal News Grp.*,
    864 F.3d 236 (2d Cir. 2017)..................................................................................................8

*Time, Inc. v. Hill*,
    385 U.S. 374 (1967)..............................................................................................................23

*Universal Commc'n Sys., Inc. v. Lycos, Inc.*,
    478 F.3d 413 (1st Cir. 2007)..................................................................................................6

*Wexler v. Allegion (UK) Ltd.*,
    2018 WL 1626346 (S.D.N.Y. Mar. 30, 2018) ....................................................................14

*Wilson v. Tarricone*, 2013 WL 12084504 (S.D.N.Y. Sept. 26, 2013),
    *aff'd*, 563 F. App'x 864 (2d Cir. 2014)................................................................................19

*Y.D. v. New York City Dep't of Educ.*,
    2016 WL 698139 (S.D.N.Y. Feb. 19, 2016)........................................................................16

*Zeran v. Am. Online, Inc.*,
    129 F.3d 327 (4th Cir. 1997) ................................................................................................6

**State Cases**

*Anas v. Brown*,
    269 A.D.2d 761 (4th Dep't 2000).........................................................................................11

*Banaian v. Bascom*,
    281 A.3d 975 (N.H. 2022)......................................................................................................7

*Barns & Farms Realty, LLC v. Novelli*,
    82 A.D.3d 689 (2d Dep't 2011)............................................................................................25

*Barrett v. Rosenthal*,
   146 P.3d 510 (Cal. 2006) .........................................................................7

*Bd. of Managers of Chelsea 19 Condo. v. Chelsea 19 Assocs.*,
   73 A.D.3d 581 (1st Dep't 2010) .............................................................23

*Brancaleone v. Mesagna*,
   290 A.D.2d 467 (2d Dep't 2002) ............................................................14

*Carvel Corp. v. Noonan*,
   3 N.Y.3d 182 (2004) ...............................................................................19

*Freihofer v. Hearst Corp.*,
   65 N.Y.2d 135 (1985) .............................................................................16

*G.D. v. Kenny*,
   15 A.3d 300 (N.J. 2011) ..........................................................................22

*Hoyt v. Kaplan*,
   263 A.D.2d 918 (3d Dep't 1999) ............................................................11

*McGill v. Parker*,
   179 A.D.2d 98 (1st Dep't 1992) .............................................................25

*Phan v. Pham*,
   105 Cal. Rptr. 3d 791 (Cal. App. 4th 2010) .............................................7

*Pitcock v. Kasowitz, Benson, Torres & Friedman, LLP*,
   27 Misc. 3d 1238(A), 910 N.Y.S.2d 765
   (Sup. Ct. N.Y. Cnty. May 28, 2010) .......................................................20

*Pravda v. Cnty. of Saratoga*,
   224 A.D.2d 764 (3d Dep't 1996) ............................................................25

*Shuman v. N.Y. Mag.*,
   211 A.D.3d 558 (1st Dep't 2022) ...........................................................11

*Sutton v. Hafner Valuation Grp., Inc.*,
   115 A.D.3d 1039 (3d Dep't 2014) ..........................................................23

*Sw. Invs. Grp., LLC v. JH Portfolio Debt Equities, LLC*,
   169 A.D.3d 1510 (4th Dep't 2019) .........................................................24

*Williams v. MLB Network, Inc.*,
   2019 WL 1222954 (N.J. Super. Ct. App. Div. Mar. 14, 2019)...............23

**Constitutional Provisions**

U.S. Const. amend. I ........................................................................8, 16

**Federal Statutes**

47 U.S.C. § 230.................................................................................................1, 5, 6, 7

47 U.S.C. § 230(c)(1).............................................................................................5, 6

47 U.S.C. § 230(f)(2)................................................................................................6

**State Statutes**

N.Y. Civil Rights Law § 76-a....................................................................................10

N.Y. Civil Rights Law § 76-a(1)(a)...........................................................................10

N.Y. Civil Rights Law § 76-a(1)(d)...........................................................................10

N.Y. Civil Rights Law § 76-a(2)................................................................................10

**Rules**

Fed. R. Civ. P. 12(b)(6)..............................................................................1, 5, 12, 26

Defendant Professor Richard A. Epstein ("Professor Epstein") respectfully submits this memorandum of law in support of his motion pursuant to Fed. R. Civ. P. 12(b)(6) for an order dismissing with prejudice the First Amended Complaint ("FAC").

## PRELIMINARY STATEMENT

Plaintiff Gideon Rapaport, a recent graduate of New York University School of Law, brings this lawsuit in an effort to blame someone – *anyone* – for his unrealized career ambitions. Plaintiff believed himself entitled to nothing less than a U.S. Supreme Court clerkship and had cultivated Professor Epstein to clear that starry path for him. Instead, Plaintiff found his summer associate position at Kirkland & Ellis LLP cut short with rumors circulating that he had been fired for sexual harassment. Those rumors were ultimately dispelled, and Plaintiff attended a prestigious summer fellowship with the Federalist Society, graduated from law school, and passed the New York bar exam. But instead of completing the admissions process to the New York bar and finding new employment, Plaintiff has filed this kitchen sink First Amended Complaint claiming that Defendants have derailed his legal career via a purported grand conspiracy to defame him. At least with respect to Professor Epstein, Plaintiff's own allegations fatally undermine each of his claims, and each therefore should be dismissed.

***First***, Plaintiff's claims arising from Professor Epstein forwarding emails are barred by Section 230 of the Communications Decency Act. ***Second***, Plaintiff's defamation claim must be dismissed because he has failed to specify Professor Epstein's allegedly libelous statements and he has not alleged any facts that, if true, could establish Professor Epstein acted with actual malice (and indeed affirmatively pleads that he did not). ***Third,*** Plaintiff's tagalong tort claims for intentional infliction of emotional distress ("IIED"), tortious interference with prospective economic relations ("tortious interference"), injurious falsehood, and false light must be dismissed as duplicative of his defective defamation claim and because he cannot make out the

basic elements of those claims. **Fourth**, Plaintiff's fraud claim fails as a matter of law because Professor Epstein owed him no fiduciary duty and he has not pled any pecuniary loss. **Fifth**, Plaintiff's civil conspiracy claim fails because New York does not recognize a claim for "conspiracy to defame" and he has not pled any agreement between the alleged co-conspirators. Accordingly, Plaintiff's FAC must be dismissed with prejudice.

## FACTUAL & PROCEDURAL BACKGROUND[1]

### A.    The Parties

Plaintiff Gideon Rapaport is a graduate of the New York University School of Law ("NYU Law") and a former summer associate at Kirkland & Ellis LLP ("K&E") in New York. FAC ¶ 1.  He was a student of Professor Epstein, an NYU Law professor and faculty advisor to NYU Law's Federalist Society chapter. *Id.* ¶ 6.  Defendants Ajay Iyer and Zachary Garrett are also NYU Law graduates and former presidents of the NYU Law Federalist Society. *Id.* ¶¶ 2, 4. Iyer was a summer associate at K&E with Plaintiff. *Id.* ¶ 2.

### B.    Plaintiff's Kirkland & Ellis Summer Associateship

Professor Epstein is a legal scholar, member of the Federalist Society, and mentor to NYU Law students. *Id.* ¶ 6.  In that role, he has built a reputation as a respected recommender of law students for judicial clerkships.  *Id.* ¶ 19.  Seeking such a recommendation for himself, Plaintiff strove to cultivate a relationship with Professor Epstein and sought to get Professor Epstein to "take[] a positive interest in assisting plaintiff with his career."  *Id.* ¶¶ 72, 23. Professor Epstein ultimately recommended Plaintiff for the James Kent Academy, a Federalist Society law student summer program.  *Id.* ¶ 20.  Plaintiff believed he was entitled to a "promised—and definite—appellate clerkship, and possibly one with the U.S. Supreme Court."

