UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
GIDEON RAPAPORT,

                Plaintiff,               Case No.: 1:23-cv-06709 (JGLC)

      -against-

AJAY SRINIVASAN IYER,
ZACHARY GEORGE GARRETT, and
RICHARD ALLEN EPSTEIN,

                Defendants.
----------------------------------------------------------X

**DEFENDANTS AJAY SRINIVASAN IYER AND
ZACHARY GEORGE GARRETT'S MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO DISMISS**

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

BACKGROUND ............................................................................................................. 1

ARGUMENT ................................................................................................................... 2

I.    The Amended Complaint Does Not Relate Back To The Original Complaint
      And Therefore All Claims In The Amended Complaint Against Defendants Iyer
      And Garrett Are Untimely. ..................................................................................... 3

II.   Rapaport's Claims For Intentional Infliction Of Emotional Distress, Civil
      Conspiracy, And Injurious Falsehood Fail As A Matter Of Law. .......................... 6

      A.    Rapaport fails to allege facts plausibly showing a claim of intentional
            infliction of emotional distress ......................................................................... 6

      B.    Rapaport fails to allege facts plausibly showing a civil conspiracy. ............... 9

      C.    The injurious falsehood claim fails because it is duplicative of the
            defamation claim, and Rapaport has not, and cannot, plead special
            damages ........................................................................................................... 12

III.  Rapaport's Defamation Claims Are Untimely And Do Not Meet The
      Plausibility Standard. ............................................................................................ 14

      A.    The complaint's exhibits contradict Rapaport's claims that the online
            posts were defamatory. ................................................................................... 15

      B.    The conversations with the Federalist Society and Defendant Epstein
            are time barred, protected by the common interest privilege, and do not
            plausibly allege fault. ..................................................................................... 17

IV.   Rapaport's Claims Are Governed By New York Law And Thus He Cannot
      Bring A False Light Claim Under New Jersey Law. .............................................. 21

CONCLUSION ............................................................................................................... 23

# TABLE OF AUTHORITIES

**Cases**                                                                                                                    **Page(s)**

*Andino v. Cummins*,
No. 12-CV-852, 2014 WL 860350 (W.D.N.Y. Mar. 5, 2014) ................................................ 11

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).................................................................................................... 2, 11

*Baiqiao Tang v. Wengui Guo*,
No. 17-cv-9031 (JFK), 2019 WL 6169940 (S.D.N.Y. Nov. 20, 2019) .................................. 23

*Baram v. Doe*,
No. 23-cv-1758 (ER), 2024 WL 232319 (S.D.N.Y. Jan. 22, 2024) ......................................... 4

*Barrow v. Wethersfield Police Dep't*,
66 F.3d 466 (2d Cir. 1995) ........................................................................................... 5

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)...................................................................................................... 2

*Bender v. City of New York*,
78 F.3d 787 (2d Cir.1996) ......................................................................................... 6, 7

*Chord Assocs., LLC v. Protech 2003-D, LLC*,
No. 07-cv-5138, 2010 WL 3780380 (E.D.N.Y. Sept. 21, 2010) ........................................... 23

*Cojocaru v. City Univ. of New York*,
No. 19-cv-5428 (AKH), 2020 WL 5768723 (S.D.N.Y. Sept. 28, 2020)................................. 18

*Conte v. Cnty. of Nassau*,
596 F. App'x 1 (2d Cir. 2014) ..................................................................................... 4

*Cunningham v. Sec. Mut. Ins. Co.*,
689 N.Y.S.2d 290 (3d Dep't 1999)........................................................................... 7

*Daniels v. St. Luke's-Roosevelt Hosp. Ctr.*,
No. 02-cv-9567 (KNF), 2003 WL 22410623 (S.D.N.Y. Oct. 21, 2003) .......................... 13, 14

*Elson v. Consol. Edison Co. of N.Y., Inc.*,
641 N.Y.S.2d 294 (1st Dept. 1996) ........................................................................... 7

*Frederique v. Cnty. of Nassau*,
No. 11-cv-1746 (WDW), 2014 WL 12841638 (E.D.N.Y. May 22, 2014)........................ 4, 5, 6

*Ganske v. Mensch*,
480 F. Supp. 3d 542 (S.D.N.Y. 2020) ....................................................................... 14

*Grayson v. Ressler & Ressler*,
271 F. Supp. 3d 501 (S.D.N.Y. 2017) .............................................................. 12, 13, 19, 20

*Grove Press, Inc. v. Angleton*,
   649 F.2d 121 (2d Cir. 1981) ................................................. 12

*Henry v. Fox News Network LLC*,
   629 F. Supp. 3d 136 (S.D.N.Y. 2022) ................................... 21

*Hirsch v. Arthur Andersen & Co.*,
   72 F.3d 1085 (2d Cir. 1995) ................................................... 3

*Kasada, Inc. v. Access Capital, Inc.*,
   No. 01-cv-8893 (GBD), 2004 WL 2903776 (S.D.N.Y. Dec. 14, 2004)................... 12

*Kesner v. Dow Jones & Co., Inc.*,
   515 F. Supp. 3d 149 (S.D.N.Y. 2021) .............................. 10, 11

*Kinsey v. N.Y. Times Co.*,
   991 F.3d 171 (2d Cir. 2021) ................................................. 22

*Kling v. World Health Org.*,
   532 F. Supp. 3d 141 (S.D.N.Y. 2021) ..................................... 6

*Koulkina v. City of New York*,
   559 F. Supp. 2d 300 (S.D.N.Y. 2008) ................................... 17

*Krupski v. Costa Crociere S.p.A.*,
   560 U.S. 538 (2010)............................................................... 5

*M+J Savitt, Inc. v. Savitt*,
   No. 08-cv-8535 (DLC), 2009 WL 691278 (S.D.N.Y. Mar. 17, 2009) ...................... 8

*Matusovsky v. Merrill Lynch*,
   186 F. Supp. 2d 397 (S.D.N.Y. 2002) ................................... 17

*O'Brien v. Alexander*,
   898 F. Supp. 162 (S.D.N.Y. 1995) ...................................... 13

*Palin v. N.Y. Times Co.*,
   940 F.3d 804 (2d Cir. 2019) ................................................. 14

*Prince v. Intercept*,
   634 F. Supp. 3d 114 (S.D.N.Y. 2022) .............................. 21, 22

*Pruiss v. Bosse*,
   912 F. Supp. 104 (S.D.N.Y. 1996) ...................................... 18

