UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
GIDEON RAPAPORT

                        Plaintiff, *pro se*

-against-

AJAY SRINIVASAN IYER, ZACHARY GEORGE
GARRETT, RICHARD ALLEN EPSTEIN

                        Defendants.
-------------------------------------------------------------------x

Case No. 1:23-cv-06709

**ORAL ARGUMENT REQUESTED**

# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO DISQUALIFY DEFENDANT'S COUNSEL, SCHAERR-JAFFE LLP

**GIDEON RAPAPORT, *PRO SE***
GideonRapaportLaw@outlook.com
(862) 213-0895
#627 1078 Summit Avenue
Jersey City, New Jersey, 07310

## **PRELIMINARY STATEMENT**

Plaintiff Gideon Rapaport moves for the disqualification of the law firm Schaerr-Jaffe LLP, concurrent counsel to defendants Ajay Srinivasan Iyer and Zachary George Garrett. To ensure the integrity of the proceedings, disqualification is required as a result of the firms' multiple conflicts of interest created by these concurrent representations, in violation of Rule 1.7 of the New York Rules of Professional Conduct[1]. This Motion does not contemplate an adjudication on the merits of anything other than the disqualification of opposing counsel, which is the purpose of this motion, and engages in legal argument construing facts in different ways to demonstrate how the adversarial and ethical matters *could* be argued or determined in various hypothetical scenarios, and their legal significance in general.

---

[1] The New York Rules of Professional Conduct, 22 N.Y.C.R.R. 1200 (2022) (hereinafter, "RPC") apply to the conduct of attorneys appearing before the United States District Court for the Southern District of New York. *See* Rule 1.5(b)(5) of the Local Rules of the Southern and Eastern District Courts of New York.

## **PROCEDURAL HISTORY**

On July 28, 2023, Plaintiff Gideon Rapaport, proceeding *pro se*, filed an action for defamation, defamation per se, false light invasion of privacy and intentional infliction of emotional distress. This case initially numbered three John Does, and described them by their tortious actions.

After investigation and the enforcement of subpoenas against Kirkland & Ellis LLP, the Federalist Society of Law and Public Policy, Plaintiff Rapaport discovered the true names of the Does and retained counsel to continue the case on April 24, 2024.

On May 24, 2024, Plaintiff Rapaport, represented by former counsel, filed a First Amended Complaint, that named the former-Doe defendants.

On September 9, 2024 Plaintiff Rapaport resumed proceeding *pro se*, and upon a thorough review of the docket for changes, combined with his insight into the case, and knowledge of the persons and circumstances involved, he realized that the concurrent representation by Schaerr-Jaffe LLP of defendants Iyer and Garrett could not be ethical and undermined the validity of proceedings.

## **FACTS**

Resolving a disqualification motion requires a "painstaking analysis of the facts" of a case. *Fund of Funds, Ltd. v. Arthur Andersen & Co.*, 567 F.2d 225, 227 (2d Cir. 1977). Plaintiff hereby incorporates by reference the facts set forth in his First Amended Complaint, which itself incorporates by reference some facts from the Original Complaint, and addresses herein only those facts necessary to resolve the instant motion.

The exhibits in the record, which are referenced in the First Amended Complaint provide a significant insight into intentions, communications and actions of defendants Iyer and Garrett, and will also be used to demonstrate the disparate interests, settlement incentives, and degrees of culpability that any reasonable attorney would easily become aware of. The disparate interests include contradictory arguments as to liability, because although accused of the same tort liability and of conspiracy as a legal, the tortious actions alleged against either defendant as a factual matter are very different.

In addition to the First Amended Complaint and exhibits, the record establishes that attorneys of Schaerr-Jaffe LLP were admitted *pro hac vice*, and that they do not maintain an address or physical presence in New York. Rather it is a Washington D.C. based boutique law firm, with a secondary office in San Francisco, California.

## **LEGAL STANDARD**

### Disqualification of Counsel

"The authority of federal courts to disqualify attorneys derives from their inherent power to 'preserve the integrity of the adversary process'" *Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005) (quoting *Bd. of Educ. v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979)) and from their responsibility to supervise members of the bar. *Hull v. Celanese Corp.*, 513 F.2d 568, 571 (2d Cir. 1975). The Second Circuit has consistently held that concurrent representation of clients with concurrent adverse interests is "prima facie improper." *Cinema 5, Ltd. v. Cinerama, Inc.*, 528 F.2d 1384, 1387 (2d Cir. 1976) and has gone so far as to to demand that "an attorney must avoid not only the fact, but even the appearance of representing conflicting interests." *Id.*

Sacrificing the interests of one client to protect the other, and denying to both the opportunity to make their best arguments, including when they come at the expense of each other is precisely the mischief that Rule 1.7 of the RPC is set out to prevent[2].

