UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
GIDEON RAPAPORT,

                Plaintiff,                Case No.: 1:23-cv-06709 (JGLC)

    -against-

AJAY SRINIVASAN IYER,
ZACHARY GEORGE GARRETT, and
RICHARD ALLEN EPSTEIN,

                Defendants.
------------------------------------------------------------X


**DEFENDANTS AJAY SRINIVASAN IYER AND
ZACHARY GEORGE GARRETT'S OPPOSITION TO PLAINTIFF'S MOTION TO
DIQUALIFY DEFENDANTS' COUNSEL, SCHAERR JAFFE, LLP**

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................................. 1

ARGUMENT .......................................................................................................................... 1

    I.    Mr. Rapaport Cannot Meet His Heavy Burden Because He Relies On Speculation Alone. .................................................................................................. 2

    II.   Even If A Conflict Existed, Defendants Iyer And Garrett Expressly Waived It. ......... 7

CONCLUSION ....................................................................................................................... 8

# TABLE OF AUTHORITIES

**Cases**

*Akagi v. Turin Hous. Dev. Fund Co.*,
   No. 13-cv-5258-KPF, 2017 WL 1076345 (S.D.N.Y. Mar. 22, 2017) .................................. 3, 7, 8

*Campolongo v. Campolongo*,
   2 A.D.3d 476 (N.Y. App. Div. 2003) ............................................................................................ 3

*Cinema 5, Ltd. v. Cinerama, Inc.*,
   528 F.2d 1384 (2d Cir. 1976) .................................................................................................... 2, 5

*Evans v. Artek Sys. Corp.*,
   715 F.2d 788 (2d Cir. 1983) .......................................................................................................... 3

*H&H Acquisition Corp. v. Fin. Intranet Holdings*,
   No. 98-cv-5269-BSJ, 2000 WL 502869 (S.D.N.Y. Apr. 27, 2000) .............................................. 6

*Kleeberg v. Eber*,
   No. 16-cv-9517-LAK-KHP, 2019 WL 2284724 (S.D.N.Y. May 29, 2019) ................................ 5

*Merck Eprova AG v. ProThera, Inc.*,
   670 F. Supp. 2d 201 (S.D.N.Y. 2009) ...................................................................................... 1, 3

*Murray v. Metro. Life Ins. Co.*,
   583 F.3d 173 (2d Cir. 2009) .......................................................................................................... 4

*Patterson v. Balsamico*,
   440 F.3d 104 (2d Cir. 2006) .......................................................................................................... 4

*Razzoli v. City of New York*,
   No. 16-cv-7136-LGS-JLC, 2021 WL 162029 (S.D.N.Y. Jan. 19, 2021) ..................................... 6

*S & S Hotel Ventures Ltd. P'ship v. 777 S.H. Corp.*,
   508 N.E.2d 647 (N.Y. 1987) ........................................................................................................ 3

*Scantek Med., Inc. v. Sabella*,
   693 F. Supp. 2d 235 (S.D.N.Y. 2008) .......................................................................................... 3

*Total Asset Recovery Servs., LLC v. Huddleston Cap. Partners VIII LLC*,
    No. 1:21-cv-2466-ALC, 2022 WL 1125924 (S.D.N.Y. Apr. 15, 2022) ......................... 3, 5, 6, 8

*Williams v. Meachum*,
    948 F.2d 863 (2d Cir. 1991) ................................................................................................ 8

*Zhang v. Weseley*,
    No. 23-cv-00014-ALC, 2024 WL 1134596 (S.D.N.Y. Mar. 15, 2024) ......................... 3, 6, 7, 8

**INTRODUCTION**

Motions to disqualify counsel are disfavored in this Circuit, and they conflict with the right of a party to choose his or her counsel. That is why they are subject to a "high standard of proof," and why courts must be wary of parties attempting to use disqualification motions for tactical advantage. *Merck Eprova AG v. ProThera, Inc.*, 670 F. Supp. 2d 201, 207 (S.D.N.Y. 2009).

