UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x

GIDEON RAPAPORT

Case No. 1:23-cv-06709

Plaintiff, *pro se*

**ORAL ARGUMENT
REQUESTED**

-against-

AJAY SRINIVASAN IYER, ZACHARY GEORGE
GARRETT, RICHARD ALLEN EPSTEIN

Defendants.

---------------------------------------------------------------x

<u>**NOTICE OF OPPOSITION TO MOTION**</u>

PLEASE TAKE NOTICE that, upon the annexed Memorandum of Law, Plaintiff Gideon

Rapaport, *pro se*, opposes the Motion of Defendants Ajay Srinivasan Iyer and Zachary George Garrett

to Dismiss this Action before the Honorable Jessica G. L. Clarke at the United States Courthouse for

the Southern District of New York, 500 Pearl Street, New York, New York.

Dated: Vancouver, British Columbia (Canada)
September 26, 2024

Respectfully submitted,

/s/ Gideon Rapaport, *pro se*
GideonRapaportLaw@Outlook.com
(862) 213-0895
#627 1078 Summit Avenue
Jersey City, New Jersey, 07310

**TABLE OF CONTENTS**

| | |
|---|---|
| **PRELIMINARY STATEMENT** | **1** |
| **PROCEDURAL BACKGROUND** | **2** |
| The Parties | **2** |
| Procedural Background | **2** |
| **FACTUAL BACKGROUND** | **3** |
| Defendants Iyer and Garrett Forged and Created the Defamations Rather Than Merely Repeated Them | **3** |
| Defendant Iyer is the Only Person Who Could Have Created and Posted the First Forgery Online | **4** |
| The Contents and Context of the Forged Images Are Defamatory | **4** |
| The Creation of the Second Forgery and Direct Communication of it to the Federalist Society Required Removal of First Forgery from the Internet Proves the Conspiracy of Defendants Iyer and Garrett | **4** |
| Defendants Iyer and Garrett Were Maliciously Persistent by Creating Second Forgery After the First Was Rejected and Continued to Push Defamations on the Federalist Society | **5** |
| The Exhibit 3 Email and Materials Reveal Previous Defamations, the Agreement to the Conspiracy and Defendants Iyer and Garrett's Early Need to Cover Up the First Version of the Forgery | **6** |
| The Plaintiff's Diligent Efforts to Discover the Identities of the Initially Unknown Perpetrators Was Thwarted by Defendant Epstein's Fraud | **7** |
| **ARGUMENT** | **8** |
| **The Motion of Defendants Iyer and Garret is Not Even Responsive to the Factual Allegations of the First Amended Complaint** | **8** |
| **Glaring Omissions Raise Serious Doubt as to Whether Opposing Counsel Even Read the Pleadings They Reference** | **8** |
| **A Pattern of Intermittent and Contextual Amnesia Pervades Defendants' Memorandum that Selectively References Facts Elsewhere Denied to Exist** | **10** |
| **Anticipatory Pleading by Plaintiff to Affirmative Defenses Such as the Statute of Limitations or Possible Common Interest Privilege is Not Required or Proper** | **11** |
| **Consideration of the Statute of Limitations Arguments Raised Are Premature and Factually Unsupported** | **11** |
| **Consideration of the Common Interest Privilege Arguments Raised Are Premature and** | **12** |

| | |
|---|---|
| **Factually Unsupported** | |
| **Incidentally, Pleading as to Defendant Epstein's Fraud Establishes Relating Back Per FRCP Rule 15(c)(1)(a) with CPLR 1024 & 203 as "the Law That … Allows Relation Back"** | **12** |
| **Defendant Epstein's Fraud Was Committed to Undermine Plaintiff's Diligent Efforts to Identify Defendants Iyer and Garrett** | **12** |
| **New York Law Applies Through FRCP Rule 15(c)(1)(a) and Specifically Allows for Suits to Be Brought Against Does and Relate-Back Later** | **13** |
| **Even if Not Premature or Irrelevant the Common Interest Privilege Cannot Protect Forgers and Originators of Defamation** | **15** |
| **Defendants Iyer and Garrett Had Actual Malice Because They Knew Their Forgeries and Fabricated Defamations Were False Resulting in Actual Malice** | **15** |
| **Exceptional Persistence and Repetition of Defamation Defeats Common Interest Privilege** | **16** |
| **Defamation and Defamation Per Se are Properly Pleaded** | **17** |
| **Injurious Falsehood is Properly Pleaded** | **18** |
| **Civil Conspiracy is Properly Pleaded** | **19** |
| **Defendants Iyer and Garrett Only Cite Cases That Did Not Find a Civil Conspiracy Did not Allege or Show by Exhibits Showing Communications** | **19** |
| **The Conspiracy is Obvious, Evidenced by Exhibit 3 and Easily Inferred by Actions** | **20** |
| **Intentional Infliction of Emotional Distress is Properly Pleaded and is Non Duplicative** | **21** |
| **Intentional Infliction of Emotional Distress is Contextual and Involved Standards of the Community** | **21** |
| **Defendants Iyer and Garrett Cannot Expect That Two Independently Valid Claims Both Be Dismissed Because They Are Overlap Thus Denying All Recovery** | **22** |
| **New Jersey Law Applies to the Properly Pleaded False Light and Invasion of Privacy Claim** | **23** |
| **The Southern District of New York and Second Circuit Routinely Uphold Such Properly Pleaded New Jersey Claims Under New Jersey Law** | **23** |
| **Defendants Iyer and Garrett Incorrectly Assume That One State's Laws Must Govern All Claims and Ignore the Doctrine of Dépeçage** | **24** |
| **CONCLUSION** | **25** |
| **The Facially Defective Motion to Dismiss Opposed is a Not Responsive to the Pleadings** | **25** |

## TABLE OF AUTHORITIES

**Rules**

Federal Rules of Civil Procedure Rule 8

Federal Rules of Civil Procedure Rule 9

Federal Rules of Civil Procedure Rule 12

Federal Rules of Civil Procedure Rule 15

New York Civil Practice Rules § 203

New York Civil Practice Rules § 1024

New Jersey Rules of Court 4:26

**Statutes**

N.Y. Civ. Rights Law § 76-a

28 U.S.C. § 1652 (Rules of Decision Act)

47 U.S.C. § 230(c)(1) (Communications Decency Act)

**Books**

Scalia and Garner, *Reading Law*

**Music**

Odetta Holmes, *Run On*

Elvis Presley, *Run On*

**Cases**

Michael Grecco Prods., Inc. v. RADesign, Inc., 112 F.4th 144 (2d Cir. 2024)

Clark v. Hanley, 89 F.4th 78, 93–94 (2d Cir. 2023)

In Re: Nine West LBO Sec. Litig., 87 F.4th 130, 144 (2d Cir. 2023)

Medina v. Seiling, No. 14- CV-6034 (VSB) 2018 WL 1603857 (S.D.N.Y. 2018)
Ceara v. Deacon, 68 F. Supp. 3d 402, 410 (S.D.N.Y. 2014)

Hogan v. Fischer, 738 F.3d 509, 517 (2d Cir. 2013)

Justin v. Orshan, 14 A.D.3d 492, 788 N.Y.S.2d 407, 408 (2d Dep't 2005)

Maurro v. Lederman, 7 Misc.3d 863, 795 N.Y.S.2d 867, 870–71 (Sup.Ct. Richmond Cnty.2005)

Bumpus v. N.Y.C. Transit Auth., 66 A.D.3d 26, 883 N.Y.S.2d 99, 104 (2d Dep't 2009)

Victor Auto Parts, Inc. v. Cuva, 148 Misc.2d 349, 560 N.Y.S.2d 269, 271 (Sup.Ct. Monroe Cnty.1990);

