**REPLY TO OPPOSITION OF MOTION TO DISQUALIFY SCHAERR-JAFFE LLP**

## Table of Contents

Introduction..........................................................................................................................1

Argument.............................................................................................................................2

    Schaerr-Jaffe LLP Improperly Attempt to Shift Their Burden to the Plaintiff......................2

    Schaerr-Jaffe LLP Has Not Even Attempted to Meet Their Heavy Burden Because the Conflict of Interest Here is Impossible to Justify and Instead Cherry-Picks a Different Standard.........................2

    Schaerr-Jaffe LLP Self-Contradicts by Claiming it is Obvious that There Could be No Possible Conflict While Also Presenting Affidavits and Alleging a Waiver.........................................4

    Rather Than "Mere Conjecture" There Are Exhibits of the Defendants' Own Writings and Forgeries Indicating Different Positions and Interests.................................................5

    Schaerr-Jaffe LLP Has Not Shown the Waiver by their Clients as Required Because it Does Not Exist or Cannot Comply with New York Law.........................................................6

    The Affidavits Proffered by Schaerr-Jaffe LLP Are Perjured as Demonstrated by Defendants' Own Writings and Materials Already Exhibited in the Record.........................................7

    The Affidavits Only Serve to Protect Schaerr-Jaffe LLP From Liability from Their Clients and Revealingly Testify as to "Future" Conflicts Which Are Inevitable......................................8

    In the Absence of Viable Arguments Pertaining to Either Fact or Law Schaerr-Jaffe LLP Demean the Plaintiff as a Pro Se Litigant and Attempt to Support Their Argument With Sheer Speculation That His Former Counsel Agrees With Their Position..................................................9

    Disqualification of Schaerr-Jaffe LLP is the Proper and Only Possible Remedy to Prevent Further Damage to the Integrity of These Proceedings.................................................10

## **Introduction**

Schaerr-Jaffe LLP have grossly misstated the applicable law beginning with an improper attempt to shift their burden of proving the irremediable primae facie conflict they have between their clients to the plaintiff instead of having to justify it themselves. They then proceed to present a standard not applicable to cases such as this one where there is a conflict of interest between concurrent clients in the same live case, as opposed to former clients in tangentially related matters.

In terms of the facts, Schaerr-Jaffe LLP have totally ignored exhibits in the record, particularly Exhibits 2 and 3, and arguments made in support of the motion pursuant to those exhibits. Instead, they boldly claim both throughout their brief opposition that no factual support was offered for this motion, as is also reflected by their incredulous first heading "Mr. Rapaport … Relies on Speculation Alone". This can only be so if they willfully ignore the facts presented as supported by exhibits in the record.

In their argument, Schaerr-Jaffe LLP continue to contradict themselves. After dramatically presenting that no possible conflict could exist in their concurrent representation to any reasonable person, and repeatedly demeaning the plaintiff as a *pro se* litigant, they present affidavits to attempt to defend their unethical concurrent representations referencing unseen waivers. Although these affidavits are threadbare and formulaic, they do swear to the considerations and deliberations made relating to precisely such conflict of interest that they deny, and revealingly include discussion of "future" conflicts Affidavits A and B at ¶ 5, because Schaerr-Jaffe LLP already knows they are inevitable.

Furthermore, the affidavits proffered are perjured as provable by exhibits of the defendants' writings and forgeries already in the record, and serve no purpose but to protect Schaerr-Jaffe LLP from future liability to their own clients, particularly defendant Garrett, who has already been prejudiced.

Schaerr-Jaffe LLP have not actually shown the required waivers to the Court for evaluation, either because they do not exist, or because they reflect the incompatible District of Columbia approach in which only prohibits *positions* actually taken and not *interests* represented in contrast to New York.