---

[1] The allegations in the FAC are taken as true solely for purposes of this Motion to Dismiss.

*Id.* ¶ 13.

In summer 2022, Plaintiff was a summer associate at K&E, but his time there was cut short for reasons not specified in the FAC. *Id.* ¶¶ 55-57. After Plaintiff left K&E, Plaintiff claims Iyer digitally manipulated a photograph of the guard desk in K&E's lobby to suggest a sign was put up barring Plaintiff from entering the building. *Id.* ¶¶ 35-36. Iyer allegedly published this altered photograph on Reddit.com and Top-Law-Schools.com, where users speculated Plaintiff had been fired for sexually harassing other K&E employees and/or making racist statements in the office. *Id.* ¶ 37; *id.* Ex 3. Plaintiff alleges Garrett then sent unspecified "online materials" to Peter Redpath and Kate Alcantara of the Federalist Society. *Id.* ¶ 42.

Garrett also is alleged to have presented Professor Epstein with "the fake image and defamatory statements," at the same time he sent it to the Federalist Society. *Id.* ¶ 45. Plaintiff pleads that Professor Epstein "believ[ed] the authenticity of the faked images and veracity of the defamatory claims," and allegedly became concerned about the impact of Plaintiff's firing on his own credibility as his recommender. *Id.* ¶¶ 45, 17. Shortly thereafter, Plaintiff alleges Iyer faked a second photograph of the K&E guard desk depicting the poster with Plaintiff's name and photograph, and sent it to Professor Epstein. *Id.* ¶ 50. Iyer and Garrett then attempted to persuade Professor Epstein—who, per the FAC, again believed this photograph to be authentic, *id*. ¶ 17—to become "an unwitting instrument of their civil conspiracy." *Id*. ¶ 50. Per the FAC, believing the claims to be authentic, Professor Epstein "forwarded the [unspecified] defamatory statements based upon the fake photographs and in the email" to Otis of the Federalist Society. *Id*. ¶ 63.

On August 2, 2022, Garrett allegedly emailed Redpath and Alcantara disclosing that he believed that Plaintiff was "fired and banned from entering the building" for "sexually harassing

a practice assistant or an attorney." *Id.* ¶¶ 55-56.  Garrett claimed he had "spoke[n] with Richard Epstein about this situation" and Professor Epstein was "understandably very upset by the news and feels that Lee Otis should be made aware, since Gideon is going to be participating in the James Kent Fellowship, for which Professor Epstein wrote Gideon a (complicated) letter of recommendation." *Id.* ¶ 60; *id.* Ex. C.  Otis investigated the claims against Plaintiff, *id.* ¶¶ 64-65, 68-69, and permitted Plaintiff to participate in the Fellowship.  *Id.* ¶ 70.

After Plaintiff completed the Fellowship, Plaintiff alleges Professor Epstein informed him that he could no longer recommend Plaintiff for a clerkship, he would be removed as a Senior Articles Editor from an NYU law journal, and "he will not associate with the plaintiff anymore, in order to protect his own reputation and his ability to recommend and place students in the future." *Id.* ¶ 71.  Plaintiff claims Professor Epstein did not disclose during this telephone call that Garrett and Iyer told him of Plaintiff's purported termination and sexual misconduct allegations nor that Professor Epstein sent "materials" to the Federalist Society.  *Id.* ¶ 79.

On July 28, 2023, in a gesture of good will, Professor Epstein invited Plaintiff to lunch. *Id.* ¶ 80.  Plaintiff capitalized on this opportunity to demand Professor Epstein review his draft *pro se* complaint in this action.  *Id.*  Professor Epstein declined and informed Plaintiff he did not want to be involved.  *Id.* ¶ 83.  In response, Plaintiff threatened Professor Epstein that "it was too late" to disclaim involvement.  *Id.*  Not taking Professor Epstein's refusal as an answer, Plaintiff "pressed" him again via email.  *Id.* ¶ 84.  In response, Professor Epstein informed Plaintiff that he had sent "compiled materials to Otis."  *Id.*  Professor Epstein again advised Plaintiff that pursuing this action further would have a deleterious impact on his career.  *Id.*

Plaintiff has since graduated from NYU Law and passed the New York State Bar Exam, but has refused to seek admission to the New York State Bar.  *Id.* ¶ 14.

### C.    The Complaint & Amended Complaint

Plaintiff filed the original complaint in this action *pro se* on July 28, 2023 against three John Doe defendants, identified as a Reddit.com user, a Top-Law-Schools.com user, and a current or former NYU Law student.  Dkt. No. 1.  The original complaint brought claims for defamation, defamation by implication, defamation *per se*, false light invasion of privacy, and IIED.  *Id.*  Plaintiff represented by counsel filed the amended and operative complaint on May 24, 2024, adding Professor Epstein as a defendant along with Iyer and Garrett. Dkt. No. 38. Against Professor Epstein, Plaintiff brings claims for defamation, injurious falsehood, IIED, false light invasion of privacy, civil conspiracy, fraud, and tortious interference.  *Id.*  Each of these claims must be dismissed.

## ARGUMENT

The Court should dismiss Plaintiff's FAC with prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  When ruling on a Rule 12(b)(6) dismissal motion, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor – but the Court is not required to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter … to 'state a claim to relief that is plausible on its face.'"  *Id*. (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Plaintiff's allegations cannot satisfy this standard.

### I.    PLAINTIFF'S CLAIMS ARE BARRED BY SECTION 230 OF THE COMMUNICATIONS DECENCY ACT

Section 230 of the Communications Decency Act of 1996 ("Section 230"), 47 U.S.C. § 230, bars Plaintiff's defamation claim against Professor Epstein premised on his forwarding defamatory statements provided by Iyer and Garrett to others via email.  Section 230 provides

that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider," 47 U.S.C. § 230(c)(1), and that "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section," *id.* § 230(e)(3). Together, these provisions ensure that interactive computer service providers and users are immune from liability for allegedly unlawful or harmful material created by third parties.[2] Importantly, Section 230 grants "*immunity from suit* rather than a mere defense to liability." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 254-55 (4th Cir. 2009) (citation omitted). Courts routinely apply Section 230 on dismissal motions—because immunity would be "effectively lost" if defendants were subject to burdensome and costly discovery and litigation. *Id.*[3]

Section 230 bars suit where (1) the defendant is a user or provider of an interactive computer service; (2) the information at issue was provided by another information content provider; and (3) the claim seeks to treat the defendant as a publisher or speaker of that third party content. *Gibson*, 2009 WL 1704355, at *3. All three elements are present here. Email is an "interactive computer service" and the original authors of the forwarded email and materials are "information content providers" because they allegedly created the content and published it to Professor Epstein via email. 47 U.S.C. § 230(f)(2), (3). Therefore, Professor Epstein, as the user of an interactive computer service, cannot be "treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1).

The many courts interpreting Section 230 in the context of email forwarding have held that Section 230's immunity from suit applies to this precise situation. *See*, *e.g.*, *Monge v. Univ.*

---

[2] "[C]ourts that have addressed these issues have generally interpreted Section 230 immunity broadly." *Universal Commc'n Sys., Inc. v. Lycos, Inc.*, 478 F.3d 413, 418 (1st Cir. 2007); *see also*, *e.g.*, *Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1321 (11th Cir. 2006); *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330-31 (4th Cir. 1997).