*Purnell v. Diesso*,
   No. 94-cv-4361 (RPP), 1996 WL 37770 (S.D.N.Y. Jan. 31, 1996) ...................... 18

*Quintanilla v. WW Int'l, Inc.*,
   541 F. Supp. 3d 331 (S.D.N.Y. 2021) ..................................... 9

*Restis v. Am. Coal. Against Nuclear Iran, Inc.*,
   53 F. Supp. 3d 705 (S.D.N.Y. 2014) ...................................................................... 6, 7, 8, 9

*Sacerdote v. N.Y. Univ.*,
   9 F.4th 95 (2d Cir. 2021) ............................................................................................ 2

*Seltzer v. Bayer*,
   709 N.Y.S.2d 21 (1st Dep't 2000) ............................................................................. 7

*Sesto v. Slaine*,
   171 F. Supp. 3d 194 (S.D.N.Y. 2016) ....................................................................... 7

*Stuto v. Fleishman*,
   164 F.3d 820 (2d Cir. 1999) ...................................................................................... 7

*Swan v. Boardwalk Regency Corp.*,
   969 A.2d 1145 (N.J. Super. Ct. App. Div. 2009) ...................................................... 4

*Thorsen v. Sons of Norway*,
   996 F. Supp. 2d 143 (E.D.N.Y. 2014) ..................................................................... 18

*TufAmerica, Inc. v. Diamond*,
   968 F. Supp. 2d 588 (S.D.N.Y. 2013) ................................................................. 3, 15

*Walther v. Maricopa Int'l Inv., Corp.*,
   No. 97-cv-4816 (HB), 1998 WL 689943 (S.D.N.Y. Sept. 30, 1998) ...................... 19

*Waste Distillation Tech., Inc. v. Blasland & Bouck Engineers, P.C.*,
   523 N.Y.S.2d 875 (2d Dep't 1988) ......................................................................... 12

*Watson v. NY Doe 1*,
   439 F. Supp. 3d 152 (S.D.N.Y. 2020) ................................................................ 17, 20

**Rule**

Fed. R. Civ. P. 15 ............................................................................................................... 5

## INTRODUCTION

Through this lawsuit, Plaintiff Gideon Rapaport levels serious accusations at Defendants Ajay Iyer and Zachary Garrett.  Rapaport believes Iyer and Garrett were jealous of him and engaged in a conspiracy to ruin Rapaport's professional life by creating forged photographs of him, and by spreading a rumor that Rapaport was fired from his position as a summer associate at Kirkland & Ellis, LLP, because of sexual harassment.  However, Rapaport fails to plead facts supporting any of these accusations.  Indeed, the internet threads that Rapaport points to and attaches to his complaint did not even include any photographs or information that would otherwise identify Rapaport as the subject of the rumors being discussed.  Moreover, even if Rapaport had alleged facts supporting his claims, his claims are all time barred.

To be sure, if this case proceeds, Defendants will demonstrate that Rapaport's accusations are entirely false.  But the Court need not get that far, as the first amended complaint advances no viable claims, and binding precedent requires this Court to dismiss Rapaport's claims.

## BACKGROUND

Plaintiff Gideon Rapaport, a recent graduate of New York University School of Law, filed a *pro se* complaint on July 28, 2023, alleging that three John Doe Defendants started an "internet hoax" and engaged in "character assassination" by accusing him of being fired from his summer position at Kirkland & Ellis, LLP.  Compl. ¶¶ 6–8 (ECF No. 1).  The events described in the complaint took place one year earlier—in late July and early August 2022.  *Id.* ¶¶ 6, 10, 15.

About four months after filing his initial complaint, in late November 2023, Rapaport sought discovery to obtain information about the identities of the John Does.  Pl.'s Ltr. Mots. (ECF Nos. 10, 11).  Six months after that, Rapaport filed his first amended complaint, replacing the John Doe Defendants with the current Defendants, including Defendants Iyer and Garrett, who were

also students at New York University School of Law.  First Am. Compl. ¶¶ 2, 4 (ECF No. 38) ("FAC").

In this complaint, Rapaport brings a host of claims, including defamation, injurious falsehood, intentional infliction of emotional distress, false light and invasion of privacy, and civil conspiracy. *Id.* ¶¶ 90–127.  According to Rapaport, Iyer and Garrett were jealous of him (¶ 33), and they acted out of that jealousy by creating a fake image purporting to show that Rapaport was barred from entering the offices of Kirkland & Ellis, where Rapaport had been working for the summer (¶ 35), and by circulating that fake photograph to various individuals and posting it online (¶¶ 37, 42, 45).  Rapaport also alleges that Iyer and Garrett presented these materials to representatives of the Federalist Society in advance of Rapaport's participation in the James Kent Academy. *Id.* ¶¶ 34, 42.  Although Rapaport nonetheless participated in the James Kent Academy (¶ 70), he claims that the circulation of this photograph and related statements about reports of sexual harassment led Rapaport not to seek admission to the New York bar. *Id.* ¶ 14.

## ARGUMENT

Rapaport's amended complaint does not come close to carrying his burden to allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 106 (2d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  Rather, dismissal is appropriate because Rapaport's allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558, (2007).

While the Court must accept as true the complaint's factual allegations, it must also "disregard conclusory allegations, such as 'formulaic recitations of the elements of a cause of action.'" *Sacerdote*, 9 F.4th at 107 (internal alteration omitted) (quoting *Twombly*, 550 U.S. at 555).  And, when assessing the sufficiency of a complaint's allegations, the Court may consider any documents a plaintiff attaches to his complaint. *See Hirsch v. Arthur Andersen & Co.*, 72 F.3d

1085, 1092 (2d Cir. 1995). Moreover, if those documents contradict the factual allegations, as they do here, courts do not take the factual allegations as true. *See TufAmerica, Inc. v. Diamond*, 968 F. Supp. 2d 588, 592 (S.D.N.Y. 2013).

Applying these standards, the Court should dismiss Rapaport's claims against Defendants Iyer and Garrett. *First*, Rapaport's claims are all time barred. *Second*, Rapaport fails to allege all required elements for his claims for injurious falsehood, intentional infliction of emotional distress, and civil conspiracy, including that he suffered any cognizable or quantifiable damages. *Third*, for his defamation claim, Rapaport's allegations are time barred and they do not cross the plausibility line, as the complaint's exhibits contradict his allegations. *Finally*, Rapaport's attempt to bring a New Jersey claim for false light fails, as all the events alleged in the complaint took place in New York, including Rapaport's alleged professional injuries, and New York does not recognize a false light claim.