---
2 Rule 1.7: (a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
> (1) the representation of one client will be directly adverse to another client; or
> (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

It is the burden of the counsel engaging in concurrent representation of clients with adverse interests to demonstrate that these adverse interests could have no "actual or apparent" effect on their representation. *Cinema 5, Ltd. v. Cinerama, Inc.*, 528 F.2d 1384. Opposing Counsel must "show, at the very least, that there will be no actual or apparent conflict in loyalties or diminution in the vigor of his representation." *Id.* This burden was later reflected upon by the Second Circuit as being "so heavy that it will rarely be met." *GSI Commerce Sols., Inc. v. BabyCenter, L.L.C.*, 618 F.3d 204, 209 (2d Cir. 2010).

Silence on the factual or legal issues upon which there is a conflict is not a solution, as a "diminution of vigor" *Cinema 5, Ltd. v. Cinerama, Inc.*, 528 F.2d 1384 is enough to disqualify conflicted counsel.

When waiver is not secured prior to taking the engagement, disqualification is appropriate, because waiver after a motion to disqualify cannot obtain effective consent. *Discotrade Ltd. v. Wyeth-Ayerst Int'l, Inc.*, 200 F. Supp. 2d 355, 359 (S.D.N.Y. 2002).

<u>Bankruptcy</u>

The Bankruptcy Code of the United States provides that some debts are incapable of being discharged under bankruptcy. A debt "for willful and malicious injury by the debtor to another entity or to the property of another entity" is one such debt. 11 U. S. C. § 523(6). In *Kawaauhau v. Geiger*, 523 U.S. 57, the Court affirmed the basic rule that

5

debts arising from judgments in tort for negligence are dischargeable in bankruptcy, and even went further to exclude reckless conduct, exceeding of negligence, from 11 U. S. C. § 523 exception to discharge, because this conduct was not intentional.

<u>Professional Ethics re Forgery</u>

According to the professional ethics rules regulating attorneys of every state and jurisdiction in the United States, there exists some form of a good character requirement for becoming barred, and expectations of good conduct required to avoid attorney discipline which may include disbarment. Forgery is a universally condemned form of malfeasance that due to its simultaneously fraudulent nature and undermining of public trust represents the antithesis of integrity.

Rule 8.4(c) of the New York Rules of Professional Conduct, 22 N.Y.C.R.R. 1200, prohibits lawyers from engaging in conduct involving "dishonest, fraud, deceit or misrepresentation". Forgery directly involves deceit and misrepresentation, because it entails creating something inherently fake, and passing it off as real in order to deceive others. This rule is a general prohibition, and does not only apply to the lawyer when they are actually practicing law.

**Argument**

Culpability

Iyer and Garrett are accused of the same legal culpability, including through the legal mechanism of conspiracy, and would be expected to be jointly and severally liable for all damages of the instant case. However, this overlap is only surface-level, because even a cursory look at the facts that Iyer and Garrett could be seen as accused of each doing roughly one half of their joined operation. When Iyer forged, Garrett distributed. When Iyer posted anonymously online, Garrett send the email contained in Exhibit 3 under his own name. When Iyer testified as a witness who was actually employed at Kirkland & Ellis LLP, Garrett "investigated" as an outsider doing internet sleuthing. When Iyer was in New York and took credit for taking the picture shown in Exhibit 2 in the lobby of the firm, which he actually forged, Garrett was at the Student Leadership Conference hosted for incoming Federalist Society Chapter Presidents far away.

It would be to their benefit to attempt to disprove a conspiracy, and in doing so each could only be liable for their own actions. The next logical step would be to blame the other for having deceived them. Iyer would claim that he had never taken or sent the picture Exhibit 2, and that Garrett was lying in his email by pinning the forgery on him Exhibit 3. On the other hand, Garrett would claim that as an outsider, Iyer tricked him with a forgery and false testimony to having seen the "Do Not Admit" poster, and could not be malicious, reckless or perhaps even negligent. Iyer could also claim that Garrett

7

invented the sexual harassment defamation, and just took a picture of something he saw as piece of evidence.