Here, *pro se* Plaintiff Gideon Rapaport ignores this authority and instead concocts a theory that a conflict exists between Defendants Iyer and Garrett such that they cannot both be represented by their attorneys of choice at Schaerr | Jaffe, LLP (the "Firm"). As demonstrated below, Mr. Rapaport's motion fails at every turn, and it should be swiftly denied. In fact, Mr. Rapaport appears to be the only person who perceives a conflict here. Defendants Iyer and Garrett disagree, as do their attorneys at the Firm. Apparently, Mr. Rapaport's previous counsel also disagreed, as he never pursued the relief Mr. Rapaport now seeks *pro se*. This is all unsurprising given that Mr. Rapaport's motion does not contain a single proven fact. Rather, the motion is based on rank speculation, including such far-fetched events as Iyer and Garrett turning on each other to disprove Mr. Rapaport's conspiracy claim and to avoid further liability and an adverse jury verdict that results in bankruptcy. This type of conjecture cannot meet the heavy burden required to disqualify opposing counsel.

Nevertheless, even assuming that Mr. Rapaport's parade of horribles were reasonable and that a conflict existed, Defendants Iyer and Garrett signed a waiver before the Firm began representing them in this case. The Court should therefore reject Mr. Rapaport's tactical efforts to deprive Defendants Iyer and Garrett of their counsel of choice.

**ARGUMENT**

Mr. Rapaport's disqualification motion comes nowhere close to meeting the required "high standard of proof" for at least two reasons. First, he has not identified any facts that suggest—let

alone prove—a conflict in the Firm's representation of both Iyer and Garrett. The only basis for his objection to the joint representation is his assumption that the complaint's allegations are entirely true, and that Iyer and Garrett will engage in a series of decisions and arguments that might *possibly* lead to a conflict. Second, even if this potential conflict occurred, Iyer and Garret have provided informed consent to be jointly represented. The Court should therefore deny Mr. Rapaport's motion.

I. **Mr. Rapaport Cannot Meet His Heavy Burden Because He Relies On Speculation Alone.**

Mr. Rapaport's motion relies on a misunderstanding of the law and a mischaracterization of the facts. For these reasons, Mr. Rapaport fails to show any basis for disqualifying the Firm.

1. As to the law, Mr. Rapaport suggests that the Firm's representation of Defendants Iyer and Garrett is "prima facie improper" due to "concurrent adverse interests." Mem. of Law in Support of Mot. to Disqualify at 4 ("Mot.") (ECF No. 69) (quoting *Cinema 5, Ltd. v. Cinerama, Inc.*, 528 F.2d 1384, 1387 (2d Cir. 1976)). As demonstrated below, there are no such "adverse interests," but Mr. Rapaport also misstates the law. In *Cinema 5*, the Second Circuit addressed the "somewhat unusual" circumstance where a partner at a law firm representing the plaintiff was also a partner at another law firm representing the defendant "in other litigation of a somewhat similar nature." 528 F.2d at 1385. By representing adverse parties, there existed a risk to "confidential communications," *id.*, and the Second Circuit held that it "would be questionable conduct for an attorney to participate in any lawsuit against his own client without the knowledge and consent of all concerned," *id.* at 1386.

Mr. Rapaport provides none of this context when he quotes *Cinema 5* and similar cases to suggest that the Firm's concurrent representation of Defendants Iyer and Garrett is *per se* improper. Those cases are inapposite, and Mr. Rapaport does not even try to show any similarities here.

2

Rather than following Mr. Rapaport's misdirection, the Court should start from the venerable principle that a party's right to choose counsel "is a valued right and any restrictions" on that right "must be carefully scrutinized." *S & S Hotel Ventures Ltd. P'ship v. 777 S.H. Corp.*, 508 N.E.2d 647, 650 (N.Y. 1987). That is why the burden is on the moving party—here, Mr. Rapaport—to make a "clear showing" that disqualification is warranted. *Total Asset Recovery Servs., LLC v. Huddleston Cap. Partners VIII LLC*, No. 1:21-cv-2466-ALC, 2022 WL 1125924, at *1 (S.D.N.Y. Apr. 15, 2022); *accord Campolongo v. Campolongo*, 2 A.D.3d 476, 476 (N.Y. App. Div. 2003) (same). Moreover, that is why the moving party faces "a high standard of proof," as disqualification motions could otherwise "be used as a litigation tactic." *Merck*, 670 F. Supp. 2d at 207 (citing *Evans v. Artek Sys. Corp.,* 715 F.2d 788, 791–92 (2d Cir. 1983)). Given this "potential for abuse," a "motion[] to disqualify opposing counsel [is] subject to particularly strict scrutiny." *Scantek Med., Inc. v. Sabella*, 693 F. Supp. 2d 235, 238 (S.D.N.Y. 2008).