Wilson v. 30 Broad St. Assocs., L.P., 178 Misc.2d 257, 679 N.Y.S.2d 521, 522 (Civ.Ct.N.Y.Cnty.1998)

Harris v. N. Shore Univ. Hosp. at Syosset, 16 A.D.3d 549, 792 N.Y.S.2d 148, 149 (2d Dep't 2005);

Luckern v. Lyonsdale Energy Ltd., 229 A.D.2d 249, 654 N.Y.S.2d 543, 545–46 (4th Dep't 1997)

Farrell v. Votator Div. Of Chemetron Corp, 62 N.J. at 115, 122

Frederique v. Cnty. of Nassau, No. CV 11-1746(WDW), 2014 WL 12841638 (E.D.N.Y. 2014)

Diorio v. Ossining Union Free School Dist., 96 A.D.3d 710, 946 N.Y.S.2d 195 (2d Dep't 2012)

Lebowitz v. Fieldston Travel Bureau, Inc., 181 A.D.2d 481, 581 N.Y.S.2d 302, 303 (1st Dep't 1992)

Konowitz v. Archway School Inc., 65 A.D.2d 752, 409 N.Y.S.2d 757 (2d Dep't 1978)

N.Y. Times Co. v. Sullivan, 376 U.S. 254, 279-80 (1964)

Ashcroft v. Iqbal, 556 U.S. 662 at 679 (2009)

Biro v. Conde Nast, 883 F.Supp.2d 441, 456 (S.D.N.Y. 2012)

Palin v. New York Times Company, 940 F.3d 804, 809 (2nd Cir. 2019)

Celle v. Filipino Reporter Enters., Inc., 209 F.3d 163, 176 (2nd Cir. 2000)

Fairstein v. Netflix, Inc., 553 F.Supp.3d 48, 62 at 63 (S.D.N.Y. 2021)

Chau v. Lewis, 771 F.3d 118, 127 (2nd Cir. 2014)

Kimmerle v. N.Y. Evening Journal, Inc., 262 N.Y. 99, 102, 186 N.E. 217 (1933)

Frechtman v. Gutterman, 115 A.D.3d 102, 104, 979 N.Y.S.2d 58 (2014)
Laguerre v. Maurice, 192 A.D.3d 44, 50, 138 N.Y.S.3d 123 (2020)

Palin v. New York Times Co., No. 22-558 (2nd Cir. 2024)

Penn-Ohio Steel Corp. v. Allis-Chalmers Mfg. Co., 7 A.D.2d 441, 184 N.Y.S.2d 58 (1st Dep't 1959)

Holy Spirit Ass'n for Unification of World Christianity v. New York State Congress of Parents and Teachers, Inc., 95 Misc. 2d 548, 408 N.Y.S.2d 261 (Sup 1978)

N. State Autobahn, Inc. v. Progressive Ins. Grp. Co., 102 A.D.3d 5, 953 N.Y.S.2d 96 (2012)

Gilliam v. Richard M. Greenspan, P.C., 17 A.D.3d 634, 635, 793 N.Y.S.2d 526).

ACR Sys., Inc. v. Woori Bank, No. 14 CIV. 2817 (JFK), 2018 WL 1757019 (S.D.N.Y. Apr. 10, 2018)

Cohen Brothers Realty Corp. v. Mapes, 181 A.D.3d 401, 119 N.Y.S.3d 478 (1st Dep't 2020).

Seltzer v. Bayer, 709 N.Y.S.2d 21, 23 (1st Dep't 2000)

Elson v. Consol. Edison Co. of N.Y., Inc., 641 N.Y.S.2d 294, 294-95 (1st Dept. 1996)

Cunningham v. Sec. Mut. Ins. Co., 689 N.Y.S.2d 290, 291 (3d Dep't 1999)

M+J Savitt, Inc. v. Savitt No. 08-cv8535 (DLC), 2009 WL 691278 (S.D.N.Y. 2009)

Mitchell v. Giambruno, 35 A.D.3d 1040, 826 N.Y.S.2d 788 (3d Dep't 2006)

Catalanello v. Kramer, 18 F. Supp. 3d 504 (S.D.N.Y. 2014)

Lee v. Bankers Trust Co., 166 F.3d 540, 545 (2d Cir. 1999)

Machleder v. Diaz, 801 F.2d 46, 51–52 (2d Cir. 1986)

Adelson v. Harris, 973 F.Supp.2d 467, 476 (S.D.N.Y. 2013)

Condit v. Dunne, 317 F.Supp.2d 344, 353 (S.D.N.Y. 2004)

Reeves v. Am. Broad. Co., 719 F.2d 602, 605 (2d Cir.1983)

*Federal Housing Finance Agency v. Ally Financial Inc.*, Fed. Sec. L. Rep. (CCH) P 97235, 2012 WL 6616061 (S.D.N.Y. 2012)

French Schwartz v. Twin City Fire Ins. Co., 492 F. Supp. 2d 308 (S.D.N.Y. 2007)

French Schwartz v. Twin City Fire Ins. Co., 539 F.3d 135 (2d Cir. 2008)

Simon v. Philip Morris Inc., 124 F. Supp. 2d 46, 75 (E.D. N.Y. 2000)
2002 Lawrence R. Buchalter Alaska 2002 Lawrence R. Buchalter Alaska Trust v. Philadelphia Financial Life Assur. Co., 96 F. Supp. 2d 182 (S.D.N.Y. 2015)

United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc., 216 F. Supp. 2d 198 (S.D.N.Y. 2002)

## PRELIMINARY STATEMENT

Defendants Iyer and Garrett join once again to plumb the depths of dishonesty together in support of their joint motion to dismiss and skirt the limits of perpetrating frauds on this Court, as they have already deceived their co-defendant Epstein, the Federalist Society and the world at large.

Because they cannot contend with the First Amended Complaint ("FAC"), which identified them as two of the Does named by the Original Complaint ("OC"), nor with the damning exhibits which include two of their forgeries Exhibits 1 & 2 and a defamatory email Exhibit 3 that provides immense clarity into the nature of their conspiracy and their prior, manifest and subsequent tortious conduct, they must respond to a complaint of their own creative invention and hope for the best.

In order to effectuate this deception, they alternate between gross misrepresentations of the FAC in token references on one hand while making broad sweeping statements that ignore clearly pleaded facts and allegations on the other. Incredibly, they go so far as to contradict their own memorandum of law on multiple occasions when it addresses the pleaded facts and allegations by boldly stating elsewhere that no such pleading was made at all.

Some of these improprieties cannot even be explained by them not properly reading the pleadings, because this amnesia to inconvenient facts and exhibits is selective and contextual.

In terms of the exhibits so damning of their gambit of evading accountability, they ignore the obvious meaning of there being two different versions of a forgery supposedly depicting a physically printed poster Exhibits 1 & 2, and ludicrously present to this Court that two PDF files generated by defendant Garrett from excerpts of two websites on August 1, 2022, are a true and ultimate testament of everything that is or ever was on the internet, even as these digital files was marked up by defendant Garrett himself in furtherance of this conspiracy and tortious conduct.

For these reasons, their joint motion to dismiss should not even be taken seriously as it contains nothing other than concealment or twisting beyond comprehension of the facts alleged against them and premature legal arguments that the Court cannot properly resolve at this early pleading stage.

## PROCEDURAL BACKGROUND

### The Parties

Plaintiff and non-movant to this motion, Gideon Rapaport is a former employee of the law firm of Kirkland & Ellis LLP, and a graduate of the New York University School of Law. He is a citizen of Canada, and was lawfully admitted to the United States at the time of the filing of the original complaint as a nonresident alien, and that is his current status as well.