**Argument**

Schaerr-Jaffe LLP Improperly Attempt to Shift Their Burden to the Plaintiff

Once a primae facie conflict of interest between current clients has been raised by any party or the Court *sua sponte*, the attorneys thus implicated bear a very high burden of justifying why their representation should continue. The Second Circuit has found that "Where the relationship is a continuing one, adverse representation is prima facie improper, *Matter of Kelly*, supra, 23 N.Y.2d at 376, and the attorney must be prepared to show, at the very least, that there will be no actual or *apparent* conflict in loyalties or diminution in the vigor of his representation. We think that appellants have failed to meet this heavy burden…" *Cinema 5, Ltd. v. Cinerama, Inc.*, 528 F.2d 1384, 1387 (2d Cir. 1976) (emphasis original). Schaerr-Jaffe LLP improperly attempt to shift the burden which now rests on them as a result of the primae facie adversity between defendants Iyer and Garrett both as to culpability and consequences. Most succinctly and as shall be further elaborated on *infra*, the primae facie conflict arises from, and is obviously irremediable for the dispositive reason that it denies both defendants the opportunity to seek indemnification from each other as demonstrated by their different roles as forger and distributor in Exhibit 3. Schaerr-Jaffe LLP simply ignore arguments made relating to Exhibit 3 wherein defendant Garrett identifies Defendant Iyer as his source for the forged image Exhibit 2, that he offers as support for his own defamatory statements.

Schaerr-Jaffe LLP Has Not Even Attempted to Meet Their Heavy Burden Because the Conflict of Interest Here is Impossible to Justify and Instead Cherry-Picks a Different Standard

The correct standard, which places a heavy burden upon the attorneys who have the primae facie conflict should not be confused with other standards applicable to cases such as where a former client intervenes to prevent former counsel from representing a new client in a tangentially related matter (such as the matter relating to the same sector of the economy), or matters that are tangentially related and do not actually affect the adversarial representation in anyway.

Schaerr-Jaffe LLP deceptively cite to cases that *describe* an inapplicable standard as demonstrated by their best and opening precedent, a magistrate judge order from *Merck Eprova AG v. ProThera, Inc.*, 670 F. Supp. 2d 201 (S.D.N.Y. 2009), which provides them with their "high standard of proof" cherry-picked quote. Although this case *described* the alternative standard, it ended up selecting the correct one, which was appropriate in that matter and is for this one as well. This order arose from representations by the same firm in different, arguably unrelated cases from which counsel had withdrawn at the time of the motion, and still resulted in disqualification despite some discouraging remarks made in passing early on about disqualification motions. The "high standard of proof" cited from *Merck Eprova AG* as a cherry-pick was outweighed by a deciding "on the other hand" specifically targeted towards cases about concurrent conflicts such as this one:

> "Where a conflict is alleged, "[t]he standard for disqualification varies depending on whether the representation is concurrent or successive." *Hempstead Video*, 409 F.3d at 133. If the representation is concurrent, it is "`prima facie improper' for an attorney to simultaneously represent a client and another party with interests directly adverse to that client." Id. (quoting *Cinema 5, Ltd. v. Cinerama, Inc.*, 528 F.2d 1384, 1387 (2d Cir. 1976)). In such instances, the "per se" standard applies and the attorney must be disqualified unless he can demonstrate "`at the very least, that there will be no actual or apparent conflict in loyalties or diminution in the vigor of his representation.'" Id. (quoting *Cinema 5*, 528 F.2d at 1387)." *Merck Eprova AG* at 208

Even Schaerr-Jaffe LLP's star precedent excerpted above rejects their contentions and leads back to *Cinema 5, Ltd. v. Cinerama, Inc.*, 528 F.2d 1384, 1387 (2d Cir. 1976), a case that they tried to present as irrelevant because it had the quirk of being about an attorney who was a partner of two law firms. This quirk did not prevent hundreds of favorable citations as a landmark statement of this area of the law, including the citation above, but for obvious reasons Schaerr-Jaffe LLP must desperately avoid its clear command, which places upon them a "per se" heavy burden they cannot overcome.

This misrepresentation of the law by Schaerr-Jaffe LLP is especially egregious, because they themselves chastised the plaintiff and demeaned him as a *pro se* litigant for not explaining the full context of *Cinema 5*, which they incorrectly claim make it inapplicable, and did not actually provide to

the Court themselves. Even their own cited precedents favorably relied upon *Cinema 5* to disqualify counsel in cases where an attorney was not a partner of two law firms, and reach the opposite conclusion that they seek. Disqualification should be granted here as well considering there is a far more direct and prejudicial conflict of interest than either their chosen *Merck Eprova AG* or *Cinema 5*.