[3] *See also*, *e.g.*, *Gibson v. Craigslist, Inc.*, 2009 WL 1704355 (S.D.N.Y. June 15, 2009).

*of Pa.*, 2023 WL 2471181, at *2 (E.D. Pa. Mar. 10, 2023) (dismissing defamation, false light, and aiding and abetting claims based on email forwarding on Section 230 grounds; "Courts analyzing and applying the CDA have consistently held that distributing, sharing, and forwarding content created and/or developed by a third party is conduct immunized by the CDA."); *Novins v. Cannon*, 2010 WL 1688695, at *2-3 (D.N.J. Apr. 27, 2010) (granting dismissal motion holding Section 230 immunity extends to individuals who republish via the Internet alleged defamatory statements originally made by others in email and internet postings); *Peters v. LifeLock Inc.*, 2014 WL 12544495, at *3 (D. Ariz. Sept. 19, 2014) (dismissing defamation claim at pleadings stage because individual cannot be liable for defamation based on forwarding of defamatory email because of Section 230's liability shield ); *Mitan v. A. Neumann & Assocs.*, 2010 WL 4782771 (D.N.J. Nov. 17, 2010) (defamation claim, premised on forwarding newsletter containing defamatory information preempted by the Section 230); *Phan v. Pham*, 105 Cal. Rptr. 3d 791 (Cal. App. 4th 2010) (forwarding defamatory email—and even adding commentary to it—was immune from liability under Section 230); *Barrett v. Rosenthal*, 146 P.3d 510, 529 (Cal. 2006) (individual who forwards email cannot be liable for defamation because of Section 230 immunity); *cf. Banaian v. Bascom*, 281 A.3d 975, 980 (N.H. 2022) ("That individual users are immunized [under Section 230] from claims of defamation for retweeting content that they did not create is evident from the statutory language.").  Just like the defendants in these myriad cases, Professor Epstein is immune from liability for defamation, false light, IIED, injurious falsehood and any other claim premised on his having allegedly forwarded emails received from others. FAC ¶¶ 63, 84.  Plaintiff's claims fail as a matter of law and should be dismissed.

## II.    THE DEFAMATION CLAIM MUST BE DISMISSED.

Even if the Court were to hold that Section 230 does not apply—it does—Plaintiff's

defamation claim against Professor Epstein is facially deficient and must be dismissed.  To state a defamation claim, Plaintiff must plead and prove "(1) a written…defamatory statement of and concerning the plaintiff, (2) publication to a third party, (3) fault, (4) falsity of the defamatory statement, and (5) special damages or per se actionability."  *Kesner v. Dow Jones & Co.*, 515 F. Supp. 3d 149, 169-70 (S.D.N.Y. 2021) (citation omitted).  Plaintiff has not and cannot satisfy these elements.  Specifically, the FAC fails to identify the allegedly defamatory statements by Professor Epstein.  It also not only fails to allege facts that, if true, could establish the statements were made with actual malice, it affirmatively pleads facts precluding that finding.[4]

### A.    Plaintiff Has Not Adequately Pled Any Allegedly Defamatory Statements Made by Professor Epstein

Plaintiff has not stated a defamation claim against Professor Epstein because he has not pled the content of the allegedly defamatory statements with the requisite specificity.  Federal courts "require that the alleged defamatory statements be pleaded with sufficient specificity to put the defendants on notice."  *Berwick v. New World Network Int'l, Ltd.*, 2007 WL 949767, at *11 (S.D.N.Y. Mar. 28, 2007).  "Vagueness as to the complained-of conduct is particularly inappropriate when pleading a defamation claim" and "the complaint [must] afford defendant sufficient notice of the communications complained of to enable him to defend himself."  *Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 251 (2d Cir. 2017) (citation omitted).  To satisfy such notice, plaintiff must "provide a detailed description of the defamatory statements."  *Leung v. New York Univ.*, 2010 WL 1372541, at *8 (S.D.N.Y. Mar. 29, 2010), *affirmed in part on relevant grounds*, 580 F. App'x 38 (2d Cir. 2014).  A defamation claim is too

---

[4] Courts in the Southern District favor early dismissal of defamation actions like this one, recognizing that "[b]ecause a defamation suit may be as chilling to the exercise of First Amendment freedoms as fear of the outcome of the lawsuit itself, courts should, where possible, resolve defamation actions at the pleading stage." *Ctr. for Med. Progress v. Planned Parenthood Fed'n of Am.*, 551 F. Supp. 3d 320, 325-26 (S.D.N.Y. 2021) (quoting *Adelson v. Harris*, 973 F. Supp. 2d 467, 481 (S.D.N.Y. 2013)), *aff'd sub nom. Daleiden v . Planned Parenthood Fed'n of Am.*, 2022 WL 1013982 (2d Cir. Apr. 5, 2022).

conclusory to survive where "the complaint does not even identify the statements." *Sawyer v. Musumeci*, 1997 WL 381798, at *2 (S.D.N.Y. July 9, 1997), *aff'd*, 165 F.3d 14 (2d Cir. 1998).

Plaintiff offers only vague allegations that Professor Epstein "forwarded the defamatory statements based upon the fake photographs [sic] and in the email to Lee Otis," FAC ¶ 63, and that he "sent the compiled materials to Otis," *id.* ¶ 84. These threadbare allegations—devoid of specific details identifying *what* allegedly defamatory statements Professor Epstein sent or when he sent them are not enough to put Professor Epstein on notice of the alleged statements. *See*, *e.g.*, *Bobal v. Rensselaer Polytechnic Inst.*, 916 F.2d 759, 763 (2d Cir. 1990) (affirming dismissal of defamation claim where plaintiff failed to "plead adequately the actual words spoken").

*ADYB Engineered for Life, Inc. v. Edan Admin. Servs. Ltd.* is instructive. There, the court rejected similarly bare pleadings where the plaintiff alleged the defendant sent an email "falsely accusing [plaintiff] of fraudulent behavior, lying, and dishonesty" but offered no "specific details regarding such accusations." 2021 WL 1177532, at *25 (S.D.N.Y. Mar. 29, 2021). The court concluded that these barebones allegations were "not sufficiently particularized to sustain a claim for libel." *Id.*; *see also Dayter v. Ploof*, 2022 WL 18399473, at *3 (N.D.N.Y. Dec. 19, 2022), *R. & R. adopted*, 2023 WL 346241 (N.D.N.Y. Jan. 19, 2023) (dismissing libel claim where plaintiff "has not alleged a specific statement made by Defendant").[5] Plaintiff's allegations are even *less* illuminating than the flawed allegations in *ADYB*, claiming only that Professor Epstein "forwarded the defamatory statements" and "sent the compiled materials" to Otis without setting forth what Professor Epstein actually said or when he said it. FAC ¶¶ 63, 84.

---

[5] To the extent Plaintiff claims that his defamation claim is based on Professor Epstein allegedly telling "others" that "plaintiff was frequently absent from his classes," FAC ¶ 88, this claim fails on two additional grounds. **First**, the very next sentence of that paragraph acknowledges the truth of this statement. *Id.* (admitting Plaintiff was "occasionally absent" from Professor Epstein's class); *see Printers II, Inc. v. Pros. Publ'g, Inc.*, 784 F.2d 141, 146 (2d Cir. 1986) ("substantial truth" – not literal truth – is all that is required to defeat defamation claim). **Second**, Plaintiff fails to identify with specificity to *whom* this statement was made, rendering it defective. *See Neal v. Asta Funding, Inc.*, 2014 WL 3887760, at *3 (S.D.N.Y. June 17, 2014) ("complaint must at least identify … the third parties to whom the [defamatory] statements were published") (citation omitted).