For these reasons, the Court should dismiss all of Rapaport's claims with prejudice.

I. **The Amended Complaint Does Not Relate Back To The Original Complaint And Therefore All Claims In The Amended Complaint Against Defendants Iyer And Garrett Are Untimely.**

The clearest reason to dismiss Rapaport's claims is that they are time barred. Rapaport complains about events that allegedly occurred in July and August 2022. His original complaint, filed in July 2023, did not name any defendants. *See* Compl. In fact, it was not until May 24, 2024—nearly two years after the alleged underlying events—that Rapaport first named Defendants Iyer and Garrett. *See* FAC. As such, the amended complaint was filed far outside the one-year statute of limitations applicable to each of Rapaport's claims, and, because that complaint does not relate back to the original complaint, those claims are untimely.

As an initial matter, each of Rapaport's claims against Defendants Iyer and Garrett is subject to a one-year statute of limitations. *See Conte v. Cnty. of Nassau*, 596 F. App'x 1, 5 (2d

Cir. 2014) (explaining that defamation, injurious falsehood, and intentional infliction of emotional distress all have a one-year statute of limitations); *Swan v. Boardwalk Regency Corp.*, 969 A.2d 1145, 1155 (N.J. Super. Ct. App. Div. 2009) (explaining that a false light claim based on defamatory comments has a one-year statute of limitations); *Baram v. Doe*, No. 23-cv-1758 (ER), 2024 WL 232319, at *10 (S.D.N.Y. Jan. 22, 2024) (explaining that civil conspiracy is not a standalone tort and thus "a cause of action alleging conspiracy to commit a tort stands or falls with the underlying tort.").

The allegedly unlawful conduct included in the amended complaint took place at the end of July and beginning of August 2022. *See* FAC ¶¶ 35, 40, 42, 47, 52, 54, 65. Thus, the statute of limitations expired in or around July 2023, which is when Rapaport filed his initial complaint. *See* Compl. At that time, Rapaport claims that he "was completely ignorant of the identities of the defendants[.]" FAC ¶ 81. It was only months later, after "enforc[ing] the subpoenas which the Court had issued," that Rapaport "learn[ed] the identities of the John Does who had been the original defendants[.]" *Id.* ¶ 85. Even then, Rapaport waited until May 24, 2024, to file his amended complaint—almost one year beyond the statute of limitations.

This delay is fatal to Rapaport's claims. In this Circuit, "['])John Doe' pleadings cannot be used to circumvent statutes of limitations because replacing a 'John Doe' with a named party in effect constitutes a change in the party sued." *Frederique v. Cnty. of Nassau*, No. 11-cv-1746 (WDW), 2014 WL 12841638, at *4 (E.D.N.Y. May 22, 2014). Thus, a plaintiff can only substitute John Does with new parties outside of the statute of limitations if the amended complaint meets "all of the specifications of the relation back statute," which is Federal Rule of Civil Procedure 15(c). *Id.* Rapaport cannot do so.

One such specification is that the later-added party "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1)(C)(ii).  The Second Circuit has interpreted this rule "to preclude relation back for amended complaints that add new defendants, where the newly added defendants were not named originally because the *plaintiff did not know their identities*." *Frederique*, 2014 WL 12841638, at *4 (emphasis added) (citing *Barrow v. Wethersfield Police Dep't*, 66 F.3d 466, 470 (2d Cir. 1995), *modified*, 74 F.3d 1366 (2d Cir. 1996) (per curiam)).  That is because not knowing the identities of the defendants "cannot be characterized as a mistake." *Barrow*, 66 F.3d at 470.[1]

As Rapaport concedes, he "had no idea who was responsible" when he filed his original complaint, and he thus relied on John Does.  FAC ¶ 81.  Under *Barrow*, Rapaport's replacing the John Does with Defendants' names nearly two years after the underlying events allegedly occurred cannot be characterized as a mistake, and therefore the amended complaint cannot relate back to the original complaint.

Moreover, Rapaport cannot evade this authority by claiming that "defendants withheld identifying information or unreasonably delayed in producing such information." *Frederique,* 2014 WL 12841638, at *6 (quotation marks omitted).  For one, the Second Circuit has not expressly endorsed, or even recognized, this exception to the relation-back rule, and even if it had, it only applies when the plaintiff seeks identification information *before* the statute of limitations

---

[1] The Supreme Court later addressed this provision of Rule 15(c) in *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538 (2010).  But that case did not address the question in *Barrow* about replacing "John Does" with named defendants. Thus, as numerous courts in this circuit have recognized, the Supreme Court did not overrule or even alter the holding in *Barrow*.  *See Frederique*,2014 WL 12841638, at *5 (collecting cases and noting that even after *Krupski*, the Second Circuit has invoked *Barrow*).

ends. *Id.* Here, Rapaport waited until November 2023 to seek the Defendants' identities, which was several months beyond the conclusion of the statute of limitations in July 2023.

Under the Second Circuit's *Barrow* decision, Rapaport's amended complaint does not relate back, and his claims are therefore untimely. Accordingly, the Court should dismiss all of Rapaport's claims against Iyer and Garrett. And, because he cannot fix this error with any amendment, the dismissal of the entire amended complaint should be with prejudice. *Kling v. World Health Org.*, 532 F. Supp. 3d 141, 154 (S.D.N.Y. 2021) ("[D]ismissal with prejudice is appropriate when 'the flaws in pleading are incurable.'").

## II. Rapaport's Claims For Intentional Infliction Of Emotional Distress, Civil Conspiracy, And Injurious Falsehood Fail As A Matter Of Law.

Even if the Court concludes that Rapaport's claims relate back to the original complaint, they must still be dismissed because Rapaport fails to plead the elements required for his claims of intentional infliction of emotional distress, civil conspiracy, and injurious falsehood. He alleges no extreme and outrageous conduct, no agreement or conspiratorial conduct, and no specific damages necessary for any of these claims. These deficiencies require dismissal.

### A. Rapaport fails to allege facts plausibly showing a claim of intentional infliction of emotional distress.

The tort of intentional infliction of emotional distress ("IIED") has four elements: "(1) extreme and outrageous conduct; (2) intent to cause severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." *Restis v. Am. Coal. Against Nuclear Iran, Inc.*, 53 F. Supp. 3d 705, 729 (S.D.N.Y. 2014) (citing *Bender v. City of New York*, 78 F.3d 787, 790 (2d Cir.1996)). Rapaport comes up short at each turn.