It is hard to imagine more diametrically opposed arguments, yet somehow the attorneys at Schaerr-Jaffe LLP do not find this to be a conflict. This concurrently shared counsel would never be able to make these arguments, and thus Garrett and Iyer will be deprived, although this likely benefits one at the expense of the other.

Damages, Settlement Incentives and Bankruptcy Dischargeability

Iyer and Garrett do not have the same financial exposure to damages. Iyer stands to lose significant amounts of money, while Garrett is close to judgment-proof. This Court could in a closed setting absent Plaintiff, determine if Iyer is footing the entire bill for the high-end representation engaged as a threshold matter.

Considering the effects of bankruptcy law on "willful and malicious injury" versus negligent injury, Garrett would not be meaningfully affected by a negligent verdict no matter how large, and so he has no incentive to engage in stratagems that gamble for a full acquittal but risk "willful and malicious injury" status that would impose upon him financial liability for life. On the other hand, Iyer would stand to lose significantly in bankruptcy.

As far as settlement, Garrett would have less to lose by having less to offer, and more to gain from avoiding the risk of a nondischargeable debt. Iyer on the other hand, faces a fat tail risk, that is not very far out considering that he has been identified in one

document, and by multiple witnesses as the source of the second forgery (Exhibit 2), that he claimed to have "taken" himself less than a day after the less sophisticated, first forgery disappeared from the internet.

### Attorney Discipline and Character and Fitness Consequences

Iyer is already a member of the New York bar, while upon information and belief, Garrett is not a member of any bar. Iyer is fully committed, and cannot afford to be found by a jury to have forged a "Do Not Admit" notice as having come from a law firm, in a malicious act of career-ending defamation. This finding of fact, on a matter of such moral turpitude could very easily result in disbarment, which is an even worse outcome, as a greater fall, than not having the opportunity to join. Having not joined, if Garrett were to be found culpable by a jury of trafficking in a forged image (but not forging it himself) as demonstrated in Exhibit 3, whether maliciously, negligently or somewhere in between, he could do good deeds for a few years and present himself to a character and fitness committee as a young man who made a mistake.

### The Conflicted Schaerr-Jaffe LLP Has Already Introduced Prejudice and Affected Proceedings

Schaerr-Jaffe LLP cannot resolve these immense conflicts of interest that touch every aspect of the case with silence. In their Motion to Dismiss of August 16th, Docket No. 54, they made arguments on behalf of both of these clients, and cunningly avoided central aspects of the case against their two clients. They talked about the statute of limitations and a qualified privilege to "warn", the first of these is simple and purely

9

legal matter that will be resolved in other proceedings, but the qualified privilege could only apply to Garrett as the recipient of a forged "'Security Desk Photo' taken" by Iyer. Iyer could never claim a qualified privilege to warn others of something that he himself knew to be false because he had fabricated it himself.

While practically ignoring, and certainly refusing to engage with the accusation that Iyer was accused of actual forging the images twice (Exhibits 1 & 2), and that co-defendant Garrett effectively identified him as the culprit of that in Exhibit 3, Schaerr-Jaffe LLP spun the case into a different direction. They chose to emphasize the defamation relating to sexual harassment, not being barred from the premises, which Iyer is also accused of, but is not caught by an exhibit at this stage in the way that Garrett who wrote "my understanding is that Gideon Rapaport was fired from his summer associate position at Kirkland & Ellis NY last week for sexually harassing a practice assistant or an attorney."

## Conclusion

<u>The Conflicted Schaerr-Jaffe LLP Should be Disqualified Now to Ensure the Integrity of the Proceedings, Prevent Delay, and Promote Efficiency</u>

Everyone is entitled to due process and loyal counsel. A conflict of this magnitude undermines the integrity of these proceedings, the administration of justice, and the interest of the Plaintiff of not becoming a party to unethical treatment of a defendant.

The Plaintiff's motion to disqualify Schaerr-Jaffe LLP should be granted.

Dated: Vancouver, British Columbia (Canada)
September 13, 2024

                                         Respectfully submitted,

                                         /s/ Gideon Rapaport, *pro se*
                                         GideonRapaportLaw@Outlook.com
                                         (862) 213-0895
                                         #627 1078 Summit Avenue
                                         Jersey City, New Jersey, 07310