Under these standards, motions like Mr. Rapaport's are viewed "with disfavor." *Merck*, 670 F. Supp. 2d at 207; *see also Akagi v. Turin Hous. Dev. Fund Co.*, No. 13-cv-5258-KPF, 2017 WL 1076345, at *9 (S.D.N.Y. Mar. 22, 2017) ("Second Circuit precedent is clear that courts should be reluctant to disqualify attorneys."). A party meets this high standard *only* by proving that an "attorney's conduct tends to taint the underlying proceedings." *Merck*, 670 F. Supp. 2d at 208.

Mr. Rapaport has not come close to satisfying these standards. Instead, he ignores them. Noticeably missing from his motion is any recognition of the "high standard" he faces. *Merck*, 670 F. Supp. 2d at 207. Mr. Rapaport also ignores that, in "civil cases, a conflict arises only where 'counsel actively represented conflicting interests and an actual conflict of interest adversely affected counsel's performance.'" *Zhang v. Weseley*, No. 23-cv-00014-ALC, 2024 WL 1134596, at *1 (S.D.N.Y. Mar. 15, 2024) (internal alterations omitted) (quoting *Patterson v. Balsamico,* 440

3

F.3d 104, 115 (2d Cir. 2006)).  Mr. Rapaport further ignores that *he* "'bears the burden of demonstrating specifically how and as to what issues in the case the prejudice may occur, and that the likelihood of prejudice occurring is substantial.'"  *Id.* (internal alterations omitted) (quoting *Murray v. Metro. Life Ins. Co.,* 583 F.3d 173, 178 (2d Cir. 2009)).

Ignoring the law does not make it go away, and Mr. Rapaport cannot shift his burden to Defendants without first showing an actual conflict of interests—i.e., that Defendants Iyer and Garrett have adverse interests, and that joint representation is adversely affecting them.  Because Mr. Rapaport has not done so, his motion fails.

2. As to the facts, Mr. Rapaport does not attempt to make a clear showing of a conflict that would meet the "high standard" he faces.  Instead, Mr. Rapaport relies on a series of hypotheticals, none of which is grounded in fact or reason.  For instance, Mr. Rapaport claims that, even though he has accused these Defendants of engaging in a conspiracy, Iyer and Garrett have adverse interests because they might sometime "blame the other for having deceived them."  Mot. at 7.  From there, Mr. Rapaport speculates "Iyer would claim that he had never taken or sent the" photo attached to the complaint, and "Garrett would claim that as an outsider, Iyer tricked him with a forgery and false testimony[.]"  *Id.*  But Mr. Rapaport doesn't stop there, next surmising "Iyer could also claim that Garrett invented the sexual harassment defamation[.]"  *Id.* at 7–8.  Based on this series of hypothetical arguments Iyer and Garrett might raise, Mr. Rapaport concludes that "[i]t is hard to imagine more diametrically opposed arguments[.]"  *Id.* at 8.  Yet Mr. Rapaport's imagination is the only thing holding his motion together.

In fact, Mr. Rapaport goes on to speculate that his claims are so strong that Iyer is facing bankruptcy, while Garrett is apparently "close to judgment-proof."  *Id.*  Mr. Rapaport also speculates that Garrett is not a member of any state bar and that he may be able to do some "good

4

deeds" to convince a bar that the hypothetical verdict here finding him liable should not prevent his admission. *Id*. at 9. On the other hand, Mr. Rapaport believes that Iyer "could very easily" be disbarred due to a hypothetical adverse jury finding on the defamation claims. *Id.* Here again, Mr. Rapaport is "leaning on a slender reed indeed." *Cinema 5*, 528 F.2d at 1386.

Finally, Mr. Rapaport claims that this purported conflict has already prejudiced Iyer and Garrett because the motion to dismiss raised a statute of limitations defense, as well as a qualified privilege for defamation claims, and these issues (to Mr. Rapaport's mind) could only apply to Garrett, as Iyer knew, Mr. Rapaport says, that he forged the photo attached to the complaint. Mot. at 9–10. Mr. Rapaport thus argues that the Firm refused "to engage with the accusation that Iyer was accused of actual forging" and "spun the case into a different direction. *Id.* at 10. Of course, even a cursory review of Defendants' motion to dismiss confirms that they thoroughly engaged the issues, as they provided the Court with numerous reasons why the Amended Complaint should be dismissed as to both Iyer and Garrett. And Mr. Rapaport's speculation cannot change that fact.