Defendant and movant to this motion to dismiss, Ajay Srinivasan Iyer is a current employee of Kirkland & Ellis LLP, and a graduate of the New York University School of Law, where he served as the President of the Federalist Society chapter for the academic year of 2021/2022. He is a U.S. Citizen. Defendant Iyer is a member of the bar of the State of New York.

Defendant and movant to this motion to dismiss, Zachary George Garrett is a graduate of the New York University School of Law, where he served as the President of the Federalist Society chapter for the academic year of 2021/2022. He is a U.S. Citizen. On information and belief, defendant Garrett is not a member of the bar of any jurisdiction.

Defendant and movant to a separate motion to dismiss Richard Allen Epstein is a professor of law at the New York University School of Law, where he also serves as the faculty advisor to the Federalist Society chapter, and the Journal of Law and Liberty. He is a U.S. Citizen. Defendant Epstein is a member of the bar of the State of California.

### Procedural Background

This case began as a John Doe suit, filed *pro se* on July 28, 2023. On December 11, 2023, subpoenas ducus tecum were granted by this Court for the purpose of identifying the Doe defendants to

2

be served upon Kirkland & Ellis LLP and the Federalist Society of Law and Public Policy, and one employee of each. On March 15, 2024, the Doe defendants were identified by their true names as a result of these subpoenas. On May 24, 2024 the First Amended Complaint was filed, and was served upon the defendants. By August 16, 2024, all defendants had filed motions to dismiss, with defendants Iyer and Garrett doing so through the same counsel.

## FACTUAL BACKGROUND

<u>Defendants Iyer and Garrett Forged and Created the Defamations Rather Than Merely Repeated Them</u>

Defendants Iyer and Garrett are the original source of the forgeries and defamations leading to this civil action. They did not merely repeat or discuss these statements, they are the originators and have always been alleged to be, even before they were known to be the perpetrators by their true names. Defendant Iyer utilized his access granted by employment at Kirkland & Ellis to covertly take both pictures of the security desk that would be the basis for his two forgeries utilizing digital image manipulation techniques FAC ¶¶ 35,47. The second version Exhibit 2 was more sophisticated than the first version Exhibit 1, because it resolved the unnatural smoothness of the Plaintiff's face on a page that was otherwise thoroughly wrinkled, and was necessary because that obvious defect in the first version caused some to disbelieve it. The online posts were a simultaneous way of multiplying the damage, forcing the organization and others to act as a result of public pressure, and disguise the origins of the forgeries and defamation as coming from anonymous internet users further masked as an ideologically motivated attack FAC ¶ 39.

Defendants Iyer and Garrett, each in different physical locations and social contexts, spread the same defamatory rumors that the Plaintiff was fired for sexual harassment, with defendant Garrett taking primarily responsibility for communicating the online defamations to the Federalist Society due to his presence at the Student Leadership Conference as an incoming chapter president FAC ¶ 40.

3

<u>Defendant Iyer is the Only Person Who Could Have Created and Posted the First Forgery Online</u>

Exhibit 3 identifies defendant Iyer as the source of the second forgery Exhibit 2 "see the attached photo ("Security Desk Photo") taken by Ajay Iyer at Kirkland & Ellis's New York location at 601 Lexington Avenue on Thursday" and the two forgeries are identical in all respects except for the critical difference of the second allowing wrinkles on the physical page to affect the digitally superimposed image of the Plaintiff's face and text. The digital layers imposed upon the first, daytime, and second, nighttime, pictures of the security desk are exceptionally identical other than that in the second forgery they were 'blended' or 'multiplied' with the underlying real picture to allow the wrinkles and creases of the page to be seen through the digitally imposed layer. Still, this was just a matter of blending the colors of underlying bright and dark spots, and could not simulate the uneven curvature of the page, as evident by the letter "G" of "Gideon" whose shape is not distorted at all by that thoroughly wrinkled area of the page Exhibit 2. Although the "warp text" function of common digital image manipulation software can and did skew the text overall to compensate for the non-perpendicular angle between the camera and the physical page, it must do so as defined by the four corners of the page, and cannot account for local unevenness caused by wrinkles.

<u>The Contents and Context of the Forged Images Are Defamatory</u>

Both defamatory forgeries contain the same text, the image of the Plaintiff's face, depicted in the context of a notice posted at a security desk FAC ¶ 35:

DO NOT ADMIT

GIDEON RAPAPORT

KIRKLAND AND ELLIS

<u>The Creation of the Second Forgery and Direct Communication of it to the Federalist Society Required Removal of First Forgery from the Internet Proves the Conspiracy of Defendants Iyer and Garrett</u>

Because any comparison between the first forgery and the second forgery would alert any minimally cautious individual that they are both fake, the first forgery had to be removed from the internet by defendants Iyer and Garrett in order to prevent such comparison. This was done sometime on or after July 31, 2022 per the Student Leadership Conference referenced in Exhibit 3, and sometime on or before August 1, 2022 which is when the Exhibit 3 excerpts were made into PDFs as indicated by time stamp. This is a very tight timeline, and raises a very strong inference far beyond mere plausibility, especially in the absence of any conceivable other reason for someone to remove the first forgery at all, or specifically at that time.

After the first version was removed, Defendant Garrett excerpted and marked up the contents of two online discussion threads into PDFs and sent the second forgery prepared by defendant Iyer, presented as one which Iyer took himself Exhibit 3. There is no reason to believe either intuitively or according to either the Original or First Amended Complaint that only two online discussion threads ever existed, or that the FAC necessarily references either of the two excerpted by defendant Garrett as the original source of the defamation. Rather, the thread with the post containing both the image and defamations, whose contents were erased and replaced by the time of defendant Garrett's email by a single period "." was not excerpted by defendant Garrett because this would draw attention to the removal of a different version previously seen and disbelieved by Redpath, Alcantara and others.

<u>Defendants Iyer and Garrett Were Maliciously Persistent by Creating Second Forgery After the First Was Rejected and Continued to Push Defamations on the Federalist Society</u>

Defendants Iyer and Garret's attempts to defame the Plaintiff to the Federalist Society, and ensure his ejection from a fellowship program were persistent and multiple. According to Defendant Garrett's August 2, 2022 email Exhibit 3, he had already raised these issues to defendant Epstein, who is the faculty adviser for NYU, and to Peter Redpath and Kate Alcantara of the Student Division during

the student leadership conference prior to that email. "As I mentioned to you over the weekend…"
Exhibit 3.

Defendant Garrett was insistent through the email, despite already notifying three relevant
people associated with the organization, that the forgeries and defamations also reach Lee Otis, who
was in charge of the Faculty Division. As Defendant Garrett wrote "I don't know Lee Otis, though, so
I'm sharing with you two Professor Epstein's concerns" Exhibit 3. There is no non-malicious reason
indicated or even feasible for defendant Garrett's insistence, especially after notifying three influential
people within the organization more than capable of dealing with the situation. His reference of
defendant Epstein by name is also suspicious, because defendant Epstein was perfectly capable of
communicating, and did in fact communicate, with Lee Otis on his own, as he later admitted in writing
FAC ¶¶ 63-64, 84. Defendant Garrett even begged Peter Redpath and Kate Alcantara to forward the
defamatory materials to Lee Otis "If you feel Lee Otis should know, could you please notify her? If not,
I understand. I simply felt it would be more appropriate to come from one or both of you rather than
myself."

After receiving the materials from defendant Epstein, Lee Otis then interviewed defendant Iyer
as a purported witness due to his concurrent employment at the New York office of Kirkland & Ellis,
where he lied to support his own forgeries and defamations FAC ¶ 64.