In their desperate attempt to avoid *Cinema 5*, Schaerr-Jaffe LLP also selectively presented that case as being only about "confidential communications", which they claim are not an issue at all in this case, when in actuality the *Cinema 5* court dedicated significant amount of discussion to the issue of "conflicting interests". Because the partner with one foot in each firm representing adverse parties was not actually involved in that litigation in any meaningful way, the district judge found no actual harm (which would be a far cry from the situation in this concurrent representation conflict) and instead ruled on the mere *appearance* of impropriety and the *possibility* of affecting confidential communications. The Second Circuit reinforced this reasoning in the first footnote of that opinion "we are confident that he would make every effort to disassociate himself from both lawsuits and would not divulge any information that came to him concerning either. However, we cannot impart this same confidence to the public by court order." *Cinema 5* which demonstrates that the integrity of the adversarial system is at stake and that even a less substantively impactful conflict compared to this one is irremediable.

As far as other cited precedents, Schaerr-Jaffe LLP is pulling up irrelevant dregs such as *Total Asset Recovery Servs.*, 2022 WL 1125924, about the witness-advocate rule applied to attorneys, or *Kleeberg v. Eber*, 2019 WL 2284724 which is totally irrelevant as well because it applied the exemption for companies and officers.

### Schaerr-Jaffe LLP Self-Contradicts by Claiming it is Obvious that There Could be No Possible Conflict While Also Presenting Affidavits and Alleging a Waiver

After engaging in a personally derogatory performance attempting to show that no reasonable person could ever find any conflict of interest between defendants Iyer and Garrett (although not

broaching the issue of how a reasonable person could ignore exhibits of these defendants own writings and materials), Schaerr-Jaffe LLP does an 180 degree turn, and then tries to prove how they thoroughly and credibly they prepared waivers for their clients, and advised them about such conflicts.

If any conflict in this case were really a figment of a single person's imagination, rather than being obvious as evidenced by the amended complaint and the exhibits, particularly Exhibits 2 and 3, Schaerr-Jaffe LLP would not have done the thorough work relating to the waivers, which it has not shown as would be required for this Court to consider their sufficiency, an issue further discussed *infra*.

<u>Rather Than "Mere Conjecture" There Are Exhibits of the Defendants' Own Writings and Forgeries Indicating Different Positions and Interests</u>

Because the conflicts of interest between defendants Iyer and Garrett are obvious in this case, Schaerr-Jaffe LLP has not even attempted to engage with the facts and exhibits that clearly establish a primae facie conflict and instead adopts an ostrich strategy of simply pretending they do not exist. This is simply the best they can do, and it is not nearly good enough.

They did not refer to Exhibit 3 a single time in their opposition, or any other exhibit for that matter. As identified in the supporting memorandum for this motion, and on a purely factual level that does not consider conspiracy liability, defendants Iyer and Garrett committed different actions to result in the defamatory harm, among other forms of harm. Defendant Garrett specifically identified defendant Iyer as the source of the second version of the forgery "Please see the attached photo ("Security Desk Photo" [Exhibit 2]) taken by Ajay Iyer at Kirkland & Ellis's New York location at 601 Lexington Avenue on Thursday, June 28th [sic, it was Thursday, July 28th], where Ajay worked with Gideon this summer." Exhibit 3. Why should defendant Garrett be prevented from claiming indemnity for forwarding something that he could argue defendant Iyer forged and tricked him with?

Simply dismissing the factual allegations and by unstated implication the exhibits (which are not mentioned at all) as a fanciful "parade of horribles" is not responsive at all. Furthermore, to suggest that the written testimony of defendant Garrett identifying defendant Iyer as the source of the second forgery (and thus by easy inference of the first forgery as well) does not give defendant Garrett an opportunity for indemnification or the lowering of the standard of liability to recklessness is obvious to all but the willfully ignorant Schaerr-Jaffe LLP.

As a matter of substantive law, Schaerr-Jaffe LLP fail to appreciate that it is possible for defendants Iyer and Garrett to have conspired with differing levels or types of intent. For example defendant Iyer could have known his forgeries to be false and thus satisfy both common law malice and actual malice, while defendant Garrett could have been reckless as to the truth or falsehood of defendant Iyer's forgeries and spread them with actual malice through reckless disregard. This additional willful ignorance, clearly demonstrates their preference and bias towards the forger himself, defendant Iyer, who upon information and belief is their sole real (and paying) client. Ironically, Schaerr-Jaffe LLP's joint representation, and arguments against any conflict resulting from different levels of liability, tends to confirm that both of their clients are liable at the highest level of conspiracy.