Because Plaintiff has failed to plead the content of Professor Epstein's allegedly defamatory statements with any specificity, his defamation claim must be dismissed.[6]

### B.     Plaintiff Fails to Plead Professor Epstein Acted with Actual Malice.

Plaintiff's defamation claim also fails because he has not pled facts that if true could demonstrate that Professor Epstein acted with actual malice, *i.e.*, "with knowledge of its falsity or with reckless disregard of whether it was false."  N.Y. Civ. Rights Law § 76-a(2); *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964).  Plaintiff is subject to the actual malice standard both because the alleged communications pertained to an issue of public interest under New York's Anti-SLAPP Law and because the communications themselves are subject to the common interest privilege.  Once applied, the FAC falls far short of meeting this high burden.

### 1.     The Actual Malice Standard of Fault Applies to the Defamation Claim Against Professor Epstein

Initially, there is no question that the actual malice standard applies here.  ***First,*** Plaintiff's claims are subject to New York's Anti-SLAPP law, N.Y. Civil Rights Law § 76-a, which requires the application of the actual malice standard to cases arising from "lawful conduct in furtherance of the exercise of the constitutional right of free speech in connection with an issue of public interest."  N.Y. Civ. Rights Law § 76-a(1)(a); *see Palin v. N.Y. Times Co.*, 510 F. Supp. 3d 21, 25 (S.D.N.Y. 2020) (federal court sitting in diversity must apply Section 76-a because it is substantive rather than procedural).  The term "public interest" under the Anti-SLAPP Law is "construed broadly, and shall mean any subject other than a purely private matter."  N.Y. Civ. Rights Law § 76-a(1)(d).  Alleged sexual harassment at K&E, one of the largest and most prominent law firms in the world (the presumed subject of the statements at

---

[6] To the extent Plaintiff's defamation claim is based upon Epstein's statements *to Plaintiff*, FAC ¶¶ 70-75, it too would necessarily fail because the alleged statements were communicated only to Plaintiff, not a third party. *Germain v. M & T Bank Corp.*, 111 F. Supp. 3d 506, 538 (S.D.N.Y. 2015) ("Under New York defamation law, publication is a term of art. . . . A defamatory writing is not published if it is read by no one but the one defamed.'") (citations omitted).

issue here), is indisputably an issue of public interest. *Cf. Shuman v. N.Y. Mag.*, 211 A.D.3d 558, 558-59 (1st Dep't 2022) ("sexual harassment" is a matter of "significant public concern").

*Second,* the actual malice standard also applies because Professor Epstein's unspecified statements to Otis, a fellow member of the Federalist Society, are subject to the common interest privilege. The common interest privilege "arises when a person makes a good-faith, bona fide communication upon a subject in which he or she has an interest, or a legal, moral or societal interest to speak, and the communication is made to a person with a corresponding interest." *Hoyt v. Kaplan*, 263 A.D.2d 918, 919 (3d Dep't 1999). It is a qualified privilege that requires only that the parties "have such a relation to each other as would support a reasonable ground for supposing an innocent motive for imparting the information." *Anas v. Brown*, 269 A.D.2d 761, 762 (4th Dep't 2000). The privilege may be overcome if plaintiff can show defendant acted with actual or common law malice. *See Hoyt*, 263 A.D.2d at 919.

The privilege shields Professor Epstein's forwarding of the "compiled materials" and allegedly "defamatory statements" to Otis. Both Professor Epstein and Otis, as Federalist Society members, shared a concern about misconduct allegations against its Fellowship recipient, particularly since Professor Epstein had recommended Plaintiff for the program. *See, e.g.*, *Hodges v. Lutwin*, 2023 WL 3362836, at *3 (2d Cir. May 11, 2023) (common interest privilege applied to disclosure of sexual misconduct allegations to other members of educational organization ahead of student program); *Hoyt*, 263 A.D.2d at 919 (common interest privilege applies to statements made to membership of professional organization). Thus, to avoid dismissal, both the Anti-SLAPP Law and common interest privilege require Plaintiff to plausibly allege Professor Epstein acted with actual malice. He has not and cannot do so.

### 2. Plaintiff Has Failed to Plausibly Plead Actual Malice

Plaintiff has failed to meet his burden of pleading facts that could establish the requisite

"actual malice." The U.S. Supreme Court has defined actual malice as publication with "knowledge that [the statement] was false or with reckless disregard of whether it was false or not." *Sullivan*, 376 U.S. at 280. In turn, it has clarified that "reckless disregard" means that the defendant in fact had a "high degree of awareness of . . . probable falsity." *Garrison v. Louisiana*, 379 U.S. 64, 74 (1964). Importantly, actual malice is not measured "by whether a reasonably prudent man would have published, or would have investigated before publishing." *St. Amant v. Thompson*, 390 U.S. 727, 730-31 (1968). Instead, "[t]here must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." *Id.* at 731 (emphasis added).

Following *Twombly* and *Iqbal*, pleading actual malice is a more rigorous burden. To allege actual malice, a plaintiff "must plead 'plausible grounds' to infer actual malice by alleging 'enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of' actual malice." *Biro v. Condé Nast*, 807 F.3d 541, 546 (2d Cir. 2015). Allegations of actual malice that are no more than "pure speculation" and are "supported not by facts but by only conclusory statements" are insufficient grounds to infer actual malice. *McDougal v. Fox News Network, LLC*, 489 F. Supp. 3d 174, 185 (S.D.N.Y. 2020); *see also BYD Co. v. VICE Media LLC*, 2022 WL 598973, at *3 (2d Cir. Mar. 1, 2022) ("naked assertions" or "conclusory statements" of actual malice are insufficient to survive a Rule 12(b)(6) motion). Plaintiff's conclusory and contradictory allegations do not meet this high threshold.

Initially, far from pleading that Professor Epstein knew or was reckless as to the falsity of the statements, the FAC pleads that Professor Epstein was "convinced" "into *believing* the authenticity of the faked images and veracity of the defamatory claims" against Plaintiff. FAC ¶ 17 (emphasis added). Elsewhere, the FAC describes Professor Epstein as an "*unwitting*

12

instrument of their [Iyer's and Garrett's] civil conspiracy." FAC ¶ 50 (emphasis added). These allegations doom Plaintiff's bid to plead actual malice or defamation. *See McCollum v. Baldwin*, 688 F. Supp. 3d 117, 130 (S.D.N.Y. 2023) (finding no actual malice because allegations "suggest[ed] that [defendant] posted what he believed was true").