First, the "threshold for conduct that is 'extreme and outrageous'" is high, and "New York courts have found liability for intentional infliction of emotional distress 'only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds

of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.'" *Id.*
(first quoting *Bender*, 78 F.3d at 790, then *Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir. 1999)).
For example, one New York appellate court found "extreme and outrageous" conduct in a
complaint where an employee alleged that his employer knew of his mental-health condition yet
subjected him to eight hours of threatening interrogation while showing him a gun and denying
him food. *Elson v. Consol. Edison Co. of N.Y., Inc.*, 641 N.Y.S.2d 294, 294-95 (1st Dept. 1996).
In that case, the office security officers even intimidated the plaintiff into escorting them "to his
home to conduct a search" for drugs. *Id.* at 294. Conversely, courts have found allegations not to
satisfy the "extreme and outrageous" standard even where a defendant allegedly dumped cement,
lighted cigarettes, and eggs on the plaintiff's property and threatened to paint a swastika on his
house. *Seltzer v. Bayer*, 709 N.Y.S.2d 21, 23 (1st Dep't 2000). Nor was it sufficient for an IIED
claim when a defendant was alleged to have wrongfully accused a plaintiff of arson, even
submitting false statements under oath. *Cunningham v. Sec. Mut. Ins. Co.*, 689 N.Y.S.2d 290, 291
(3d Dep't 1999).

Further, "defamatory statements generally cannot constitute the extreme and outrageous
behavior required for an intentional infliction of emotional distress claim." *Restis*, 53 F. Supp. 3d
at 729 (collecting cases). And, when the alleged extreme conduct "falls within the ambit of another
tort," the IIED claim fails. *Id.* That is why "[c]ourts in this Circuit consistently dismiss [IIED]
claims where plaintiff alleges no facts beyond those necessary to sustain another tort claim." *Id.*
In short, courts routinely dismiss IIED claims because it is a "highly disfavored cause of action"
that "is almost never successful." *Sesto v. Slaine*, 171 F. Supp. 3d 194, 201–02 (S.D.N.Y. 2016)
(quotation marks omitted).

Applying these rules, a judge in this district dismissed an IIED claim where the plaintiffs alleged that the defendants engaged in a "name and shame" campaign via press releases and social media posts to destroy plaintiffs' reputations and interfere with their careers. *Restis*, 53 F. Supp. 3d at 709. The court held that the allegedly defamatory comments about plaintiffs' illicit business dealings with Iran could not constitute "extreme and outrageous conduct." *Id.* at 729. Moreover, even if such statements sufficed, the IIED claim relied on the same facts as the other tort claims and thus had to be dismissed. *Id.*

Similarly, in *M+J Savitt, Inc. v. Savitt*, the court dismissed an IIED claim that was based on allegations that the plaintiff had engaged in sexual misconduct in the workplace. No. 08-cv-8535 (DLC), 2009 WL 691278, at *14 (S.D.N.Y. Mar. 17, 2009). Specifically, the plaintiff was accused in front of a group of coworkers of "f*****g the bookkeeper." *Id.* The court held that "while offensive," the comments were not so outrageous as to satisfy the "extreme and outrageous conduct" element. *Id.* Further, the IIED claim was doomed because the comments were "within the ambit of [the] claim for defamation[.]" *Id.*

This case is no different. Rapaport does not allege any extreme or outrageous conduct. Rather, he merely alleges that Defendants made statements about rumors that Rapaport's summer position with Kirkland & Ellis had been cut short due to reports of sexual harassment. While such rumors and comments may be offensive, they do not constitute "extreme and outrageous conduct." And they are "within the ambit" of and indistinguishable from Rapaport's defamation and other tort claims. *Id.* Perhaps recognizing as much, Rapaport makes a half-hearted effort to differentiate this claim, baldly stating that the allegedly defamatory statements "were only part of the defendants' campaign of destruction[.]" FAC ¶ 112. Beyond this perfunctory statement, however,

there is no way to read the allegations supporting the IIED claim as distinguishable from Rapaport's other claims.

Accordingly, Rapaport cannot satisfy the first requirement for an IIED claim, and even if he could, the claim would nonetheless fail because it is duplicative of other claims.

Second, Rapaport's IIED claim fails because he has not plausibly alleged that Iyer and Garrett possessed any "intent to cause severe emotional distress," let alone that Rapaport has suffered any actual emotional distress. *Restis*, 53 F. Supp. 3d at 729. Instead, Rapaport relies exclusively on the conclusory statement that Defendants acted with "intent to cause … severe emotional distress[.]" FAC ¶ 109. But "merely reciting" the legal standard will not do. *Quintanilla v. WW Int'l, Inc.*, 541 F. Supp. 3d 331, 352 (S.D.N.Y. 2021). Moreover, the communications Rapaport attaches to his amended complaint undermine his claim of any such intent. For instance, when Defendant Garrett contacted representatives of the Federalist Society, he merely referenced "his understanding" of what occurred and noted that he "cannot confirm" the rumor about sexual harassment. FAC, Ex. 3. Those are hardly words of someone acting with an "intent to cause severe emotional distress." But even if they were, Rapaport again relies only on legal conclusions when attempting to satisfy the emotional-distress requirement. *See, e.g.*, FAC ¶¶ 89, 99, 109 (cursory reference to "emotional distress" without any factual support).

For each of these reasons, Rapaport's IIED claim fails and should be dismissed.

### B.    Rapaport fails to allege facts plausibly showing a civil conspiracy.

Rapaport's civil conspiracy claim fares no better. In his amended complaint, Rapaport relies on the vague allegation that "[t]he three defendants were engaged in a civil conspiracy to defame the plaintiff[.]" FAC ¶ 123. To survive a motion to dismiss on such a claim, however, Rapaport must adequately plead the following elements: "(1) an agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in

the furtherance of a plan or purpose; and (4) resulting damage or injury." *Kesner v. Dow Jones & Co., Inc.*, 515 F. Supp. 3d 149, 191 (S.D.N.Y. 2021) (quotation marks omitted).