3. Mr. Rapaport is also not entitled to this Court's assumption that such allegations are true. This is not a motion to dismiss where his allegations must be accepted as true. Mr. Rapaport levies a serious accusation against the Firm, not on his behalf but supposedly on behalf of the parties he sued, alleging that the Firm is violating professional rules of conduct and should be disqualified. This type of motion is disfavored and requires Mr. Rapaport to make a "clear showing" that the Firm should be disqualified. *Total Asset Recovery Servs.*, 2022 WL 1125924, at \*1. When a party "merely articulates a suspicion of or future potential for conflict rather than a real risk that the trial will be tainted," that party "will fail to meet its burden" for disqualification. *Kleeberg v. Eber*, No. 16-cv-9517-LAK-KHP, 2019 WL 2284724, at \*6 (S.D.N.Y. May 29, 2019) (quotation marks omitted).

5

Indeed, courts in this district routinely deny motions for disqualification that are based on mere conjecture. In *Total Asset Recovery Services*, for instance, the court denied a motion for disqualification because the defendants offered no proof as to why joint representation by the plaintiffs' counsel was improper. 2022 WL 1125924, at *5. While the complaint in that case suggested that the plaintiffs had shared interests, the defendants insisted that there was a conflict because of "the *potential* for crossclaims among the plaintiffs." *Id.* (emphasis added). But no plaintiff had filed a cross claim, and thus the court found that the "hypothetical narrative" about a conflict was a "nonissue" under the governing rules of professional conduct. *Id.* Thus, where, as here, "the grounds for disqualification are built on guesswork," the motion for disqualification should be denied. *Id.; see also H&H Acquisition Corp. v. Fin. Intranet Holdings*, No. 98-cv-5269-BSJ, 2000 WL 502869, at *2 (S.D.N.Y. Apr. 27, 2000) (denying motion to disqualify where "the conflict is merely potential"); *Razzoli v. City of New York*, No. 16-cv-7136-LGS-JLC, 2021 WL 162029, at *2 (S.D.N.Y. Jan. 19, 2021) (denying motion for disqualification because the "plaintiff's claims of a conflict of interest amount to premature speculation, which falls far short of the evidence necessary to meet the high burden[.]"); *Zhang*, 2024 WL 1134596, at *2 (denying motion for disqualification because "Plaintiff begins with the unsupported assumption that joint counsel is conflicted and then alleges she herself has been prejudiced as a result," and "[t]his is plainly insufficient.").

But there's more. Mr. Rapaport not only relies on rank speculation, but his complaint also undermines his own arguments. Mr. Rapaport's complaint alleges that Defendants Iyer and Garrett were working together to destroy Mr. Rapaport's career. First Am. Compl. ¶ 18 (ECF No. 38). Mr. Rapaport even alleges that both Iyer and Garrett created the images he attached to the complaint. *Id.* ¶ 15. In fact, the entire complaint is built on allegations that Iyer and Garrett were

6

working together. *See id.* ¶ 21 ("Defendants Iyer and Garrett then continued their campaign to destroy plaintiff's reputation and status"); ¶ 32 ("It was shortly after this time that these defendants began their plan to destroy the life and end the career of the plaintiff by defamation and forgery"). In other words, Mr. Rapaport's complaint alleges that Iyer and Garrett were working together and even forming a conspiracy, and now he claims that Iyer and Garrett face such contrasting allegations and potential legal consequences that joint representation is a conflict of interest. Such an inconsistent argument based on speculation is insufficient to meet the "high standard" for a motion for disqualification.[1]

Thus, Mr. Rapaport has clearly failed to come close to satisfying—or even articulating—the applicable standard for disqualifying counsel. This is reason alone to deny the motion so that Defendants Iyer and Garrett may proceed with their counsel of choice.

## II. Even If A Conflict Existed, Defendants Iyer And Garrett Expressly Waived It.

Mr. Rapaport's assumptions do not stop at the imagined conflict. Mr. Rapaport also states that when "waiver is not secured prior to taking the engagement, disqualification is appropriate, because waiver after a motion to disqualify cannot obtain effective consent." Mot. at 5 (citation omitted). Mr. Rapaport says nothing further concerning a waiver but appears to presume that no such waiver exists. Once again, Mr. Rapaport's speculation dooms his argument.