<u>The Exhibit 3 Email and Materials Reveal Previous Defamations, the Agreement to the Conspiracy and
Defendants Iyer and Garrett's Early Need to Cover Up the First Version of the Forgery</u>

The Exhibit 3 email begins with a reference to prior defamations by defendant Garrett "As I
mentioned to you over the weekend [July 29 to 31 2022], my understanding is that Gideon Rapaport
was fired …  for sexually harassing a practice assistant or an attorney". The email continues with
another defamatory statement "I do know that Gideon was fired and banned from entering the
building" that is immediately supported by evidence provided by defendant Iyer "see the attached

photo … taken by Ajay Iyer". This contact necessitates not only communication between defendants Iyer and Garrett, but also the action of defendant Iyer in "taking" the second forged picture, while simultaneously removing the first forgery posted online. The only explanation for why defendant Iyer would have "taken" and sent the second forgery specifically to defendant Garrett, out of all of the people in the world, is some degree of cooperation and common purpose between the two, these actions speak louder than any possible words.

The Exhibit 3  email is an overt act, and a particularly significant one, that by incorporating the materials forged by defendant Iyer and received directly from him, and transmitting them in furtherance of the common aim of defaming the Plaintiff clearly manifests cooperation.

<u>The Plaintiff's Diligent Efforts to Discover the Identities of the Initially Unknown Perpetrators Was Thwarted by Defendant Epstein's Fraud</u>

The Plaintiff's diligent efforts to discover the identities of the tortfeasors who destroyed his career prospects and his relationship with his favorite professor, defendant Epstein, led to repeated inquiries of defendant Epstein, who responded with fraud to cover up for defendants Iyer and Garrett. Defendant Epstein lied by phone "about not knowing which members of the New York University Federalist Society Chapter sent the defamatory statements and fakes to the Federalist Society, the manner by which he himself learned about the defamatory statements and fakes, and his own role in sending these materials himself and instructing others to do so" FAC ¶ 79 and subsequently in writing when he declared himself as the sender of the materials with the fraudulent omission and deceit by half-truth to cover up that defendants Iyer and Garrett had done so as well FAC ¶ 84. These diligent efforts of the Plaintiff were well directed, because defendant Epstein actually did know, as demonstrated by Exhibit 3 because he was communicating with and receiving materials from defendants Iyer and Garrett.

## ARGUMENT

"You may throw a rock, and hide your hand
Working in the dark against your fellow man
But sure as God has made the day and the night
What you do in the dark will be brought to light"

*Run On*, a Traditional American Folk Song
as performed by Odetta Holmes or alternatively Elvis Presley

### A.  The Motion of Defendants Iyer and Garret is Not Even Responsive to the Factual Allegations of the First Amended Complaint

#### 1.  Glaring Omissions Raise Serious Doubt as to Whether Opposing Counsel Even Read the Pleadings They Reference

In referencing the Original Complaint for the purposes of claiming that it did not identify defendants Iyer and Garrett by their actions for the purposes of "relating back", they simply ignore OC ¶ 21 which alleges that "Defendants timed the publication and *forwarding* of the anonymous internet posts very closely to the start of the James Kent Summer Academy in order to prevent the Plaintiff's attendance at the latest possible time so as to deny him the opportunity to marshal sufficient facts to prove the falsehood of the hoax, and thereby cause him direct and specific injury" (emphasis added).

Instead of contending with the actual pleadings, defendants Iyer and Garrett claim on MTD page 17  that "[t]he statements Defendants Iyer and Garrett made to the Federalist Society and Professor Epstein are all time barred. In his original complaint, *Rapaport does not mention any of these communications. Rather, the original complaint is premised on the internet posts and a Title IX complaint*. See Compl. ¶¶ 6–9, 23–27." (emphasis added). They cited a grand total of 9 different paragraphs of the Original Complaint, both before and after the relevant paragraph 21, which clearly identified them for sending the email Exhibit 3, which forwarded the defamatory materials and was itself disclosed pursuant to a subpoena, and was exactly as described in OC ¶ 21.

8

If the Federalist Society could identify defendants Iyer and Garrett as the John Does based on nothing other than the Original Complaint, how is it that the actual perpetrators themselves, who should know best for themselves who they are and what they did, could not be provided with adequate notice or sufficient identification by that same pleading? This attempt at deception should strain the credibility of the defendants' request for a dismissal beyond the breaking point.

The highly specific identification by the Plaintiff in his Original Complaint of the actions and methods of the Does should have easily put defendants Iyer and Garrett on notice. Without even knowing who the perpetrators were, the Plaintiff understood their *modus operandi* as manifest in the facts eventually specified by Exhibit 3. That email showed that the defamation was meant to coincide with the presence of defendant Garrett at the Student Leadership Conference, and which was sprung on the Federalist Society just days before the fellowship was supposed to begin, giving the least possible amount of time for the truth to be found and the harm mitigated.

Another highly inconvenient aspect of the pleadings to defendants Iyer and Garrett, is the specific explanation for reason and precise timing of the removal of the first version of the defamatory forged image Exhibit 1. They simply ignore these allegations made in FAC ¶ 46 and instead engage in a laughable charade meant to convince the Court that the one true and final testament of all that exists or ever existed on the internet relating to this case was captured by defendant Garrett in his PDF excerpts of two online threads shown in Exhibit 3. These excerpts prepared by defendant Garrett are an exhibit, or "proof" of nothing other than what he himself sent, based on a snapshot in time that could have been edited in ways that go beyond his evident highlighting, and may omit anything inconvenient to his tortious and conspiratorial aims. Defendants Iyer and Garrett ridiculously pretend that no other threads could have existed on the internet, because this is their only way of trying to cope with the insurmountable weight of the specific allegations that they originated the forgeries and defamations, as supported by the true meaning of the Exhibits, including Exhibit 3.

Rather than serving to "contradict" the allegations of the First Amended Complaint, the selective snapshot in time forwarded by defendant Garrett confirms the conspiracy and cooperation with defendant Iyer, because he waited to excerpt and forward these materials after defendant Iyer had erased the original post, supplied him with an improved second forgery shifted the focus away from where the first forgery had been by excluding that online thread from his compilation.

Exhibit 1, the first and less sophisticated forgery, was the one posted online and defendants Iyer and Garrett simply cannot ignore its existence by pretending that because it had been removed from an online thread that defendant Garrett chose not to make an excerpt of, it never existed at all.

Defendants Iyer and Garrett also fail to appreciate specific statements made relating to the harm throughout the First Amended Complaint. They claim that even the type of clerkship lost by the Plaintiff as a result of their defamations and the conduct of defendant Epstein was not specified despite it being specified as an "appellate" clerkship with a potential follow-up "with the U.S. Supreme Court" FAC ¶ 13 procured by defendant Epstein, who is accurately described as "an important source of recommendations of law students for clerkships in Federal District Courts, Courts of Appeals and the U. S Supreme Court" FAC ¶ 19.

### 2.  A Pattern of Intermittent and Contextual Amnesia Pervades Defendants' Memorandum that Selectively References Facts Elsewhere Denied to Exist

Defendants Iyer and Garrett also affirmatively deny the existence of core aspects of the pleadings after paying lip service in acknowledgment of the allegations against them elsewhere. An example of this is with the origination and forgery of the defamations that they acknowledge in other parts but dissonantly claim that the Plaintiff "merely alleges that Defendants made statements about rumors" MTD page 18. This is an incredulous way to describe the forgeries of Exhibit 1 & 2, and the alleged *origination* of these rumors including through the posting and subsequent strategic removal of

the online posts. Such an internal conflict cannot be explained by failing to properly read the pleading and must be willful deception.