The guiding principle is not exactly what is alleged in the complaint accepted as true, but rather what arguments *could* hypothetically be made by the defendants, such as indemnification which is dispositive for this motion, and they are deprived of it due to the conflict of interest of their counsel.

<u>Schaerr-Jaffe LLP Has Not Shown the Waiver by their Clients as Required Because it Does Not Exist or Cannot Comply with New York Law</u>

Schaerr-Jaffe LLP has not submitted the waivers that the proffered affidavits sparsely mention. If these waivers actually exist, they would have to be examined by the Court as being adequate according to the standards of New York State and the Second Circuit.

If real, the only possible explanation for Schaerr-Jaffe LLP's joint representation in this matter other than willful ethical violation, would be that the waiver was executed according to the standards set forth in the District of Columbia, which are far more flexible and permissive of waivers for conflicts. In the District of Columbia, counsel may take a case even if they are certain there is or will be an irremediable conflict as long as they get a waiver for it and reasonably believe they will be able to provide "competent and diligent representation" DC Rule 1.7(b) and (c). It is critical to note that in the District of Columbia under the single-line DC Rule 1.7(a), only the representation of "adverse *positions*" (emphasis added) is prohibited referring to positions themselves as opposed to adverse *interests* of clients that do not result in positions being taken. This is further elaborated on by DC Rule 1.7 Comment 4, which specifically discusses that it is permissible to carve up the litigation into stages, meaning it could be ethical to represent adverse defendants as to liability but not damages, which may be what Schaerr-Jaffe LLP thought they could do in this case, in ignorance of New York law. This is drastically different from New York, and leaves counsel and clients with the freedom to simply not present those adverse positions, as opposed to the required fiduciary and undividedly loyal representation undertaken with vigor required in New York *Cinema 5,* NY Rule 1.7 Comments 1-2.

<u>The Affidavits Proffered by Schaerr-Jaffe LLP Are Perjured as Demonstrated by Defendants' Own Writings and Materials Already Exhibited in the Record</u>

Schaerr-Jaffe LLP have done another disservice to their clients, beyond their unethical joint representation, by advising their clients to give up on all of the critical protections offered to them in the course of civil litigation relating to answers, denials and responses to interrogatories through swearing to false general denials themselves in the proffered affidavits.

Ordinarily, the Federal Rules of Civil Procedure contemplate a narrowing of issues factually contested through answers, denials and interrogatories which must be specific and truthful, in a departure from the pre-1938 code pleading norm of general denials by defendants. Such responses are

supported by the signatures of their attorneys as being in good-faith and arguable, but still, defendants are not required to risk perjury by submitting affidavits in support of those denials.

In their identical affidavits at ¶ 5 defendants Iyer and Garrett swore under penalty of perjury to general denials "we both vehemently deny the allegations that accuse us of any wrongdoing – either jointly or separately". This sworn statement imputes perjury to both defendants Iyer and Garrett as evidenced by the exhibits in the record, particularly Exhibits 2 and 3. In Exhibit 3, defendant Garrett identified (and thus accused) defendant Iyer of being the source of Exhibit 2, the forged and defamatory image. This would make it impossible for them to truthfully swear to their affidavits, especially because the forgery defendant Garrett has identified defendant Iyer of engaging in (whether separately or jointly) is a *malum in se* by any standard, that defendant Iyer commits perjury by denying.

### The Affidavits Only Serve to Protect Schaerr-Jaffe LLP From Liability from Their Clients and Revealingly Testify as to "Future" Conflicts Which Are Inevitable

The perjured affidavits sworn to by Schaerr-Jaffe LLP's clients defendants Iyer and Garrett, unaccompanied by the actual waivers they hint at with no real detail, serve no useful purpose to defendant Iyer and Garrett, and rather exist only protect Schaerr-Jaffe LLP from professional responsibility for undertaking this unethical joint representation.

Schaerr-Jaffe LLP undertook this representation knowing that their clients had adverse interests, and now that they have been called out, the utilized the predicament of their clients to obtain affidavits which although minimal, provide them with the cover they need to avoid liability, particularly from Defendant Garrett, who has already been prejudiced by their representation.