Even putting aside Plaintiff's allegations that specifically preclude a finding of actual malice, the FAC makes only two deficient attempts at pleading actual malice. ***First***, Plaintiff peppers his FAC with actual malice "buzzwords" that parrot the applicable legal standard and allege in conclusory fashion that Defendants were "willful," "malicious," and "knew" statements to be false without any corresponding facts. *See* FAC ¶¶ 93, 95, 104, 112, 120. Because these allegations are threadbare recitals of the elements of a cause of action, they cannot satisfy his burden to plead actual malice. *See BYD*, 2022 WL 598973, at *3. ***Second***, the FAC alleges, in essence, that Professor Epstein failed to investigate, *i.e.*, he did not contact Plaintiff or K&E to check whether the allegations were true. FAC ¶ 63. But the law is well-settled that actual malice is not "measured by whether a reasonably prudent man … would have investigated before publishing." *St. Amant*, 390 U.S. at 731; *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 332 (1974) ("mere proof of failure to investigate, without more, cannot establish reckless disregard for the truth"). And relatedly, "failure to verify statements with the plaintiff" before publication "do[es] not amount to [actual malice]." *Loeb v. New Times Commc'ns Corp.*, 497 F. Supp. 85, 93 (S.D.N.Y. 1980). The claim must be dismissed because Plaintiff had not pled any non-conclusory facts that, if true, could establish Professor Epstein acted with actual malice.[7]

---

[7] Nor has Plaintiff made more than "conclusory allegations" or "suspicions" to plead common law malice, *i.e.*, "spite or ill will" that could overcome the common interest privilege. *Hodges v. Lutwin*, 595 F. Supp. 3d 12, 20 (S.D.N.Y. 2022) (citations omitted), *aff'd*, 2023 WL 3362836 (2d Cir. May 11, 2023). Common law malice can defeat the common interest privilege "only if it was the one and only cause for the publication." *Id.* (citation omitted). Plaintiff's sole allegation of common law malice is "Defendants either knew, or had reason to know, that many of the allegations of and concerning plaintiff were false, but published them anyway, with constitutional and common-law malice." FAC ¶ 93. These allegations are conclusory, unspecific to any defendant, and contradict other

III.    **PLAINTIFF'S OTHER TORT CLAIMS ARE DUPLICATIVE AND MERITLESS**

A.    **Plaintiff's Claims for IIED, Tortious Interference, Injurious Falsehood, and False Light Are Duplicative of the Defective Libel Claim**

This Court must dismiss Plaintiff's IIED, tortious interference, injurious falsehood, and false light claims as impermissibly duplicative of his flawed defamation claim. "New York law considers claims sounding in tort to be defamation claims . . . where those causes of action seek damages only for injury to reputation, [or] where the entire injury complained of by plaintiff flows from the effect on his reputation." *Hengjun Chao v. Mount Sinai Hosp*., 476 F. App'x 892, 895 (2d Cir. 2012) (dismissing redundant tort claims because they "flow[ed] from the effect on [plaintiff's] reputation" caused by allegedly defamatory statements); *see also Anyanwu v. Columbia Broad. Sys., Inc.*, 887 F. Supp. 690, 693-94 (S.D.N.Y. 1995) ("When additional tort claims are aimed at controlling the same speech that is the basis of a libel claim, courts should not entertain the additional claims under less stringent standards."). Accordingly, where a plaintiff tries to dress up a defamation claim as an IIED,[8] tortious interference,[9] injurious falsehood,[10] or false light[11] cause of action to avoid the stringent pleading standard of a libel

---

allegations of the FAC. Plaintiff makes no allegations that Professor Epstein was motivated by ill will, let alone *solely* by ill-will. Instead, he pleads Professor Epstein was motivated by "protect[ing] his reputation." *Id.* ¶ 71. This precludes a finding of common law malice.

[8] *See Levin v. McPhee*, 917 F. Supp. 230, 242-43 (S.D.N.Y. 1996) (emotional distress claim dismissed as duplicative of libel claim) (applying New York law), *aff'd*, 119 F.3d 189 (2d Cir. 1997); *Franco v. Diaz*, 51 F. Supp. 3d 235, 243-44 (E.D.N.Y. 2014) ("an IIED claim should be dismissed when it falls 'within the ambit' of another tort, such as defamation"); *Brancaleone v. Mesagna*, 290 A.D.2d 467, 468-69, (2d Dep't 2002) (dismissing IIED claim as duplicative, holding "plaintiff may properly recover for the alleged emotional distress caused by the defamatory statements under the cause of action for defamation"); *Anyanwu*, 887 F. Supp. at 693 (emotional distress claims that are "essentially defamation claims should not be entertained").

[9] *See, e.g., Restis v. Am. Coal. Against Nuclear Iran, Inc.*, 53 F. Supp. 3d 705, 726 (S.D.N.Y. 2014) (tortious interference claim foreclosed because "the entire injury pleaded … flows from the effect of the defamatory comments on Plaintiffs' reputation"); *Wexler v. Allegion (UK) Ltd.*, 2018 WL 1626346, at *8 (S.D.N.Y. Mar. 30, 2018) (tortious interference claim duplicated libel claim, as damages came from harm to plaintiff's reputation).

[10] *See, e.g., O'Brien v. Alexander*, 898 F. Supp. 162, 172 (S.D.N.Y. 1995) (dismissing as duplicative injurious falsehoods claim where claim "relie[d] on the same statements that form the basis of the defamation claim"), *aff'd in part and rev'd in part on other grounds*, 101 F.3d 1479, 1488 (2d Cir. 1996); *Conte v. Newsday, Inc.*, 703 F. Supp. 2d 126, 149 (E.D.N.Y. 2010) (where injurious falsehood claim was based on statements in article, it was "dismissed as duplicative of the libel and slander claims").

claim, New York courts dismiss such tagalong claims as duplicative as a matter of course.

Plaintiff makes little effort to distinguish these four tort claims from his meritless defamation claim. For injurious falsehood, Plaintiff pleads outright that his claim is premised on "the above-described fake photographs and statements" which he says are "false statements." FAC ¶ 102. While Plaintiff's IIED claim is vaguely predicated on "the above-described actions and conduct," *id.* ¶ 107, it is apparent that this claim overlaps completely with his defamation claim. And in a futile effort to sidestep dismissal, Plaintiff claims his IIED claim is not duplicative because "the faked photographs and false statements" (the crux of his defamation claim) "were only part of the defendants' campaign of destruction, and the threats of defendant Epstein—and the lies of the other defendants—are evidence of their malicious intentions and sheer malevolence." *Id.* ¶ 112. Yet, Plaintiff fails to enumerate *what other grounds* his IIED claim is based on—because none exist. Last, Plaintiff premises his tortious interference claim on allegations that Professor Epstein disparaged him to employers, prospective employers, and to "anyone who would listen." *Id.* ¶¶ 138-139. Not only is this allegation impermissibly vague, but it makes clear, that once more, it is really just a defamation claim in disguise. As such, each of these claims should be dismissed as duplicative of Plaintiff's facially deficient defamation claim.

### B.    Plaintiff's IIED Claim Fails

Even if Plaintiff's IIED claim were not duplicative of his defamation claim (it clearly is), it would still fail on the merits. Alleging IIED requires showing "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional

---

[11] As discussed *infra*, New York does not recognize false light claims. New York courts also have rejected false light claims brought under another state's law based upon the same facts as a New York defamation claim. *See*, *e.g.*, *Baiqiao Tang v. Wengui Guo*, 2019 WL 6169940, at *7 (S.D.N.Y. Nov. 20, 2019) (dismissing California false light claim as duplicative of defamation claim under New York law). New York federal courts have also noted that even if New York did recognize the tort, it still would be dismissed as duplicative of a defamation claim. *See Chord Assocs. v. Protech 2003-D, LLC*, 2010 WL 3780380, at *4 (E.D.N.Y. Sept. 21, 2010).

distress." *Y.D. v. New York City Dep't of Educ.*, 2016 WL 698139, at *8 (S.D.N.Y. Feb. 19, 2016). As the Second Circuit has held, "The standard for stating a valid claim of intentional infliction of emotional distress is 'rigorous, and difficult to satisfy.'" *Conboy v. AT&T Corp.*, 241 F.3d 242, 258 (2d Cir. 2001) (citation omitted). The IIED claim falls short of this rigorous bar for three reasons: (1) it is barred by the First Amendment; (2) relaying accusations of sexual harassment or other misconduct to higher-ups within an organization (even if the accusations prove false) does not constitute "extreme and outrageous" conduct; and (3) Plaintiff has not pled that Professor Epstein intended to cause him or that he suffered severe emotional distress.