Rapaport's claim fails at the start, as he does not plausibly allege any agreement between the three Defendants to defame him. Instead, Rapaport alleges that Defendants Iyer and Garrett were "motivated by professional jealousy" and began a "plan to destroy the life and end the career of the plaintiff by defamation and forgery." FAC ¶¶ 32–33. But he fails to allege a single fact supporting the notion that Iyer and Garrett made any agreement concerning this alleged plan. Rather, Rapaport alleges that Iyer created a fake photograph that he posted online, and then Garrett presented that photograph to staff at the Federalist Society and Professor Epstein. *Id.* ¶¶ 35, 37, 42, 45. The only thread possibly tying Iyer and Garrett together is the statement that "[t]he publication of the forgery and defamatory claims were intended to coincide with the presence of defendant Garrett at the Federalist Society Student Leadership Conference[.]" *Id.* ¶ 40. But even Rapaport's use of the passive voice cannot obscure the fact that Rapaport fails to allege that *anyone*—let alone a Defendant—intended the events to coincide. Rapaport's assumption that Garrett and Iyer were working together is merely conjecture.

Rapaport does not attempt to mask this conjecture—the amended complaint admits that he does not know how or if the Defendants were working together. For example, in one paragraph, Rapaport alleges Garrett acted in furtherance of the conspiracy when he called Rapaport. *Id.* ¶ 51. But in the next paragraph, Rapaport states that the call was "*perhaps* at the prompting of defendant Epstein or the Student Division of the Federalist Society[.]" *Id.* ¶ 52 (emphasis added). Of course, the Federalist Society is not a Defendant in the action, and there is no alleged connection between Iyer and this phone call other than the threadbare recital that the call was part of the conspiracy.

10

Elsewhere, Rapaport alleges that Defendant Epstein chose "to join with defendants Iyer and Garrett" for unknown reasons. *Id.* ¶¶ 59, 62. But here again, Rapaport never alleges any sort of agreement between these three defendants. Instead, he simply speculates that "[b]y th[e] time" of early August 2022, Epstein had joined Iyer and Garrett. *Id.* ¶ 59.

These sparse allegations give no rise to any inference of an agreement. Rather, they suggest that if Defendants took any of the alleged actions, they did so with independent motives. *See Kesner*, 515 F. Supp. 3d at 192 (dismissing conspiracy claim where the complaint "does not come close to pleading enough factual matter (taken as true) to suggest that an agreement was made, *i.e.*, ... provide some factual context suggesting that the parties reached an agreement, not facts that would be merely consistent with an agreement." (cleaned up)). Such conjecture cannot save Rapaport's claim. *See Iqbal*, 556 U.S. at 678.

Because there is no alleged agreement, Rapaport also fails to plead the second and third elements of the claim—acts in furtherance of the agreement in which the Defendants intentionally participated. Even taking Plaintiff's allegations as true, the story is: (1) Iyer faked photographs of Rapaport and posted them online; (2) Garrett presumably saw these and shared them with those he thought would be concerned, including Defendant Epstein; and (3) Epstein was concerned about the photographs and statements and acted to protect his reputation. Even assuming these allegations are true, collecting various discrete events falls short of plausibly alleging any conspiratorial conduct. *See Andino v. Cummins*, No. 12-CV-852, 2014 WL 860350, at *8 (W.D.N.Y. Mar. 5, 2014) (dismissing conspiracy claim where the plaintiff only pointed "to a series of otherwise discrete actions" and failed to "assert any joint action or agreement by defendants or provide details of time and place where defendants allegedly conspired").

Finally, Plaintiff also fails to allege the fourth element of conspiracy—injury and damages. As discussed further below, Rapaport's alleged damages are purely speculative, as he alleges only that Defendants interfered with and harmed his future career prospects. *See* FAC ¶¶ 77, 124. The amended complaint lacks *any* allegations to support that statement. Rapaport has not identified a single way in which his career prospects have been harmed, beyond his own decision not to seek admission to the New York bar. *Id.* ¶ 14. But self-inflicted harm cannot satisfy this requirement. *Grove Press, Inc. v. Angleton*, 649 F.2d 121, 123 (2d Cir. 1981) ("The damage for which recovery may be had in a civil action is not the conspiracy itself but the injury to the plaintiff produced by specific overt acts.")

Because Rapaport fails to adequately allege a single element of this claim, it must be dismissed.

### C. The injurious falsehood claim fails because it is duplicative of the defamation claim, and Rapaport has not, and cannot, plead special damages.

Injurious falsehood is a tort similar to defamation that "consists of the knowing publication of false matter derogatory to the plaintiff's business of a kind calculated to prevent others from dealing with the business or otherwise interfering with its relations with others, to its detriment." *Kasada, Inc. v. Access Capital, Inc.,* No. 01-cv-8893 (GBD), 2004 WL 2903776, at *15 (S.D.N.Y. Dec. 14, 2004) (quoting *Waste Distillation Tech., Inc. v. Blasland & Bouck Engineers, P.C.,* 523 N.Y.S.2d 875, 877 (2d Dep't 1988)). The difference between defamation and injurious falsehood is that the former "impugns the basic integrity" of plaintiff while the latter "denigrat[es] the quality of the plaintiff's business's good or services." *Grayson v. Ressler & Ressler*, 271 F. Supp. 3d 501, 518–19 (S.D.N.Y. 2017) (emphasis omitted from second quote) (quotation marks omitted).

Given the similarity between the torts, courts routinely dismiss injurious falsehood claims that are duplicative of a defamation claim. *See O'Brien v. Alexander*, 898 F. Supp. 162, 172

(S.D.N.Y. 1995), *aff'd*, 101 F.3d 1479 (2d Cir. 1996) (collecting cases). This is especially true when a claim for injurious falsehood is based on the same statements as the defamation claim, and the damages sought for the two claims are the same. *Id.*

These rules require dismissal of Rapaport's claim for injurious falsehood at the outset. Rapaport states that his defamation claim is based on the "faked photographs" and accompanying statements, which allegedly caused lost career opportunities and harmed his reputation. FAC ¶¶ 91, 98. Rapaport's injurious falsehood claim is nearly identical, listing "[t]he above-described fake photographs and statements" as the cause of the loss of "his entire career prospects." FAC ¶ 102. Because there is no difference between his defamation claim and injurious falsehood claim, the Court should dismiss the latter claim.

Further, even if Rapaport's claim were not duplicative, he cannot meet the elements for injurious falsehood. To prove a claim of injurious falsehood, a plaintiff must show: "(1) falsity of the alleged statements; (2) publication to a third person; (3) malice; and (4) special damages." *Grayson*, 271 F. Supp. 3d at 518–19. The last element, special damages, requires concrete and quantifiable losses. *Id.* And here, it requires dismissal.