"[I]n many instances, clients can waive or cure their attorney's concurrent-representation conflicts by giving informed written consent." *Akagi*, 2017 WL 1076345, at *15. Further, "[a] waiver is knowing and intelligent when a defendant shows that he is aware of and understands the various risks and pitfalls of proceeding despite counsel's potential conflict." *Zhang*, 2024 WL

---

[1] This is not the only inconsistency in Mr. Rapaport's filings. *Compare* Pl.'s Ltr. re Mot. at 1 (Mr. Rapaport stating that he could not confer with undersigned counsel because "of this ethical conflict") (ECF No. 66), *with* Pl.'s Ltr. re Extension of Time (stating that he had attempted to confer with undersigned counsel) (ECF No. 70).

7

1134596, at *2–3 (cleaned up) (quoting *Williams v. Meachum,* 948 F.2d 863, 866 (2d Cir. 1991)). When such a waiver exists, the court will accept it as a cure for the conflict. *Id.*[2]

At the outset of this representation, Defendants Iyer and Garrett executed a waiver of conflicts. *See* Decl. of A. Iyer ¶ 6 (attached as Ex. A); Decl. of Z. Garrett ¶ 6 (attached as Ex. B). In that waiver, they each acknowledged the joint representation, and they expressly waived any objection or possible conflict that may be presented by the joint representation. *Id.* Therefore, even if a conflict existed (it doesn't), that waiver has cured the conflict. *See Total Asset Recovery*, 2022 WL 1125924, at *5 ("Even if this Court determined that there were concurrent conflicts of interest warranting disqualification, Plaintiffs' counsel represented that" the parties "have considered the potential conflicts of interest and determined that it is in their best interest to engage the [firm] to represent their interest in this action collectively." (cleaned up)); *Zhang*, 2024 WL 1134596, at *2–3 (stating that even if the plaintiff had met her burden of showing a conflict of interest existed, the co-defendants had waived that conflict).

Accordingly, even if the Court were to put aside the other shortcomings in Mr. Rapaport's motion, the express waiver of conflicts is an independent basis for denying his motion.

## CONCLUSION

Mr. Rapaport's motion relies on a series of assumptions that lack grounding in fact or logic. Such speculation is insufficient to meet his heavy burden to disqualify opposing counsel. However, even if Mr. Rapaport could show some sort of conflict, Defendants Iyer and Garrett have agreed to joint representation and waived the potential risks that come with that representation. The Court should therefore reject Mr. Rapaport's baseless motion.

---

[2] Some conflicts are unwaivable, such as when parties have claims against each other. *See Akagi v. Turin Hous. Dev. Fund Co.*, No. 13-cv-5258-KPF, 2017 WL 1076345, at *15–16 (S.D.N.Y. Mar. 22, 2017). This is not such a case.

<table>
<tr><td>September 27, 2024</td><td>Respectfully submitted,<br><br>/s/ Brian J. Field<br>Brian J. Field*<br>  (D.C. Bar No. 985577)<br>Cristina Martinez Squiers*<br>  (Texas Bar No. 24093764)<br>SCHAERR | JAFFE LLP<br>1717 K Street NW, Suite 900<br>Washington, DC 20006<br>Telephone: (202) 787-1060<br>Facsimile: (202) 776-0136<br>Email: bfield@schaerr-jaffe.com<br>Email: csquiers@schaerr-jaffe.com<br><br>*Admitted *pro hac vice*<br><br>*Counsel for Defendants Ajay Srinivasan Iyer and Zachary George Garrett*</td></tr>
</table>

## CERTIFICATE OF SERVICE

I hereby certify that on September 27, 2024, I sent a copy of the foregoing by email to *pro se* Plaintiff at GideonRapaportLaw@outlook.com, which is the address Plaintiff has used to correspond with undersigned. Additionally, pursuant to Local Civil Rule 7.2, I certify that I also provided Plaintiff with copies of all unpublished decisions cited in the foregoing opposition.

I further certify that, on September 27, 2024, I filed the foregoing document with the Clerk of Court for the Southern District of New York, which will accomplish service on counsel of record for Defendant Epstein.

*/s/ Brian J. Field*
Brian J. Field