Throughout their memorandum, defendants Iyer and Garrett also almost totally ignore the existence of two forgeries, except for a few token references, and never engage with what this means for their culpability, especially because the first appeared online with the defamatory posts and the second was admitted to have been "taken" by defendant Iyer. As shown above, they try to play off the claims against them as arising from "statements about rumors". The two forgeries also highlight their conflict of interest, and the impossibility of ethically representing both of them, because while defendant Garrett is more clearly caught in the communication of the defamations, defendant Iyer is clearly caught as the actual forger the second version, as defendant Garrett's writings in Exhibit 3 identify him, and almost definitely the forger of the first version too.

B. **Anticipatory Pleading by Plaintiff to Affirmative Defenses Such as the Statute of Limitations or Possible Common Interest Privilege is Not Required or Proper**

1. **Consideration of the Statute of Limitations Arguments Raised Are Premature and Factually Unsupported**

In *Michael Grecco Prods., Inc. v. RADesign, Inc.*, 112 F.4th 144 (2d Cir. 2024) the Second Circuit reiterated "[t]he pleading requirements of the Federal Rules of Civil Procedure do not compel a litigant to anticipate potential affirmative defenses, such as the statute of limitations, and to affirmatively plead facts in avoidance of such defenses." *Clark v. Hanley*, 89 F.4th 78, 93–94 (2d Cir. 2023) (internal quotation marks and citation omitted). In fact, "[p]laintiffs are under *no obligation* to plead facts supporting or negating an affirmative defense in the complaint. *In Re: Nine West LBO Sec. Litig.*, 87 F.4th 130, 144 (2d Cir. 2023)" (original emphasis).

The Second Circuit specifically stated that "the complaint did not need to allege, plausibly or otherwise, that the claim was timely. [plaintiff's] complaint could have therefore survived [defendant's]

motion to dismiss even without its allegations about [plaintiff's] general level of diligence or the date it discovered [defendant's] infringement. Because [plaintiff's] did offer those allegations, the district court was correct to consider whether they rendered it clear from the face of the complaint that the claims were time barred. But as described, they did not." *Michael Grecco Prods., Inc.*

In this case, diligent efforts were clearly pleaded, incidentally to another claim, as further described in Part C-1. These pleadings were not meant to anticipate any statute of limitations defense, but rather to state a claim against defendant Epstein for the fraud he repeatedly perpetrated against the Plaintiff to thwart identification of defendants Iyer and Garrett as the perpetrators.

### 2. Consideration of the Common Interest Privilege Arguments Raised Are Premature and Factually Unsupported

The same rule discussed in Part B-1 establishes that there is no obligation to plead anticipating affirmative defenses, and also applies to the Common Interest Privilege prematurely asserted by defendants Iyer and Garrett. Furthermore, this privilege is deeply fact intensive and rather than mere operation of law, involves factual circumstances that must establish its relevance and applicability, and is not supported at all by the pleadings. Critically, this privilege is a qualified one, and even its valid assertion is no absolute bar because it may be defeated by actual malice. See Part C-2.

### C. <u>Incidentally, Pleading as to Defendant Epstein's Fraud Establishes Relating Back Per FRCP Rule 15(c)(1)(a) with CPLR 1024 & 203 as "the Law That … Allows Relation Back"</u>

### 1. Defendant Epstein's Fraud Was Committed to Undermine Plaintiff's Diligent Efforts to Identify Defendants Iyer and Garrett

Upon being asked about the involvement of others defendant Epstein, who responded with fraud to cover up for defendants Iyer and Garrett. Defendant Epstein lied by phone "about not knowing which members of the New York University Federalist Society Chapter sent the defamatory statements and fakes to the Federalist Society, the manner by which he himself learned about the defamatory statements and fakes, and his own role in sending these materials himself and instructing others to do

so" FAC ¶ 79. After being pressed again about the identity of the perpetrators defendant Epstein perpetrated fraud again, in writing, he declared himself as the sender of the materials with a fraudulent omission and deceit by half-truth to cover up that defendants Iyer and Garrett had done so as well FAC ¶ 84. Even if not connected to or used to infer culpability on the part of defendant Epstein, it clearly demonstrates diligent efforts on the part of the Plaintiff to learn who the perpetrators were, and that these efforts were accurately directed to a person who had actual knowledge but chose to become a co-conspirator and thus a co-defendant.

2.  **New York Law Applies Through FRCP Rule 15(c)(1)(a) and Specifically Allows for Suits to Be Brought Against Does and Relate-Back Later**

Rule 15 of the Federal Rules of Civil Procedure at (c)(1) specifically provide that "An amendment to a pleading relates back to the date of the original pleading when … (A) the law that provides the applicable statute of limitations allows relation back;" All of the claims in this case arise under and have their statutes of limitations provided by the laws of the State of New York and the State of New Jersey. Both of these laws specifically allow for suits to be brought while claims are timely against John Does and for the Does to be discovered later.

NY CPLR §1024 specifically provides "*Unknown parties*. A party who is ignorant, in whole or in part, of the name or identity of a person who may properly be made a party, may proceed against such person as an unknown party by designating so much of his name and identity as is known. If the name or remainder of the name becomes known all subsequent proceedings shall be taken under the true name and all prior proceedings shall be deemed amended accordingly." (title italicized)

NY CPLR § 203 provides at (f) "*Claim in amended pleading*. A claim asserted in an amended pleading is deemed to have been interposed at the time the claims in the original pleading were interposed, unless the original pleading does not give notice of the transactions, occurrences, or series of transactions or occurrences, to be proved pursuant to the amended pleading." (title italicized)

The state courts of New York have interpreted these sections to require "diligent efforts" to be conducted during the timely period, sometimes also expressed as "due diligence". However this standard is low, and this District, in applying the state precedents have found the mere allegation by a plaintiff that he sent a few inquiries by letter to a government department *Medina v. Seiling*, No. 14-CV-6034 (VSB) 2018 WL 1603857 (S.D.N.Y. 2018), or a single contacting of a responsible official demanding the full identity of defendants to be sufficient *Ceara v. Deacon*, 68 F. Supp. 3d 402, 410 (S.D.N.Y. 2014). At this stage, all facts pleaded are to be accepted as true, with all reasonable inferences being made in favor of the Plaintiff. Only if defendants Iyer and Garrett will be able to factually prove at the summary judgment stage that there is no genuine dispute of fact as to whether or not the Plaintiff made diligent efforts to identify the perpetrators, and that no reasonable jury could find that he did, then denial of relating-back would proper. Because of the diligent efforts made with respect to defendant Epstein, incidentally pleaded to the fraud claim against him in Part C-1 it will be impossible for them to do so.

In *Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013) the Second Circuit recognized that asides from Rule 15(c)(1)(C) "Mistake" correction of identities, "the New York Civil Practice Law and Rules ("CPLR") creates a special procedure for claims alleged against John Doe defendants" and that "New York courts have interpreted this section to permit John Doe substitutions *nunc pro tunc*."[1].

The Second Circuit instructs that "[t]o take advantage of § 1024, a party must meet two requirements. See *Justin v. Orshan*, 14 A.D.3d 492, 788 N.Y.S.2d 407, 408 (2d Dep't 2005); *Maurro v. Lederman*, 7 Misc.3d 863, 795 N.Y.S.2d 867, 870–71 (Sup.Ct. Richmond Cnty.2005). First, the party must "exercise due diligence, prior to the running of the statute of limitations, to identify the defendant by name." *Bumpus*, 883 N.Y.S.2d at 104; see also *Harris v. N. Shore Univ. Hosp. at Syosset*, 16 A.D.3d

---

1 See *Bumpus v. N.Y.C. Transit Auth.*, 66 A.D.3d 26, 883 N.Y.S.2d 99, 104 (2d Dep't 2009); *Victor Auto Parts, Inc. v. Cuva*, 148 Misc.2d 349, 560 N.Y.S.2d 269, 271 (Sup.Ct. Monroe Cnty.1990); *Wilson v. 30 Broad St. Assocs.*, L.P., 178 Misc.2d 257, 679 N.Y.S.2d 521, 522 (Civ.Ct.N.Y.Cnty.1998)

549, 792 N.Y.S.2d 148, 149 (2d Dep't 2005); *Justin*, 788 N.Y.S.2d at 408; *Luckern v. Lyonsdale Energy Ltd.*, 229 A.D.2d 249, 654 N.Y.S.2d 543, 545–46 (4th Dep't 1997). Second, the party must describe the John Doe party "in such form as will fairly apprise the party that [he] is the intended defendant."[2]

If the Federalist Society could identify defendants Iyer and Garrett based on the Original Complaint, surely they could have done appraised themselves of the accusations against them.