### Schaerr-Jaffe LLP Fails to Appreciate Differences Between Conferring for Scheduling and Conferring for Substantive Changes to Pleadings With Disparate Impacts on Their Adverse Clients

In the absence of precedent supporting such a conflicted representation, and while needing to ignore the actual facts of the case as supported by exhibits in the record, Schaerr-Jaffe LLP instead try to have a "gotcha" moment in their Footnote 1 with the plaintiff by attempting to find a contradiction in

his conferral with them. Schaerr-Jaffe LLP present that the plaintiff contradicted himself by conferring with them for the purposes of scheduling and requesting a one-week extension, but refusing to confer with them for the purposes of obtaining their approval to substantive changes in the pleadings.

Schaerr-Jaffe LLP fail to appreciate that a scheduling extension does not create a disparate impact upon both of their clients, each with interests adverse to the other relating to the merits of the case. Specifically, the amended complaint contemplated adding a party and additional factual background, which would have tended to impart a greater degree of support for a finding of common law malice by one party, while potentially providing greater support for a finding of actual malice by recklessness, which would result in a liability dischargeable in bankruptcy, upon the other. Schaerr-Jaffe LLP could not ethically confer on such a matter, considering the adverse interests of their clients and as a result this neither could the plaintiff because he would then become part of their wrongdoing.

<u>In the Absence of Viable Arguments Pertaining to Either Fact or Law Schaerr-Jaffe LLP Demean the Plaintiff as a Pro Se Litigant and Attempt to Support Their Argument With Sheer Speculation That His Former Counsel Agrees With Their Position</u>

In an undignified digression from the issues relevant to this motion, Schaerr-Jaffe LLP chose to begin their opposition to their own disqualification by demonstrating their contempt for both the adversarial process itself and the guardrails that maintain its integrity, among which is attorney-client privilege. This Court knows that the plaintiff is a *pro se* litigant, who began this case as a John Doe case before uncovering the identities of these defendants through a subpoena response from the Federalist Society, yet Schaerr-Jaffe LLP repeatedly demean the plaintiff with this label and attempt to create prejudice against the consideration of his arguments on their legal and factual merits, even as they themselves perpetrate every error and deception relating to precedent they accuse him of, as seen by their false accusations and deceptive presentation of *Cinema 5* and *Merck Eprova AG supra*.

Schaerr-Jaffe LLP began their opposition with rank speculation, and present to this court that because the plaintiff's former counsel, whose only substantive filing was the amended complaint, did

not make such a motion, the plaintiff's former counsel believed it to be meritless, and would agree with Schaerr-Jaffe LLP. Obviously, they do not actually apply such confidence to the plaintiff's former counsel's filings to themselves, or else they would not have filed motions to dismiss his complaint.

Nevertheless, this ugly attempt would seem to leave the plaintiff, who is a *pro se* litigant, with no choice but to waive his attorney-client privilege in order to disclose that his former counsel did not agree with Schaerr-Jaffe LLP that their concurrent representation of conflicted clients is ethical, or accept their sheer speculation to that effect.

Instead, the plaintiff will speculate a little bit more reasonably than Schaerr-Jaffe LLP, that perhaps the plaintiff got the idea to submit this motion from his former counsel before resuming to represent himself *pro se*, or that the plaintiff's former counsel was in fact working on such a motion, or that the plaintiff's former counsel was waiting to file such a motion a tactically advantageous time much later on in the course of litigation. Evidently, Schaerr-Jaffe LLP speculates as selectively as they present precedent or recall the facts and exhibits relevant to this case.

While the plaintiff cannot disclose the strategy or mental impressions of his former counsel, insofar as consideration of tactics he may identify that presently he only sees a moral necessity, rather than any tactical benefit to his cause resulting from the proposed disqualification of Schaerr-Jaffe LLP, because victory in a proceeding tainted by denial of loyal counsel to a defendant would be less restorative of his reputation for integrity and his commitment to the ideals of the law.

<u>Disqualification of Schaerr-Jaffe LLP is the Proper and Only Possible Remedy to Prevent Further Damage to the Integrity of These Proceedings</u>

For the foregoing reasons, Schaerr-Jaffe LLP must be disqualified from representing defendants Iyer and Garrett immediately, before further damage is done to the integrity of these proceedings. Even the mere appearance of such a conflict cannot be tolerated, and all doubts must be resolved in favor of disqualification.

Dated: Vancouver, British Columbia (Canada)
October 7, 2024

                        Respectfully submitted,

                        /s/ Gideon Rapaport, *pro se*
                        GideonRapaportLaw@Outlook.com
                        (862) 213-0895
                        #627 1078 Summit Avenue
                        Jersey City, New Jersey, 07310