*First*, the U.S. Supreme Court has affirmed that the First Amendment serves as a defense against tort suits "including suits for intentional infliction of emotional distress," which are based on speech that addresses a "matter of public concern" where no viable defamation claim exists. *Snyder v. Phelps*, 562 U.S. 443, 451-53 (2011). The Court has broadly defined such speech to be "fairly considered as relating to any matter of political, social, or other concern to the community," or "is a subject of general interest and of value and concern to the public." *Id.* at 453 (citations omitted). The Court has precluded such claims because determining if speech is "outrageous" necessarily requires a subjective value judgment as to its content. *Id.* at 458. As noted above, an accusation of sexual harassment at the prestigious law firm K&E, FAC ¶ 38, is a matter of public concern, and thus the IIED claim against Professor Epstein is barred.

*Second*, Plaintiff's IIED claim also fails because he does not plead any "extreme and outrageous conduct, which so transcends the bounds of decency as to be regarded as atrocious and intolerable in a civilized society." *Freihofer v. Hearst Corp.*, 65 N.Y.2d 135, 143 (1985). This is because "defamatory statements are generally not sufficiently extreme and outrageous to support an IIED claim." *Carlson v. Geneva City Sch. Dist.*, 679 F. Supp. 2d 355, 372-73

(W.D.N.Y. 2010).  "Even a false charge of sexual harassment does not rise to the level of outrage required to recover on an intentional infliction of emotional distress claim under New York law." *James v. DeGrandis*, 138 F. Supp. 2d 402, 421 (W.D.N.Y. 2001); *see also Carlson*, 679 F. Supp. 2d at 372-73.  *James* is on point.  There, the court dismissed an IIED claim because a false accusation that a college soccer coach had improper sexual relationships with students as part of a scheme to have the coach fired and rendered unemployable was insufficiently outrageous.  *Id.* at 421.  Here, as in *James* and others, passing on an allegedly false sexual harassment accusation is simply not "extreme or outrageous."

*Third*, the FAC fails to make any non-conclusory allegations that Professor Epstein intended for Plaintiff to, and that Plaintiff did, suffer severe emotional distress.  At most, Plaintiff's speculative allegations that "defendants' action … demonstrate their intent to cause … severe emotional distress to the plaintiff," FAC ¶ 109, and that Plaintiff suffered "emotional distress" and "anxiety," *id.* ¶ 111, are "formulaic recitation[s] of the elements of the claim" and wholly insufficient. *Ortiz v. Ardolino*, 2021 WL 2075714, at *2 (E.D.N.Y. May 21, 2021).  Since the FAC offers no non-conclusory allegations that Professor Epstein intended to harm Plaintiff or that he suffered the necessary severe emotional harm, his IIED claim cannot survive.  *See Nova v. Smith*, 2019 WL 2636817, at *5 (N.D.N.Y. June 27, 2019) (dismissing IIED claim where allegations did not show intention to cause plaintiff harm); *Morin v. Fordham Univ.*, 2022 WL 4586042, at *7 (S.D.N.Y. Sept. 28, 2022) (dismissing IIED claim where plaintiff did not establish that he "suffered a level of emotional distress 'so severe that no reasonable [person] could be expected to endure it'") (citation omitted). Plaintiff's IIED claim must be dismissed.

### C.    Plaintiff's Tortious Interference Claim Fails

Plaintiff fails to state a plausible claim for tortious interference, which requires a plaintiff to plead that "(1) the plaintiff had business relations with a third party; (2) the defendant

interfered with those business relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) the defendant's acts injured the relationship." *Just Play, LLC v. A.S. Plastic Toys Co.*, 2022 WL 580876, at *4 (S.D.N.Y. Feb. 25, 2022) (citation and internal quotation marks omitted). ***First***, Plaintiff's tortious interference claim fails because he does not "allege what was said … caused [him] to lose business opportunities." *Evliyaoglu Tekstil A.S. v. Turko Textile LLC*, 2020 WL 7774377, at *2 (S.D.N.Y. Dec. 30, 2020). Moreover, his "[f]ailure to identify a specific business relationship with a third party is a 'fatal' deficiency to pleading tortious interference." *Deaton v. Napoli*, 2019 WL 4736722, at *8 (E.D.N.Y. Sept. 27, 2019); *see also DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 114-15 (2d Cir. 2010) (affirming dismissal where plaintiff failed to describe the third parties with whom she had lost prospective economic relations). Here, Plaintiff only vaguely alleges that Professor Epstein "repeatedly disparaged him to many employers and prospective employers." FAC ¶ 138. But Plaintiff does not identify *what* Professor Epstein allegedly said and to *whom*. For example, Plaintiff pleads that as a result of this alleged disparagement, he lost a "paid contractor position," but does not identify the employer. *Id.* ¶ 140. The only employer Plaintiff names is the Manhattan Institute, *id.* ¶ 141, but even there, Plaintiff does not plead that he lost that job due to Professor Epstein. In short, Plaintiff's tortious interference claim is no more than "an unadorned, the defendant-unlawfully-harmed-me accusation" – which cannot sustain his claim here. *DiFolco*, 622 F.3d at 111 (citation omitted).[12]

**Second**, the FAC does not and cannot allege, as it must, that Professor Epstein's sole purpose in informing others of the accusations against Plaintiff was to harm him. *See Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 189 (2004). To the contrary, Plaintiff expressly pleads that

---

[12] Plaintiff has also pled that he has still not sought admission for the New York Bar, which is an independent and intervening cause for his apparent failure to find legal employment. FAC ¶ 14.

rather than solely desiring to harm him, Professor Epstein wanted to "protect his own reputation and his ability to recommend and place students in the future." FAC ¶ 71; *see also id.* ¶ 75. Underscoring that Professor Epstein was not spurred by an intent to harm but out of legitimate concern, Plaintiff pleads Professor Epstein "believe[ed] the authenticity of the faked images and veracity of the defamatory claims." *Id.* ¶ 17. For this reason too his claim must be dismissed.

### D.    Plaintiff's Injurious Falsehood Claim Fails

Plaintiff has not stated a claim for injurious falsehood against Professor Epstein. To plead injurious falsehood or "trade libel," Plaintiff must allege "(1) falsity of the alleged statements; (2) publication to a third person; (3) malice; and (4) special damages." *Wilson v. Tarricone*, 2013 WL 12084504, at *6 (S.D.N.Y. Sept. 26, 2013) (history omitted). Plaintiff has not pled the appropriate type of injury to his business, actual malice, or special damages.