At the motion-to-dismiss stage, Rapaport "must plead facts demonstrating that *actual losses* were caused by the alleged tortious act." *Id.* at 519 (emphasis added). Further, Rapaport "must also plead the *amount* of special damages with specificity." *Id.* (emphasis added). When a plaintiff alleges special damages based on loss of employment, he must provide a specific amount of compensation lost. *Daniels v. St. Luke's-Roosevelt Hosp. Ctr.,* No. 02-cv-9567 (KNF), 2003 WL 22410623, at *8 (S.D.N.Y. Oct. 21, 2003) (dismissing claim for injurious falsehood because the plaintiff did not plead specific special damages). The mere assertion that the plaintiff lost his job is not enough. *Id.*

Here, Rapaport failed to plead any special damages. The complaint lists no specific or even general amount of damages, and Rapaport states only that the Defendants' conduct allegedly caused the "loss of the promised clerkship, his loss of the opportunity to become a member of the New York bar, and his entire career prospects." FAC ¶ 102. Indeed, Rapaport does not even mention basic details about his damages, like what type of clerkship he was allegedly promised, what judge that clerkship was with, or when the clerkship would take place. Nor does Rapaport state that he applied for membership to the New York bar and was rejected. Rapaport simply decided not to apply for membership. Every alleged damage, summed up by Rapaport's claim about the ruin of "his entire career prospects," is pure speculation. Thus, "the claim must be dismissed because the plaintiff has failed to allege special damages with sufficient particularity." *Daniels*, 2003 WL 22410623, at *8.

## III. Rapaport's Defamation Claims Are Untimely And Do Not Meet The Plausibility Standard.

Rapaport similarly fails to allege facts plausibly showing defamation. And several of the allegedly defamatory statements cannot give rise to a cause of action because they are time barred.

To survive a motion to dismiss, a plaintiff must sufficiently allege the following elements: "(1) a written defamatory statement of and concerning the plaintiff, (2) publication to a third party, (3) fault, (4) falsity of the defamatory statement, and (5) special damages or per se actionability." *Palin v. N.Y. Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019). Further, "New York courts encourage the resolution of defamation claims at the pleading stage, so as not to protract litigation through discovery and trial and thereby chill the exercise of constitutionally protected freedoms." *Ganske v. Mensch*, 480 F. Supp. 3d 542, 551 (S.D.N.Y. 2020).

Here, Rapaport alleges that the following statements by either Defendant Iyer or Defendant Garrett were defamatory: (1) Defendant Iyer posting a fake photograph of Rapaport along with

statements that he was fired for sexual harassment and banned from the New York office of Kirkland & Ellis on Reddit.com and Toplawschools.com, *see* FAC ¶¶ 37–38; (2) Defendant Garrett presenting these online materials to employees of the Federalist Society, *id.* ¶¶ 42, 54–56; (3) Defendant Garrett presenting the same materials to Professor Epstein, *id.* ¶ 45; and (4) Defendant Iyer sending a second fake photograph to Defendant Garrett and Professor Epstein, *id.* ¶ 50.  Rapaport has not plausibly alleged the elements for defamation for any of these statements, and the statements to the Federalist Society and Defendant Epstein were mentioned for the first time in the amended complaint and are therefore untimely.

### A.    The complaint's exhibits contradict Rapaport's claims that the online posts were defamatory.

For the allegation that Iyer posted a photograph and made various statements on Reddit.com and Toplawschools.com, the complaint's exhibits contradict that claim.  And, when exhibits contradict the factual allegations, it is the exhibits' contents that win the day.  *See TufAmerica,* 968 F. Supp. 2d at 592.

For one, neither of the forum threads Rapaport attached to his complaint suggests that *any* photograph was included.  *See* ECF 38-3.  And neither thread mentions Rapaport by name.  Moreover, there is no basis for inferring that Iyer posted anything on either thread.  Each of these facts is fatal to the plausibility of Rapaport's claim.

In the Reddit thread, the initial post is by a user named "Isa931," and the post is entitled "Anyone wanna spill the tea on the summer at Kirkland NY that got fired?"  ECF No. 38-3 at 3. Another user named "Throaway9219749936" responds: "Can confirm that he is in fact banned from the building- security had a picture of him in the lobby.  Also the bar where the last event of the summer was had a picture of him as well to make sure he didn't come back."  *Id.* at 4.  Then another user named "BrownComic" states: "Guy also sexually harassed an attorney."  *Id.* at 5.

This conversation contradicts Rapaport's allegations in multiple ways.  Again, there is no indication that anyone posted a photo of Rapaport on this thread, much less that Defendant Iyer did so.  No one even mentions Rapaport by name, further suggesting that there is no photo or any other way to identify that Rapaport is the subject of this conversation.

Moreover, the first post asks about a summer associate, and then multiple users engage in a conversation about that associate.  Two different users mention that the summer associate was banned from the building, and a third user notes that he was fired for sexual harassment.  *Id.* at 3–5.  And Rapaport does not allege that Iyer made any of these statements, let alone that he created numerous anonymous accounts on Reddit and then engaged in a fake conversation with himself.  *See* FAC ¶ 38 (alleging only that the photo was "accompanied by false and defamatory statements").  The Reddit thread thus contradicts: (1) the assertion that Iyer posted a photograph; and (2) the implication that Iyer made false statements concerning why Rapaport was fired and that he was banned from Kirkland & Ellis's New York office.

The same is true for the thread on Toplawschools.com.  Like the Reddit thread, there is no suggestion of a picture being posted or Rapaport being named or identified by a photo.  Rather, the conversation begins with a user inquiring about a summer associate who got fired.  ECF No. 38-3 at 7.  Someone responds that "the guy apparently harassed his PA," *id.*, and then other users reference the security photo that they allegedly saw.  ECF No. 38-3 at 11, 13.  Once again, no post mentions Rapaport by name and no post suggests that there is a photo posted on the thread.  Further, the face of the exhibit suggests that the conversation occurred between multiple users, none of which is clearly or inferentially Defendant Iyer.

Rapaport's defamation claim is doomed by these contradictions between the complaint's allegations and the exhibits' contents.  To state a claim for defamation, "a complaint must 'identify

adequately who actually made the allegedly [defamatory] statements, when they were made and to whom they were communicated.'" *Watson v. NY Doe 1*, 439 F. Supp. 3d 152, 160 (S.D.N.Y. 2020). While Rapaport alleges that Iyer posted a fake photo on these websites and possibly made accompanying defamatory statements, the exhibits from these websites contradict that allegation.