Relating back is even easier under the laws of New Jersey, which may very well have the most liberal policy of any state or jurisdiction in the world in terms of allowing relating back against John Doe defendants through its "Fictitious Defendant Rule" N.J.R. 4:26-4. interpreted the degree of specificity required as being interpreted liberally so as to achieve the purposes of individual justice *Farrell v. Votator Div. Of Chemetron Corp*, 62 N.J. at 115, 122.

The extensive discussion of *Frederique v. Cnty. of Nassau*, No. CV 11-1746(WDW), 2014 WL 12841638 (E.D.N.Y. 2014) by defendants Iyer and Garrett is simply irrelevant because that magistrate judge order did not contemplate Rule 15(c)(1)(A) relating back, and only contemplated Rule 15(c)(1)(C) "mistake" relating back and a judicially crafted doctrine that allows for the statute of limitation to be tolled under equitable principles if defendants wrongfully resist discovery to ensure a plaintiff's claims become time barred during litigation. None of these are required or particularly relevant in this case because the laws of New York and New Jersey provide John Doe relating back mechanisms as a clear matter of law.

D. **Even if Not Premature or Irrelevant the Common Interest Privilege Cannot Protect Forgers and Originators of Defamation**

1. **Defendants Iyer and Garrett Had Actual Malice Because They Knew Their Forgeries and Fabricated Defamations Were False Resulting in Actual Malice**

According to *Diorio v. Ossining Union Free School Dist.*, 96 A.D.3d 710, 946 N.Y.S.2d 195 (2d Dep't 2012) "[I]f the plaintiff can demonstrate that the defendant made the allegedly false statement

---

2 *Bumpus*, 883 N.Y.S.2d at 104; see also *Lebowitz v. Fieldston Travel Bureau, Inc.*, 181 A.D.2d 481, 581 N.Y.S.2d 302, 303 (1st Dep't 1992).

with "malice," the privilege may be dissolved. To establish the "malice" necessary to defeat the privilege, the plaintiff may *show* either common-law malice, i.e., "spite or ill will," or may show "'actual malice,'" i.e., knowledge of falsehood of the statement or reckless disregard for the truth" (citations omitted and emphasis added). See also *Konowitz v. Archway School Inc.*, 65 A.D.2d 752, 409 N.Y.S.2d 757 (2d Dep't 1978).

Actual malice requires acting "with knowledge of its falsity or with reckless disregard of whether it was false." N.Y. Civ. Rights Law § 76-a(2); *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964). As is thoroughly alleged throughout the First Amended Complaint, and supported by the dispositive Exhibits 1 through 3, defendants Iyer and Garrett knew, and had to have known, that their forgeries were false, and that the defamations that they themselves fabricated out of whole cloth were false. This is the clearest and most plausibly pleading of actual malice possible, and is evidenced by dispositive exhibits.

## 2. Exceptional Persistence and Repetition of Defamation Defeats Common Interest Privilege

The remarkable persistence of defendants Iyer and Garrett, as identified by Exhibit 3, exceeds any possible common interest privilege that could be. After providing notice to three influential persons, who could accurately be described as "deciders" within the organization, defendant Epstein as faculty adviser, and the director and deputy director of the Student Division, continued their defamations when not getting the result they wanted initially as if they were taking a case on appeal. Defendants Iyer and Garrett are not "deciders" themselves, and even if they did not forge and fabricate themselves, and thus know the contents of their communications to be false, their privilege ended with their notification of three "deciders" of the Federalist Society the first time, and subsequent pleading and lobbying as evidenced by Exhibit 3 cannot be privileged.

16

### E. Defamation and Defamation *Per Se* are Properly Pleaded

Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662 at 679 (2009).

"Defamation is the injury to one's reputation either by written expression, which is libel, or by oral expression, which is slander." *Biro v. Conde Nast*, 883 F.Supp.2d 441, 456 (S.D.N.Y. 2012). Under New York law, to recover on a claim of defamation, a plaintiff must establish the following elements: (1) publication without privilege or authorization to a third party of a (2) false and (3) defamatory statement of and concerning the plaintiff, (4) with the requisite fault, and (5) special damages or *per se* actionability.12 See, e.g., *Palin v. New York Times Company*, 940 F.3d 804, 809 (2nd Cir. 2019); *Celle v. Filipino Reporter Enters.*, Inc., 209 F.3d 163, 176 (2nd Cir. 2000). A statement is defamatory if it exposes an individual "to public hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation or disgrace, or ... induce[s] an evil opinion of one in the minds of right thinking persons, and … deprive[s] one of their confidence and friendly intercourse in society."[3]. A statement is defamatory on its face (defamation *per se*) when it "suggests improper performance of one's professional duties or unprofessional conduct."[4]

It is obvious that defamations falsely accusing someone of being fired for sexual harassment, which is extremely unprofessional conduct, is defamation *per se* under two headings both of injuring a person in their trade or occupation and of falsely accusing them of committing a serious crime as has been thoroughly discussed throughout the entire First Amended Complaint as summarized by the Factual Background section herein, and manifest in Exhibits 1 through 3.

---

[3] *Fairstein v. Netflix, Inc.*, 553 F.Supp.3d 48, 62 at 63 (S.D.N.Y. 2021) (citing *Chau v. Lewis*, 771 F.3d 118, 127 (2nd Cir. 2014) (quoting *Kimmerle v. N.Y. Evening Journal, Inc.*, 262 N.Y. 99, 102, 186 N.E. 217 (1933))

[4] *Fairstein*, 553 F.Supp.3d at 63 (citing and quoting *Frechtman v. Gutterman*, 115 A.D.3d 102, 104, 979 N.Y.S.2d 58 (2014) (further quotation omitted)); see also *Laguerre v. Maurice*, 192 A.D.3d 44, 50, 138 N.Y.S.3d 123 (2020) ("A statement is defamatory *per se* if it … tends to injure the plaintiff in her or his trade, business, or profession....").

Furthermore, the general claims of defendants Iyer and Garrett that defamation is a disfavored tort, or that resolution at the motion to dismiss case is favored, beyond being prejudicial, also clearly fly in the face of recent precedent from *Palin v. New York Times Company*, 940 F.3d 804, 809 (2nd Cir. 2019). The vindication of the pleading standards and access to justice demonstrated that such cases, even involving public figures which this Plaintiff is not, are to be treated equally to other cases, and was recently reinforced by new law in *Palin v. New York Times Co.*, No. 22-558 (2nd Cir. 2024).