*First*, Plaintiff's alleged injury—to his personal reputation—sounds in defamation, not injurious falsehood. Injurious falsehood is "distinct" from libel, because it is "confined to denigrating the quality of the [plaintiff's] business'[s] goods or services." *Hollander v. Pressreader, Inc.*, 2020 WL 2836189, at *6 (S.D.N.Y. May 30, 2020) (citation omitted). A claim like Plaintiff's that concerns his "integrity," by contrast, sounds in defamation. *Henneberry v. Sumitomo Corp. of Am.*, 415 F. Supp. 2d 423, 472 (S.D.N.Y. 2006). An injurious falsehood claim against a lawyer must pertain to statements relating to the lawyer's "quality of the services." *Hollander*, 2020 WL 2836189, at *6. But the quality of Plaintiff's legal services is not at issue here. The FAC does not allege Professor Epstein denigrated Plaintiff's legal skills. Rather, Plaintiff predicates his injurious falsehood claim on statements about his *personal reputation and integrity*, *i.e.*, "that plaintiff was fired for sexual harassment." FAC ¶ 104. Courts have found that a claim based on a statement that a lawyer was fired for sexual harassment sounds in defamation, not injurious falsehood. *Pitcock v. Kasowitz, Benson, Torres*

*& Friedman, LLP*, 27 Misc. 3d 1238(A), 910 N.Y.S.2d 765 (Sup. Ct. N.Y. Cnty. May 28, 2010).

**Second**, as set forth in Section II.B., Plaintiff has not plausibly alleged actual malice, which requires this claim's dismissal. *See Diario El Pais, S.L. v. Nielsen Co. (U.S.), LLC*, 2008 WL 4833012, at *7 (S.D.N.Y. Nov. 6, 2008) ("Plaintiffs fail to state a claim for trade libel because their Amended Complaint does not allege facts that render 'plausible' the actual malice element of trade libel"). Plaintiff attempts to avoid dismissal by thinly alleging that Defendants acted with actual malice because they had "intent to harm plaintiff professionally," FAC ¶ 104, but such factually unmoored allegations are not enough. *See Biro v. Condé Nast*, 963 F. Supp. 2d 255, 280 (S.D.N.Y. 2013), *aff'd*, 807 F.3d 541 (2d Cir. 2015).

**Third**, the injurious falsehood claim fails because the FAC has not adequately pled special damages. "The requirement of pleading and proving special damages is applied strictly" and courts dismiss injurious falsehood claims "for failure to allege special damages with the requisite specificity," *Daniels v. St. Luke's-Roosevelt Hosp. Ctr.*, 2003 WL 22410623, at *7 (S.D.N.Y. Oct. 21, 2003), which requires providing an itemization of damages. *See Navarra v. Marlborough Gallery, Inc.*, 2012 WL 13210272, at *8 (S.D.N.Y. Apr. 4, 2012); *Conte*, 703 F. Supp. 2d at 149 ("Plaintiff's allegations of damages of $500,000,000, without any itemization, are insufficient."). Plaintiff falls far short of this strict burden, claiming only that he is "entitled to compensatory and punitive damages" arising from alleged loss of a "promised clerkship," "loss of the opportunity to become a member of the New York bar," and "his entire career prospects." FAC ¶¶ 100, 102, 105. Such vague—and remote—allegations that do not even attempt to set a figure on his alleged damages, let alone itemize, do not suffice. *See Daniels*, 2003 WL 22410623, at *7-8 (citation omitted) (rejecting injurious falsehood claim where plaintiff's special damages were broadly premised "on her loss of employment and salary

therefor," which the court determined to be "not fully and accurately stated, as required under New York law").[13]  In sum, Plaintiff has not met the "strict requirement" of pleading special damages and his injurious falsehood claim must be denied.

### E.    New York Does Not Recognize the Tort of False Light.

Plaintiff's false light claim should be dismissed for the additional reason that it is not recognized in New York.  *See Berwick*, 2007 WL 949767, at *7-8.[14]  Plaintiff cannot avoid this outcome by contending that New Jersey law applies to this (and only this) claim. FAC ¶ 115.

New York law applies to Plaintiff's false light claim, because under the most significant interest test, New York, not New Jersey, bears the most significant interest to it.  *See Kinsey v. N.Y. Times Co.*, 991 F.3d 171, 176 (2d Cir. 2021).  To determine which state has the greatest interest in a false light action, courts weigh "where the statements emanated and were broadcast," "where the activities to which the allegedly defamatory statements refer took place," "where plaintiff suffered the greatest injury," and "the policy interests of the states whose law might apply."  *DeIuliis v. Engel*, 2021 WL 4443145, at *9 (S.D.N.Y. Sept. 27, 2021).  There is only one answer to each of these questions: New York.

The statements emanated from New York. Plaintiff alleges that Defendants Epstein, Garrett, and Iyer cast him in a false light while in New York. *See* FAC ¶¶ 10, 55, 56, 63.  The subject of the allegedly defamatory statements – Plaintiff's alleged conduct at K&E's New York office, *e.g.*, FAC ¶¶ 55, 56, 120 – took place in New York.  And save for a barebones pleading

---

[13] In any case, Plaintiff had no "promised clerkship," as Professor Epstein is a recommender, not a judge.  Further, Plaintiff admits he has not completed his application for admission to the New York bar.  Thus, even taking his allegations as true, Plaintiff—not Professor Epstein—is the cause of his not being a member of the bar and other alleged damages to his career prospects.

[14] *See also Pedraglio Loli v. Citibank, Inc.*, 173 F.3d 845, 845 (2d Cir. 1999) ("[D]istrict court properly dismissed [plaintiff's] 'false light' invasion of privacy claim as not cognizable under New York law."); *Baiqiao Tang*, 2019 WL 6169940, at *6 ("Allegations that a defendant portrayed a plaintiff in a false light, however, are not actionable under New York law.").

that Plaintiff was then "domiciled" in New Jersey,[15] the brunt of his alleged injuries occurred in New York: the alleged damage to his reputation at K&E, FAC ¶ 21, the loss of his relationship with Professor Epstein, *id.* ¶ 72, the loss of his accepted position at the Manhattan Institute, *id.* ¶ 141, his removal as Senior Articles editor from his NYU law journal, *id.* ¶ 71, and the loss of the "opportunity" to be a member of the New York Bar, *id.* ¶ 14, all occurred in New York.  The "main import" of the alleged harm to his reputation was with people and entities in New York and there is no alleged "meaningful connection between the alleged torts and [New Jersey] aside from [his] personal residence there." *See Berwick*, 2007 WL 949767, at *7–8.[16]  Therefore, New York law applies to his false light claim.  Since it is well established that "New York does not recognize as a tort 'false light' invasion of privacy," the claim must be dismissed. *Id.* at *6.

Even if the Court decides that Plaintiff's false light claim is governed by New Jersey law, his claim still fails because his defamation claim fails. *See G.D. v. Kenny*, 15 A.3d 300, 318-19 (N.J. 2011) ("Because G.D.'s arguments in support of his false-light claim are essentially the same as those he advances on his defamation claim, the result can be no different."); *Williams v. MLB Network, Inc.*, 2019 WL 1222954, at *29-30 (N.J. Super. Ct. App. Div. Mar. 14, 2019) (where there is no actionable defamation, a claim for false light based upon the same conduct cannot stand).  His false light claim also fails because as set forth in Section II.B, the FAC alleges no facts showing actual malice. *Marino v. Westfield Bd. of Educ.*, 2017 WL 216691, at

---

[15] Plaintiff's pleading of injury in New Jersey is too vague to pass muster.  Without any specificity, Plaintiff pleads that he was presented in a false light to "his immediate neighbors and members of his local community in the State of New Jersey," without "identify[ing] any person or entity in Pennsylvania who heard or read disparaging remarks about the plaintiffs" were not enough to show detrimental effects in Pennsylvania, especially since all "relevant business dealings were in New York." *Berwick*, 2007 WL 949767, at *7.  Plaintiff repeats the exact same error here.