When exhibits to the complaint contradict the allegations in the complaint, "such allegations cannot survive a motion to dismiss[.]" *Koulkina v. City of New York,* 559 F. Supp. 2d 300, 329 (S.D.N.Y. 2008). The Court should therefore reject Rapaport's defamation claim based on the internet threads attached to the complaint. *See Matusovsky v. Merrill Lynch*, 186 F. Supp. 2d 397, 400 (S.D.N.Y. 2002) (explaining that "a court may consider documents attached to the complaint as exhibits," and "[i]f a plaintiff's allegations are contradicted by such a document, those allegations are insufficient to defeat a motion to dismiss.").

> **B.    The conversations with the Federalist Society and Defendant Epstein are time barred, protected by the common interest privilege, and do not plausibly allege fault.**

The remaining allegedly defamatory statements all fail for three additional reasons. First, they are time barred, as Rapaport included those statements for the first time in his amended complaint. Second, even if the claims were timely, they are all covered by the common-interest privilege, which a plaintiff can overcome only with a showing of actual malice. Third, Rapaport has failed to plead actual malice, or even negligence, and therefore Rapaport has failed to plead the fault element for these statements.

1. The statements Defendants Iyer and Garrett made to the Federalist Society and Professor Epstein are all time barred. In his original complaint, Rapaport does not mention any of these communications. Rather, the original complaint is premised on the internet posts and a Title IX complaint. *See* Compl. ¶¶ 6–9, 23–27. These new communications do not relate back to the original complaint.

Under the relation-back doctrine of Rule 15(c), "[c]ourts in this district have held that defamation claims do not relate back to a prior pleading where they allege 'new instances of defamation.'" *Cojocaru v. City Univ. of New York*, No. 19-cv-5428 (AKH), 2020 WL 5768723, at *4 (S.D.N.Y. Sept. 28, 2020) (quoting *Pruiss v. Bosse*, 912 F. Supp. 104, 106 (S.D.N.Y. 1996)). Each publication of a defamatory statement "gives rise to a separate cause of action and does not relate back to an earlier publication." *Purnell v. Diesso*, No. 94-cv-4361 (RPP), 1996 WL 37770, at *2 (S.D.N.Y. Jan. 31, 1996).

In his amended complaint, Rapaport notes for the first time two conversations between Defendant Garrett and employees of the Federalist Society—an in-person conversation occurring on July 29, 2022, and an email dated August 2, 2022.  FAC ¶¶ 42, 54.  Rapaport also alleges that Defendant Garrett communicated with Defendant Epstein around the end of July 2022, and that Defendant Iyer emailed Professor Epstein in the same timeframe.  FAC ¶¶ 45, 50.  Rapaport filed his amended complaint discussing these conversations and emails on May 24, 2024—well beyond the one-year statute of limitations.  *See supra* Part I.  These statements all give rise to separate causes of action for defamation and do "not relate back" to any earlier publication.  *Purnell*, 1996 WL 37770, at *2.  Thus, Rapaport cannot pursue a defamation claim based on any of the conversations Iyer and Garrett had with either the Federalist Society or Defendant Epstein.

2.  Even if these statements are not time barred, they are all protected under the common interest privilege.  New York recognizes a common interest privilege for defamation and defamation *per se* "when the allegedly defamatory statement is made between persons who share a common interest in the subject matter." *Thorsen v. Sons of Norway*, 996 F. Supp. 2d 143, 173–74 (E.D.N.Y. 2014).  The privilege applies to "members of a group or organization." *Walther v.*

*Maricopa Int'l Inv., Corp.*, No. 97-cv-4816 (HB), 1998 WL 689943, at \*2 (S.D.N.Y. Sept. 30, 1998) (collecting cases).

When the privilege applies, it "protects a defendant from liability unless he made the statements at issue *solely* with malice." *Grayson*, 271 F. Supp. 3d at 514–15. And "[p]laintiffs cannot plead malice simply by conclusorily labeling the statements so." *Id.* at 515; *accord id.* (allegations of malice "based on 'surmise, conjecture, and suspicion' are insufficient."). Rather, a plaintiff must "plead facts suggestive enough to warrant discovery." *Id.* (quotation marks omitted).

The common interest privilege applies to the statements Defendant Garrett made to the Federalist Society and any communications between the three Defendants. Rapaport notes that all Defendants are involved with the Federalist Society—Defendants Iyer and Garrett served as the Federalist Society chapter presidents for NYU School of Law. FAC ¶¶ 2, 4. And Defendant Epstein "serves as the faculty advisor to the Federalist Society chapter." *Id.* ¶ 6. Aside from the internet posts, Rapaport alleges only that the defamatory statements were shared among Federalist Society members—either between the three Defendants or between Defendant Garrett and employees of the Federalist Society. *See Id.* ¶¶ 42, 45, 50, 54–56.

All these members and employees of the same organization have a "common interest in the subject matter," *Grayson*, 271 F. Supp. 3d at 514–15, as Rapaport was also a member of the Federalist Society. Indeed, the email Rapaport attached to his complaint from Defendant Garrett to employees of the Federalist Society lays out this common interest very clearly. Defendant Garrett explains that he shared the information about Rapaport with Defendant Epstein, who "feels that Lee Otis [of the Federalist Society] should be made aware, since Gideon is going to be participating" in a fellowship put on by the Federalist Society "for which Professor Epstein wrote Gideon a (complicated) letter of recommendation." ECF No. 38-3 at 2.

19

Because the common interest applies to all the communications between the Defendants and between Defendant Garrett and the Federalist Society, Rapaport must allege that Defendants Iyer and Garrett acted *solely* with malice.  But Rapaport concedes that he does not know *why* Defendants Garrett and Iyer made these statements—he simply guesses that they "were apparently motivated by professional jealousy."  FAC ¶ 33.  This conclusory assertion is insufficient to plead actual malice.  *See Grayson*, 271 F. Supp. 3d at 514–15.  And it overlooks the obvious fact that these various individuals, each of whom is involved with the Federalist Society, was merely acting out of a concern for how rumors about Plaintiff Rapaport may impact the organization.  Of course, as Rapaport acknowledges in his first amended complaint, he suffered no harm from Defendant Garrett's statements to the Federalist Society, as he nonetheless participated in the James Kent Academy.  *See* FAC ¶ 70.