## F.  Injurious Falsehood is Properly Pleaded

Although injurious falsehood is sometimes wrongly thought of as a twin of defamation, perhaps due to in other cases being improperly confused or pleaded, it has its origins as a prototypical and specific form of primae facie tort, and developed according to similar reasoning but prior to primae facie tort *Penn-Ohio Steel Corp. v. Allis-Chalmers Mfg. Co.*, 7 A.D.2d 441, 184 N.Y.S.2d 58 (1st Dep't 1959); *Holy Spirit Ass'n for Unification of World Christianity v. New York State Congress of Parents and Teachers, Inc.*, 95 Misc. 2d 548, 408 N.Y.S.2d 261 (Sup 1978). Some have gone so far so as to suggest that injurious falsehood is actually a sibling or form of primae facie tort, which would place it on an evolutionary branch very far from defamation. To further illustrate how torts may differ in origin and character, extortion or the utterance of a threat also involves speech, as does common law trademark infringement, yet they can all still be very different from each other.

Based on the shared principle that unjustified and malicious harm should not be tolerated in society, primae facie tort regulates harmful true statements, in relatively rare circumstances where the tortfeasor has the sole malicious intent of injuring the plaintiff when making a true statement. Injurious falsehood, as alleged here, regulates false statements that cause injury by malice, and the inherent falsehood of the statement broadens the scope by providing that while malice may be necessary, it need not be the sole motive.

18

"To establish a claim for injurious falsehood, plaintiff must demonstrate that defendant maliciously made false statements with the intent to harm plaintiff, or made such statements recklessly and without regard to their consequences, and that a reasonably prudent person would have or should have anticipated that damage to the plaintiff would result." *N. State Autobahn, Inc. v. Progressive Ins. Grp. Co.*, 102 A.D.3d 5, 953 N.Y.S.2d 96 (2012) citing *Gilliam v. Richard M. Greenspan, P.C.,* 17 A.D.3d 634, 635, 793 N.Y.S.2d 526).

As a result of the injurious falsehoods trafficked by defendants Iyer and Garrett with actual malice as the forgers and originators, alleged by the First Amended Complaint and supported by Exhibits 1 through 3, the Plaintiff has not been able to find gainful professional employment, face the character and fitness committee of the bar absent risk of permanent professional injury and has suffered a broad slew of other harms as properly pleaded throughout the First Amended Complaint supported by Exhibits 1 through 3 including loss of a paying Bradley fellowship FAC ¶ 71,73 incorporating OC ¶ 48.

**G. Civil Conspiracy is Properly Pleaded**

**1. Defendants Iyer and Garrett Only Cite Cases That Did Not Find a Civil Conspiracy Did not Allege or Show by Exhibits Showing Communications**

Under New York law, "[t]o establish a claim of civil conspiracy, plaintiff must demonstrate the underlying tort, plus the following four elements: (1) an agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and, (4) resulting damage or injury."[5]

Exhibit 3, even without any inference from actions which occurred necessarily by the actions of defendants Iyer and Garrett shows as plausible all of these elements. Defendants Iyer and Garrett cooperated, initially with defendant Garrett communicating the first round of defamations at the Student Leadership Conference that were posted online by Defendant Iyer, but when this didn't work,

---

[5]*ACR Sys., Inc. v. Woori Bank*, No. 14 CIV. 2817 (JFK), 2018 WL 1757019 (S.D.N.Y. Apr. 10, 2018) See also *Cohen Brothers Realty Corp. v. Mapes*, 181 A.D.3d 401, 119 N.Y.S.3d 478 (1st Dep't 2020).

defendant Iyer created the second forgery, and out of all people in the world, he sent it to defendant Garrett, who then  the such as the creation and dissemination of the two forgeries Exhibits 1 & 2, and removal of the first and less sophisticated forgery Exhibit 1 on either July 31, 2022 or August 1, 2022.

Following defendants Iyer and Garret's logic, it is hard to imagine what *could* qualify as a conspiracy, especially considering that Exhibit 3 is effectively a confession, and an admission against co-conspirators that references communications between them.

### 2.  The Conspiracy is Obvious, Evidenced by Exhibit 3 and Easily Inferred by Actions

Exhibit 3 provides the best possible support for plausibility of a civil conspiracy imaginable, as it references the discussions and collaborations between all three defendants in a manner that will even be admissible per the Federal Rules of Evidence as an admission against co-conspirators, granting and exception to the hearsay rule. This exhibit also manifests an overt action in furtherance of the conspiracy by defendant Garrett, and in agreement with the instructions of defendant Epstein as deliberated upon jointly with defendant Iyer, and had the second version of the forgery, Exhibit 2 attached to it. Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662 at 679 (2009), and it does not take much imagination or none other than obvious inferences to be made to find that defendants Iyer and Garrett collaborated.

The only alternative to the explanation of conspiracy at this stage, is that defendant Iyer, who forged both versions of the defamatory image, tricked defendant Garrett into doing his dirty work, and that Garrett's participation was as a result of beind deceived by Iyer, who sent him the second forgery directly while admitting it to be of his own taking, knowing that he would forwarded it to the Federalist Society and others. This alternative possibility, which was not alleged by the complaint, is the only innocent explanation for defendant Garrett's conduct, and could have been considered by this court per the reasoning of *Twombley* and *Iqbal* which make an exception for innocent explanations confounding

allegations of conspiracy, but it was not raised by defendants Iyer and Garrett because of their obvious

conflict of interest, and the impossibility of any counsel ethically representing both of them in this

matter, as was argued in the Plaintiff's Motion to Disqualify Opposing Counsel of September 14, 2024.

## H. Intentional Infliction of Emotional Distress is Properly Pleaded and is Non Duplicative

### 1. Intentional Infliction of Emotional Distress is Contextual and Involved Standards of the Community

While it is true that it is hard to quantify exactly what conduct rises to the level of intentional

infliction of emotional distress, it is clear that it involves consideration of both the depraved intent of

the perpetrator and the particular susceptibility of the victim to the contemplated emotional distress.

While it is fitting that defendants Iyer and Garrett place themselves in the comparative ballpark

of people who dumped cement, lighted cigarettes, and eggs on [a] plaintiff's property and threatened to

paint a swastika on his house *Seltzer v. Bayer*, 709 N.Y.S.2d 21, 23 (1st Dep't 2000) and subjected [a

vulnerable plaintiff] to eight hours of threatening interrogation while showing him a gun and denying

him food. *Elson v. Consol. Edison Co. of N.Y., Inc.*, 641 N.Y.S.2d 294, 294-95 (1st Dept. 1996), they

clearly exceeded those inflictions both in their depraved intent and in the emotional suffering caused.

The intentional infliction of emotional distress here is much more severe than the cases cited. It

is obvious, and easily inferred from both the First Amended Complaint and the Original Complaint

brought *pro se* written by the Plaintiff himself which may be noticed as a testament of his suffering,

that the Plaintiff would have preferred to have any of those things happen to him, rather than the injury

and subsequent suffering that defendants Iyer and Garrett tailored especially to destroy his life, career

prospects and relationships with his favorite law professor and a non profit he was deeply involved

with. The Plaintiff would have also prefer to be falsely accused, even by perjured testimony, of arson as

they cite from *Cunningham v. Sec. Mut. Ins. Co.*, 689 N.Y.S.2d 290, 291 (3d Dep't 1999), or

embarrassed at work by being accused of "f*****g the bookkeeper." in front of colleagues as they cite

21

from *M+J Savitt, Inc. v. Savitt* No. 08-cv8535 (DLC), 2009 WL 691278 (S.D.N.Y. 2009), because this occurring at work would at least mean that he had a job, and does not necessarily imply any criminal, wrongful or harassing conduct towards the bookkeeper due to the possibility left open of the relationship being consensual. Furthermore, in that case the bookkeeper was apparently an outside contractor or service provider rather than a coworker or employee.