[16] Plaintiff cannot plead that any harm from the alleged false light was felt where the Federalist Society employees are located since he pleads that Redpath and Alcantara "saw through these forgeries and defamatory claims," FAC ¶ 61, and that Otis also did not believe the allegations against him, *id.* ¶¶ 68-69.

*9 (D.N.J. Jan. 18, 2017) (applying actual malice to false light claim where statements involve matter of public concern); *see also Time, Inc. v. Hill*, 385 U.S. 374, 387 (1967) (holding plaintiff alleging the tort of false light must show actual malice).

## IV. PLAINTIFF'S FRAUD CLAIM FAILS

Plaintiff's fraud claim is premised on Professor Epstein's purported failure to disclose Iyer and Garrett as the "transmitters of the faked photographs and defamatory statements."[17] FAC ¶¶ 130-136.  This claim, however, fails because Professor Epstein had no duty to disclose, and Plaintiff pleads no damages attributable to his purported reliance.

**First**, Professor Epstein did not owe Plaintiff a duty to disclose that Defendants allegedly transmitted the photographs and email.  *See* FAC ¶¶ 130-131.  "An omission or concealment can constitute fraud, but **only** where the defendant had a duty to disclose the material fact alleged to be omitted or concealed."  *Sutton v. Hafner Valuation Grp., Inc.*, 115 A.D.3d 1039, 1041 (3d Dep't 2014) (emphasis added).  This duty of disclosure only exists if there is a "confidential or fiduciary relationship."  *Bd. of Managers of Chelsea 19 Condo. v. Chelsea 19 Assocs.*, 73 A.D.3d 581, 582 (1st Dep't 2010).  The Second Circuit has held that educators *do not* owe a fiduciary duty to their students.  *Knelman v. Middlebury Coll.*, 570 F. App'x 66, 68 (2d Cir. 2014).  As Professor Epstein owed Plaintiff no duty to disclose, Plaintiff's fraud claim falls.

**Second**, even if Plaintiff could plead a duty was owed and prove a knowingly false representation or omission of material fact on which he justifiably relied, he does not and cannot plead that "as a result of such reliance [he] sustained pecuniary loss."  *Ithaca Cap. Invs. I S.A. v. Trump Panama Hotel Mgmt. LLC*, 450 F. Supp. 3d 358, 369 (S.D.N.Y. 2020) (citation omitted); *see also Schneider v. Pearson Educ., Inc.*, 2013 WL 1386968, at *5 n.6 (S.D.N.Y. Apr. 5, 2013)

---

[17] Plaintiff alleges that Professor Epstein admitted he sent the compiled materials to Otis.  FAC ¶ 84.  Therefore, his allegation that Professor Epstein had an obligation but failed to disclose that fact is facially meritless. *Id.* ¶ 131.

("damages are an essential element of a fraud claim"). Plaintiff's fraud "injury" appears to be wholly premised on a delay in Plaintiff's discovery of the "true and proper defendants." FAC ¶ 133. Critically, Plaintiff does not—and cannot—allege the loss of a single dollar attributable to this injury, or that it would not have occurred absent his conversations with Professor Epstein. New York's general "out-of-pocket rule" provides that "[d]amages are to be calculated to compensate plaintiffs for what they lost because of the fraud." *Nielsen Co. (U.S.), LLC v. Success Sys., Inc.*, 112 F. Supp. 3d 83, 108-09 (S.D.N.Y. 2015) (citation omitted). Here, "plaintiff's pleading is fatally deficient because [it] did not assert compensable damages resulting from defendants' alleged fraud." *Sw. Invs. Grp., LLC v. JH Portfolio Debt Equities, LLC*, 169 A.D.3d 1510, 1511 (4th Dep't 2019). Instead, Plaintiff broadly claims "delay and expense," FAC ¶ 136, but these conclusory allegations cannot satisfy his pleading burden. Moreover, the FAC disclaims damages caused by any so-called delay, admitting that he was able to uncover the "proper Defendants" after enforcing subpoenas. *Id.* ¶ 133. In short, Plaintiff has suffered no harm, pecuniary or otherwise, and his fraud claim therefore fails.

## V.    THE CIVIL CONSPIRACY CLAIM FAILS

Plaintiff's civil conspiracy claim is facially meritless for multiple reasons and must be dismissed. ***First***, the conspiracy claim fails along with the other deficient underlying tort claims. "[A] cause of action alleging conspiracy to commit a tort stands or falls with the underlying tort." *Barns & Farms Realty, LLC v. Novelli*, 82 A.D.3d 689, 691 (2d Dep't 2011). Plaintiff has alleged that defamation is "the primary tort underlying the conspiracy." FAC ¶ 126. However, as set forth above, he has failed to plead defamation—or any of his remaining torts. This on its own is enough to require dismissal of his civil conspiracy claim.

***Second***, New York law does not recognize "conspiracy to defame," FAC ¶ 123, as a cognizable cause of action. *McGill v. Parker*, 179 A.D.2d 98, 105 (1st Dep't 1992); *Pravda v.*

*Cnty. of Saratoga*, 224 A.D.2d 764, 766 (3d Dep't 1996). Since Plaintiff acknowledges his civil conspiracy claim is predicated on defamation, FAC ¶ 126, that claim fails as a matter of law.

**Third**, the FAC does not allege any agreement between Professor Epstein and the alleged co-conspirators, Iyer and Garrett. *See Chen Gang v. Zhao Zhizhen*, 799 F. App'x 16, 19 (2d Cir. 2020) (summary order) (allegation that agreement existed required to allege civil conspiracy). Instead, Plaintiff claims "Epstein had chosen to join with defendants Iyer and Garrett," FAC ¶ 59, and the Defendants, including Professor Epstein, "agreed to use their influence with numerous contacts in the community to destroy the Plaintiff's reputation and future employability." *Id.* ¶ 124. Such threadbare allegations are not enough. Plaintiff alleges no action by Professor Epstein that suggests an agreement or "meeting of the minds" with Garrett or Iyer. Indeed, he pleads the opposite, that Professor Epstein was "an unwitting instrument of [Iyer's and Garrett's] civil conspiracy." *Id.* ¶ 50. Because a "meeting of the minds" is implausible in the pled circumstances, the civil conspiracy claim fails. *See Strujan v. Teachers Coll. Columbia Univ.*, 2010 WL 3466251, at *4 (S.D.N.Y. Sept. 3, 2010) (dismissing civil conspiracy claim where plaintiff failed to offer "some factual basis supporting a meeting of the minds").

## **CONCLUSION**

For the foregoing reasons, Professor Epstein respectfully requests that this Court dismiss Plaintiff's First Amended Complaint with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).


Dated: August 12, 2024                                        Respectfully submitted,

                                                             */s/ Jeremy Chase*
                                                             Jeremy Chase
                                                             Nimra H. Azmi
                                                             DAVIS WRIGHT TREMAINE LLP

1251 Avenue of the Americas, 21st Floor
New York, NY 10020-1104
Phone:        (212) 489-8230
Fax:          (212) 489-8340
jeremychase@dwt.com
nimraazmi@dwt.com

*Attorneys for Richard A. Epstein*

## <u>CERTIFICATE OF SERVICE</u>

I, Jeremy Chase, hereby certify that on August 12, 2024, a copy of the foregoing document was filed electronically and served by e-mail to all parties of record via ECF.

<u>*/s/ Jeremy Chase*</u>
Jeremy Chase