3.  In fact, Rapaport's allegations cannot even meet the lower level of fault—negligence— for the communications between Defendant Garrett and the Federalist Society.  *See Watson*, 439 F. Supp. 3d at 160.  Rapaport claims that Defendant Garrett made two defamatory statements to employees of the Federalist Society.  FAC ¶ 54.  Those statements were that Rapaport was fired for sexual harassment and banned from Kirkland & Ellis's New York office.  *Id.* ¶¶ 55–56.  Here again, Rapaport failed to plead the fault element of defamation for either of these statements.

As to the first statement concerning sexual harassment, Defendant Garrett did not even assert its truth.  Instead, he said that he could not "confirm the sexual harassment claim specifically[.]"  ECF No. 38-3 at 2.  Further, Defendant Garrett references the internet threads as his basis for suggesting that Rapaport may have been fired for sexual harassment.  *Id.*  As noted above, it is unclear who made that statement.  Rapaport does not allege that the statement originated with Iyer or Garrett.  He says only that Iyer allegedly posted a fake photograph about

Rapaport's being banned from the building, and in the next paragraph of the complaint, Rapaport suggests that the photo was "accompanied by false and defamatory statements that the plaintiff was fired for sexual harassment[.]" FAC ¶ 38. Rapaport does not explicitly assert that Iyer made that statement, and the internet thread undermines the inference that Iyer made such a statement, as it shows that multiple users were engaged in a conversation about a summer associate in New York. *See supra* Part III.A. Nevertheless, there is no allegation connecting Defendant Garrett to the creation of that statement. There is also no allegation that Defendant Garrett knew or should have known the statement was false. Rapaport has therefore failed to plausibly plead that Defendant Garrett made this statement negligently.

In sum, Rapaport's defamation claim cannot stand—it is untimely and contradicted by the amended complaint's exhibits. Accordingly, the Court must dismiss this claim.

## IV. Rapaport's Claims Are Governed By New York Law And Thus He Cannot Bring A False Light Claim Under New Jersey Law.

Finally, Rapaport asserts a claim under New Jersey law for "False Light and Invasion of Privacy" because he lived in New Jersey at the time of the events mentioned in the complaint. FAC ¶¶ 114–21. But Rapaport's claims are governed by the laws of New York, and New York does not recognize a claim for false light. *See Henry v. Fox News Network LLC*, 629 F. Supp. 3d 136, 151–52 (S.D.N.Y. 2022).

While there is a "a presumptive rule that the law of [the] plaintiff's domicile applies" to a defamation claim or claims, like false light, that are analogous to defamation, that rule does not apply when the allegedly defamatory statements are made in multiple states or nationally. *Prince v. Intercept*, 634 F. Supp. 3d 114, 132 (S.D.N.Y. 2022). Courts consider online statements to be made nationally, *id.*, and thus the alleged defamatory statements in the complaint were made nationally. FAC ¶¶ 37, 42.

For these types of statements, a court must determine whether another state has a more significant relationship to the defamation claim than the state of the plaintiff's domicile. *Prince*, 634 F. Supp. 3d at 132. That determination requires the court to "weigh all the factors that might impact on the interests of various states in the litigation including, [1] where the plaintiff suffered the greatest injury; [2] from where the statements emanated and were broadcast; [3] where the activities to which the allegedly defamatory statements refer took place; and [4] the policy interests of the states whose law might apply." *Id.* at 133 (internal alterations omitted) (citing *Kinsey v. N.Y. Times Co.*, 991 F.3d 171, 177 (2d Cir. 2021)).

Each of those factors weighs in favor of applying New York law here. Rapaport's alleged injuries to his reputation and inability to be admitted to the bar (factor 1) are happening in New York, as that is where Rapaport intends to practice law. FAC ¶ 14. Further, for factor 2, many of the alleged defamatory statements were either online (and thus not in any particular state) or made to Defendant Epstein, who is located in New York. Indeed, all parties met and interacted in New York at NYU Law School, and the events surrounding Rapaport's position at Kirkland & Ellis took place in New York. Thus, factor 3 (where the activities took place) also supports applying New York law. Finally, factor 4 (policy interests) favors New York, as the state "has strong policy interests in regulating the conduct of its citizens[.]" *Prince*, 634 F. Supp. 3d at 133 (quoting *Kinsey*, 991 F.3d at 177).

The only connection to New Jersey is that Rapaport happens to live there. Thus, this Court should apply New York law to Rapaport's false light claim and dismiss it because no such claim exists in New York.

Finally, even if Rapaport could bring a New Jersey false-light claim, that claim would nonetheless fail because it is completely duplicative of his defamation claim. As discussed above,

in reference to the injurious falsehood claim, New York courts dismiss privacy-related torts that are just a repackaging of a plaintiff's defamation claim. *See Chord Assocs., LLC v. Protech 2003-D, LLC*, No. 07-cv-5138, 2010 WL 3780380, at *4 (E.D.N.Y. Sept. 21, 2010). This is true even for false-light claims under another state's law. *See Baiqiao Tang v. Wengui Guo*, No. 17-cv-9031 (JFK), 2019 WL 6169940, at *7 (S.D.N.Y. Nov. 20, 2019) (dismissing California false-light claim because it was duplicative of New York defamation claim). Accordingly, even if the Court found that Rapaport could bring this one New Jersey claim, it should dismiss the claim as an impermissible reformulation of the defamation claim.

## CONCLUSION

Rapaport's amended complaint must be dismissed because it advances no viable claims against Defendants Iyer and Garrett. Indeed, each claim fails for either being time barred or due to Rapaport's failure to plausibly allege facts showing the required elements. The Court should therefore dismiss Rapaport's amended complaint in its entirety. And it should do with prejudice, as Rapaport has already amended his complaint once, and there is nothing he can do to cure the defects described in this motion, especially the lack of timeliness.

August 16, 2024                              Respectfully submitted,

                                             */s/ Brian J. Field*
                                             Brian J. Field* (D.C. Bar No. 985577)
                                             Cristina Martinez Squiers* (Texas Bar No. 24093764)
                                             SCHAERR | JAFFE LLP
                                             1717 K Street NW, Suite 900
                                             Washington, DC 20006
                                             Telephone: (202) 787-1060
                                             Facsimile: (202) 776-0136
                                             Email: bfield@schaerr-jaffe.com
                                             Email: csquiers@schaerr-jaffe.com

                                             *Admitted *pro hac vice*

                                             *Counsel for Defendants*
                                             *Ajay Srinivasan Iyer and*
                                             *Zachary George Garrett*