The conduct of defendants Iyer and Garrett, as part of a thorough campaign of destruction, is best compared to a case where intentional infliction of emotional distress was found in *Mitchell v. Giambruno*, 35 A.D.3d 1040, 826 N.Y.S.2d 788 (3d Dep't 2006) where, for approximately two years, the neighbors conducted a campaign of lewd comments and intimidation directed at a same-sex couple and their lifestyle, both in private and public. This is similar to what the Plaintiff has been suffering. The repeated nature of the long list of torts, including the intrusive depiction of the Plaintiff's private habits, mannerisms and beliefs FAC ¶ 38, repetitions of the defamations beyond 2022, and the recent tortious interference resulting in the loss of two good jobs FAC ¶ 29 makes the similarity quite striking. Arguably, the suffering of the plaintiffs in *Mitchell v. Giambruno* is less because they did not lose their employment and entire career prospects as a result of the tortious conduct of those defendants.

**2.   Defendants Iyer and Garrett Cannot Expect That Two Independently Valid Claims Both Be Dismissed Because They Are Overlap Thus Denying All Recovery**

Defendants Iyer and Garrett also argue throughout, resulting in internal inconsistency, that because two causes of action in anyway overlap, either due to arising from the same conduct or damages, that both should be denied. At most, if such arguments were taken to be persuasive just one should be denied as duplicative, but now is not the time for doing so because this would deny to the Plaintiff the ordinary benefit of pleading in the alternative per Rule 8(a)(3), especially prior to having the benefit of discovery.

This internal inconsistency is particularly noticeable in terms of damages. While ignoring the *per se* exemption from showing special damages resulting from defamatory remarks injuring the trade of profession of the Plaintiff, defendants Iyer and Garrett instead claim that only special damages are recoverable, and simultaneously claim that the extreme emotional harm suffered by the Plaintiff is duplicative of the injury resulting from defamation, suddenly ignoring their "special damages" (that also have an improperly invented pecuniary requirement thrown in by them for good measure).

## I.  New Jersey Law Applies to the Properly Pleaded False Light and Invasion of Privacy Claim

### 1.  The Southern District of New York and Second Circuit Routinely Uphold Such Properly Pleaded New Jersey Claims Under New Jersey Law

In *Catalanello v. Kramer*, 18 F. Supp. 3d 504 (S.D.N.Y. 2014) the court found that the domicile of the Plaintiff in New Jersey, and the harm being suffered there was dispositive, regardless of none of the tortious actions took place there, other than the appearance of the tortious material.

The *Catalanello* court evaluated many precedents and found that "Discouraging defamation is a conduct regulating rule," and thus "the situs of the tort[] should control." *Lee v. Bankers Trust Co.*, 166 F.3d 540, 545 (2d Cir.1999), 166 F.3d at 545; see *Machleder v. Diaz*, 801 F.2d 46, 51–52 (2d Cir.1986) (affirming application of New Jersey law to defamation and false-light invasion of privacy claims on the ground that New Jersey "has the most significant relationship with the occurrence and with the parties"). "'[T]he locus of the tort is where the plaintiff suffered injury.'" *Adelson v. Harris*, 973 F.Supp.2d 467, 476 (S.D.N.Y.2013) (quoting *Condit v. Dunne*, 317 F.Supp.2d 344, 353 (S.D.N.Y.2004)). Thus, in a defamation action, "'often the Court can resolve the choice of law analysis ... simply by observing the state of plaintiff's domicile and presuming that the publication injured him in that state.'" Id. (quoting *Condit*, 317 F.Supp.2d at 353); see also *Lee*, 166 F.3d at 545 (in a defamation case, "'the state of the plaintiff's domicile will usually have the most significant

relationship to the case,' and its law will therefore govern") (quoting *Reeves v. Am. Broad. Co.*, 719 F.2d 602, 605 (2d Cir.1983)) (All other bracketed comments are original to the court).

The taking of the Plaintiff's image and using it to create the two forgeries Exhibits 1 & 2 to present him, by spreading these materials far and wide, as someone who was fired for sexual harassment and banned from an office building where he formerly worked Exhibit 3, accompanied by an intrusive discussion of the Plaintiff's mannerisms, habits, personality and beliefs are the paradigmatic example of the false light invasion of privacy if there ever was one. FAC ¶ 117,118.

2. **Defendants Iyer and Garrett Incorrectly Assume That One State's Laws Must Govern All Claims and Ignore the Doctrine of Dépeçage**

Dépeçage is a relevant doctrine in the consideration of different claims each under their relevant sources of law as a horizontal matter such as with multiple state laws or national laws, as is practiced vertically by including both state and federal causes of action in a single case. While the rest of the causes should be tried under New York law, due to their injuries and harms focusing there as defendants Iyer and Garrett contend, false light invasion of privacy should be tried under the laws of New Jersey because it only protects the Plaintiff in his local community, which is New Jersey, and is only provided by the laws of New Jersey. Even if a similar protection was offered by New York, the Plaintiff could not avail himself of it there, because his local community was not in New York, and so New Jersey's law protects a purely local interest from which out of state harm was directed to.

New York embraces dépeçage as a choice-of-law doctrine *Federal Housing Finance Agency v. Ally Financial Inc.*, Fed. Sec. L. Rep. (CCH) P 97235, 2012 WL 6616061 (S.D.N.Y. 2012). Dépeçage is a term that one court noted means "dismemberment" in *French Schwartz v. Twin City Fire Ins. Co.*, 492 F. Supp. 2d 308 (S.D. N.Y. 2007), judgment aff'd, 539 F.3d 135 (2d Cir. 2008). The doctrine of dépeçage recognizes that in a single action different states may have different degrees of interest with respect to different operative facts and elements of a claim *Simon v. Philip Morris Inc.*, 124 F. Supp. 2d

24

46, 75 (E.D. N.Y. 2000). The rules of one system are applied to regulate certain issues arising from a transaction while the law of another system is applied to a different issue[6] Under this choice-of-law technique, a court may separate a part of the case into different portions and apply one body of law to one portion while applying a different body of law to other portions.

Because false light invasion of privacy governs the inherently local, and community impacts of the undue amounts of attention that false portrayal brings upon a private person in their neighborhood, New Jersey is the best and only source of law and geographical boundary of damages arising from false light invasion of privacy. The Plaintiff does not claim that all of the causes of action brought should be tried under the laws of New Jersey, as would be most favorable to him, but merely the only one that must and should be according to every relevant standard, which is false light invasion of privacy.

## CONCLUSION

### The Facially Defective Motion to Dismiss Opposed is a Not Responsive to the Pleadings

The motion opposed is simply not responsive to the core allegations of the pleadings, and does not respect the proper standards and practices by which it must be evaluated, which provide that facts alleged by the Plaintiff must be accepted as true, and that all reasonable inferences be drawn in the Plaintiff's favor. This is both as a result of ignoring the core allegations of the pleadings and the injection of facts unsupported threadbare conclusions by the defendants requesting this extraordinary and juridically disfavored dismissal with prejudice at the pleading stage. These deficiencies are demonstrated throughout this memorandum in opposition, not to mention a properly liberal reading and construction of the pleadings accompanied by dispositive evidence, and require for this motion to dismiss to be denied, and for parties to conduct discovery, and develop and submit evidence.

---

6 *2002 Lawrence R. Buchalter Alaska 2002 Lawrence R. Buchalter Alaska Trust v. Philadelphia Financial Life Assur. Co.*, 96 F. Supp. 2d 182 (S.D.N.Y. 2015); *United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc.*, 216 F. Supp. 2d 198 (S.D.N.Y. 2002)

Dated: Vancouver, British Columbia (Canada)
September 26, 2024

Respectfully submitted,

/s/ Gideon Rapaport, *pro se*
GideonRapaportLaw@Outlook.com
(862) 213-0895
#627 1078 Summit Avenue
Jersey City, New Jersey, 07310