UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
GIDEON RAPAPORT,

                    Plaintiff,               Case No.: 1:23-cv-06709 (JGLC)

    -against-

AJAY SRINIVASAN IYER,
ZACHARY GEORGE GARRETT, and
RICHARD ALLEN EPSTEIN,

                    Defendants.
----------------------------------------------------------X

**DEFENDANTS AJAY IYER AND ZACHARY GARRETT'S
REPLY IN SUPPORT OF MOTION TO DISMISS AND OPPOSITION TO
PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

ARGUMENT ..................................................................................................................... 2

    I.      Rapaport's Claims Are Time Barred. ............................................................. 2

          A.      Rapaport's claims do not relate back under state law. ...................... 4

          B.      The court should resolve the issue of timeliness now .................... 12

    II.     The First Amended Complaint Fails to State a Claim. .............................. 13

          A.      Rapaport's defamation claim fails. ................................................ 13

          B.      Rapaport fails to identify special damages and thus cannot maintain a claim for injurious falsehood. ........................................................... 16

          C.      There is no plausible civil conspiracy. .......................................... 17

          D.      Rapaport's subjective feelings cannot sustain a claim for intentional infliction of emotional distress .......................................................... 19

          E.      The fact that Rapaport resides in New Jersey is not enough to save the claim for false light and invasion of privacy. ................................. 20

    III.    The Court Should Deny Leave to Amend the Complaint Again. .............................. 21

CONCLUSION ................................................................................................................ 23

## TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009).................................................................................................. 13

*Barrett v. City of Newburgh,*
   No. 13-cv-4118 (NSR), 2017 WL 1102672 (S.D.N.Y. Mar. 23, 2017) ..................................... 8

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544 (2007).................................................................................................. 13

*Bumpus v. N.Y. City Transit Auth.,*
   88 N.Y.S.2d 99 (2d Dep't 2009)........................................................................... 5, 6, 9

*Catalanello v. Kramer,*
   18 F. Supp. 3d 504 (S.D.N.Y. 2014) ...................................................................... 20

*Ceara v. Deacon,*
   68 F. Supp. 3d 402 (S.D.N.Y. 2014) ................................................................... 6, 10

*Clark v. Hanley,*
   89 F.4th 78 (2d Cir. 2023) ...................................................................................... 12

*Cooper v. City of New York,*
   No. 17-cv-1517 (NGG/RLM), 2019 WL 3642996 (E.D.N.Y. Aug. 5, 2019) ........................ 4

*Daniels v. St. Luke's-Roosevelt Hosp. Ctr.,*
   No. 02-cv-9567 (KNF), 2003 WL 22410623 (S.D.N.Y. Oct. 21, 2003) .............................. 17

*Drug Rsch. Corp. v. Curtis Publ'g Co.,*
   7 N.Y.2d 435 (N.Y. 1960) ...................................................................................... 17

*Fisher v. Cnty. of Nassau,*
   No. 10-cv-0677 (JS/ETB), 2011 WL 4899920 (E.D.N.Y. Oct. 13, 2011) .................. 5, 9, 11

*Frederique v. Cnty. of Nassau,*
   No. 11-cv-1746 (WDW), 2014 WL 12841638 (E.D.N.Y. May 22, 2014)........................... 3, 4

*Ganske v. Mensch,*
   480 F. Supp. 3d 542 (S.D.N.Y. 2020) ...................................................................... 14

*Grayson v. Ressler & Ressler,*
   271 F. Supp. 3d 501 (S.D.N.Y. 2017) ...................................................................... 16

*In re Merrill,*
   No. 19-cv-6002 (LJL), 2021 WL 827190 (S.D.N.Y. Mar. 4, 2021)................................... 15

*JCG v. Ercole,*
   No. 11-cv-6844 (CM/JLC), 2014 WL 1630815 (S.D.N.Y. Apr. 24, 2014) ...................... 3, 12

*Kennedy v. City of New York,*
   No. 12-cv-4166 (KPF), 2015 WL 6442237 (S.D.N.Y. Oct. 23, 2015)................................ 3

*M+J Savitt, Inc. v. Savitt*,
    No. 08-cv-8535 (DLC), 2009 WL 691278 (S.D.N.Y. 2009) .................................................... 19

*Medina v. Seiling*,
    No. 14-cv-6034 (VSB), 2018 WL 1603857 (S.D.N.Y. Mar. 29, 2018) ................................. 3, 5

*Michael Grecco Prods., Inc. v. RADesign, Inc.*,
    112 F.4th 144 (2d Cir. 2024) ................................................................................................... 12

*Netzer v. Continuity Graphic Assocs., Inc.*,
    963 F. Supp. 1308 (S.D.N.Y. 1997) ........................................................................................ 19

*Nkansah v. United States*,
    No. 18-cv-10230 (PAC/SLC), 2021 WL 5493214 (S.D.N.Y. Nov. 23, 2021) ......................... 22

*Nusantara Found. Inc. v. U.S. Dep't of State*,
    486 F. Supp. 3d 737 (S.D.N.Y. 2020) ..................................................................................... 18

*Palin v. New York Times Co.*,
    940 F.3d 804 (2d Cir. 2019) ................................................................................................... 14

*Panther Partners Inc. v. Ikanos Commc'ns, Inc.*,
    681 F.3d 114 (2d Cir. 2012) ................................................................................................... 23

*Sesto v. Slaine*,
    171 F. Supp. 3d 194 (S.D.N.Y. 2016) ..................................................................................... 14

*Simon v. Philip Morris Inc.*,
    124 F. Supp. 2d 46 (E.D.N.Y. 2000) ....................................................................................... 21

*Strada v. City of New York*,
    No. 11-cv-5735 (MKB), 2014 WL 3490306 (E.D.N.Y. July 11, 2014) ................................... 11

*Temple v. New York Cmty. Hosp.*,
    933 N.Y.S.2d 321 (2d Dep't 2011) ....................................................................................... 8, 12

*Todaro v. Siegel Fenchel & Peddy, P.C.*,
    No. 04-cv-2939 (JS/WDW), 2009 WL 3150408 (E.D.N.Y. Sept. 25, 2009) .......................... 11

*Valentin v. Dinkins*,
    121 F.3d 72 (2d Cir. 1997) ....................................................................................................... 6

*Ventillo v. Falco*,
    No. 19-cv-3664 (PMH), 2020 WL 7496294 (S.D.N.Y. Dec. 18, 2020) .............................. 2, 15

*Walker v. Hormann Flexon, LLC*,
    59 N.Y.S.3d 614 (3d Dep't 2017) .............................................................................................. 5

*Westcon Grp., Inc. v. CCC Techs., Inc.*,
    No. 19-cv-02303 (PMH), 2022 WL 4134578 (S.D.N.Y. Sept. 12, 2022) .............................. 15

*Whiteside v. Hover-Davis, Inc.*,
    995 F.3d 315 (2d Cir. 2021) ................................................................................................... 12

*Williams v. United States*,
  No. 07-cv-3018 (RJS/THK), 2010 WL 963474 (S.D.N.Y. Feb. 25, 2010) .............................. 12

*Wood v. Mike Bloomberg 2020, Inc.*,
  343 F.R.D. 470 (S.D.N.Y. 2023) ............................................................................... 22

**Rules**

Fed. R. Civ. P. 15 ................................................................................................. 3, 4, 21

N.Y. C.P.L.R. § 1024 ......................................................................................... 4, 9, 11, 12

N.Y. C.P.L.R. § 203 ................................................................................................... 4

**Other Authorities**

Compl.,
  *Rapaport v. Epstein, et al.,* No. 1:24-cv-07439-JGLC
  (S.D.N.Y. Sept. 27, 2024), ECF No. 1 .................................................................. 1, 11

Def.'s Mot. for Rule 11 Sanctions Against Pl. Rapaport & Pl.'s Former
  Counsel Richard A. Altman & the Law Off. of Richard A. Altman,
  *Rapaport v. Finkelman,* No. 1:24-cv-05942-JGLC (S.D.N.Y. Oct. 21, 2024),
  ECF Nos. 20–22 .......................................................................................... 21

*Merriam-Webster Dictionary* ...................................................................... 11

Christopher G. Stevenson,
  *Depecage: Embracing Complexity to Solve Choice-of-Law Issues,*
  37 Ind. L. Rev. 303 (2003) ........................................................................... 21

**INTRODUCTION**

Plaintiff Gideon Rapaport levels unfounded allegations against Defendants Ajay Iyer and Zachary Garrett.  He accuses them of defaming him with forged documents and participating in a "cabal" intent on blocking him from a clerkship and removing him from a leadership position in the student chapter of the Federalist Society at New York University School of Law.  But Rapaport fails to back up those harmful accusations with any supporting allegations.  Rather, after Iyer and Garrett explained in their motion to dismiss the various reasons why Rapaport's claims fail, Rapaport responded by flippantly stating that his claims were "obvious" and should therefore be permitted to proceed.  The Federal Rules of Civil Procedure require far more, and Rapaport's unwillingness to defend his accusations confirms that his claims against Iyer and Garrett must be dismissed.

Additionally, despite already amending his complaint once, Rapaport requests leave to do so again.  The Court should deny that request, as Rapaport's proposed second amended complaint confirms that he does not seek to amend his complaint to bolster the sufficiency of his claims.  Rather, he seeks to add more implausible and malicious statements about Defendants and a host of others, including those he now accuses of RICO and antitrust violations in a newly filed lawsuit.  *See* Compl., *Rapaport v. Epstein, et al.,* No. 1:24-cv-07439-JGLC (S.D.N.Y. Sept. 27, 2024), ECF No. 1.  Of course, that is not a valid basis for granting leave to amend.  But even if the proposed additions were relevant to Rapaport's claims, leave should still be denied because he does not explain why he delayed until now to include allegations he could have included from the outset.

Accordingly, the Court should dismiss Rapaport's claims against Iyer and Garrett and deny leave to amend.

**ARGUMENT**

As Defendants Iyer and Garrett previously demonstrated, the clearest reason to dismiss Rapaport's claims is that each claim is time barred.  *See* Defs.' Mem. in Supp. of Mot. to Dismiss at 3–6 ("MTD") (ECF No. 54).  In his opposition, Rapaport fails to provide any meaningful rebuttal to this fact.  *See generally* Pl.'s Opp'n ("Opp'n") (ECF No. 79).

However, even if Rapaport's claims against Iyer and Garrett were timely, they must still be dismissed for failure to state a claim.  MTD at 6–23.  In response, Rapaport largely ignores this point, repeatedly insisting that his claims should proceed because he finds them "obvious."  *See, e.g.*, Opp'n at 17, 20, 21.  That will not do, and the Court should dismiss Rapaport's claims against Iyer and Garrett for failure to state a claim.  In doing so, the Court should also deny Rapaport's motion for leave to amend as the proposed second amended complaint fails to cure any of these defects.

## I.    Rapaport's Claims Are Time Barred.

As noted, Rapaport's claims are time barred.  MTD at 3–6.  In his opposition, Rapaport fails to show otherwise, and he instead largely concedes the issue.  *See Ventillo v. Falco*, No. 19-cv-3664 (PMH), 2020 WL 7496294, at *12 (S.D.N.Y. Dec. 18, 2020) (when a plaintiff fails to respond to a defendant's argument on a motion to dismiss, the point is conceded).  For one, Rapaport does not contest Defendants' showing that the allegedly unlawful conduct occurred in July and August 2022.  MTD at 4; *see generally* Opp'n.  Rapaport also concedes that each claim is subject to a one-year statute of limitations.  MTD at 3–4; *see generally* Opp'n.  As such, the limitations period indisputably expired in or around July 2023, and the first amended complaint was filed outside that period.  *See* First Am. Compl. ("FAC") (ECF No. 38).  Rapaport also does not respond to Defendants' showing that he was unaware of their identities at the time of the original complaint.  MTD at 4; *see generally* Opp'n.

With those concessions in place, Rapaport concedes that the first amended complaint cannot relate back under Federal Rule of Civil Procedure 15(c)(1)(C). Indeed, under Rule 15(c)(1)(C), relation back is unavailable when "'the newly added defendants were not named originally because the plaintiff did not know their identities.'"[1] MTD at 5 (emphasis omitted) (quoting *Frederique v. Cnty. of Nassau*, No. 11-cv-1746 (WDW), 2014 WL 12841638, at *4 (E.D.N.Y. May 22, 2014)). And, as Defendants further demonstrated, Rapaport also cannot satisfy Rule 15(c)(1)(C) because he failed to look diligently for their identities. MTD at 3–6.

Rather, Rapaport's lone argument is that the first amended complaint relates back under Rule 15(c)(1)(A), which looks to whether the "applicable statute of limitations allows relation back." Opp'n at 13–15. Under this Rule, Rapaport argues that the Court should analyze the timeliness of his claims under New York and New Jersey law. *Id.* at 13–14. But that is a distinction without a difference, as the authority Rapaport identifies poses the same question as Rule 15(c)(1)(C): Did Rapaport undertake sufficient efforts during the limitations period to identify Defendants' names? The answer is clearly "no," and Rapaport's proposed second amended complaint does not change that fact, as it fails to allege that he *ever* asked about the Defendants' identities. Accordingly, the claims are time barred, and the proposed second amended complaint does nothing to save those claims.

---

[1] Rapaport incorrectly argues (at 15) that Rule 15(c)(1)(C) is irrelevant here. But courts routinely analyze the relation-back issue under both parts of Rule 15. *See, e.g.*, *Medina v. Seiling*, No. 14-cv-6034 (VSB), 2018 WL 1603857, at *6 (S.D.N.Y. Mar. 29, 2018); *JCG v. Ercole*, No. 11-cv-6844 (CM/JLC), 2014 WL 1630815, at *13 (S.D.N.Y. Apr. 24, 2014), *report and recommendation adopted*, 2014 WL 2769120 (S.D.N.Y. June 18, 2014); *Kennedy v. City of New York*, No. 12-cv-4166 (KPF), 2015 WL 6442237, at *4 (S.D.N.Y. Oct. 23, 2015).

A.    **Rapaport's claims do not relate back under state law.**

In New York, relation back is permitted when a plaintiff satisfies the requirements of either N.Y. C.P.L.R. §§ 203(c) or 1024.[2]  *See Cooper v. City of New York*, No. 17-cv-1517 (NGG/RLM), 2019 WL 3642996, at *19 (E.D.N.Y. Aug. 5, 2019) ("New York law allows relation back when either N.Y. C.P.L.R. §§ 203 or 1024 are satisfied."), *aff'd*, No. 22-2792-cv, 2024 WL 1107923 (2d Cir. Mar. 14, 2024).  To satisfy either standard, Rapaport must show diligence.  But the record shows only Rapaport's indolence.

As to Section 203, it provides that a "claim asserted in an amended pleading is deemed to have been interposed at the time the claims in the original pleading were interposed, unless the original pleading does not give notice [of the events] to be proved pursuant to the amended pleading."  N.Y. C.P.L.R. § 203(f).  This rule "closely tracks Rule 15(c)(1)(C)," and thus when a "[p]laintiff cannot meet the requirements of Rule 15(c)(1)(C), they also cannot satisfy section 203."  *Cooper*, 2019 WL 3642996, at *19.  As noted above, Rapaport has conceded that he cannot satisfy Rule 15(c)(1)(C).  Indeed, Rapaport admits that he did not know Defendants' identities at the time he filed his original complaint, which is fatal to relation back under Rule 15(c)(1)(C).  *See* FAC ¶ 81 ("This was the original *pro se* John Doe complaint, in which plaintiff was completely ignorant of the identities of the defendants."); *Frederique*, 2014 WL 12841638, at *4.  Rapaport thus cannot rely on Section 203 to show that the first amended complaint relates back.

That leaves only Section 1024, which requires Rapaport to demonstrate diligence.  Under that provision, a plaintiff who sues a John Doe defendant must satisfy three requirements:

> *First,* the plaintiff must diligently seek the unknown defendant's identity prior to the expiration of the statute of limitations. *Second,* the plaintiff must file a timely complaint that fairly apprises the party that she is the intended defendant. *Third,* the plaintiff must identify and serve the previously-unknown defendant within 120

---

[2] As demonstrated in Part II(E) below, New Jersey law is irrelevant here.

days of his filing suit. The 120–day period may be lengthened upon good cause shown or in the interest of justice. If a plaintiff meets these requirements, then the limitations period is tolled between the filing of his complaint and the day he serves the proper defendant.

*Fisher v. Cnty. of Nassau*, No. 10-cv-0677 (JS/ETB), 2011 WL 4899920, at *4 (E.D.N.Y. Oct. 13, 2011) (cleaned up) (citing *Bumpus v. N.Y. City Transit Auth.*, 88 N.Y.S.2d 99, 103–04 (2d Dep't 2009)); *accord Walker v. Hormann Flexon, LLC*, 59 N.Y.S.3d 614, 615 (3d Dep't 2017). Rapaport argues (at 14–15) that he satisfies the first two requirements, but he ignores the third. However, Rapaport cannot satisfy any of them.

*First*, Rapaport suggests (at 14) that the standard for diligence "is low" and that he exercised diligence in seeking Iyer's and Garrett's identities based on a few conversations with Defendant Epstein in which he claims Epstein lied about Iyer's and Garrett's involvement. Once again, Rapaport is wrong on the law and facts.

As to the law, Rapaport errs in claiming that the diligence standard is low, which is likely why he fails to cite any authority saying as much. *See* Opp'n at 14. Instead, Rapaport points to a case where, according to him, the court found due diligence after a plaintiff sent just "a few inquiries" to the government to ascertain the defendant's identity. Opp'n at 14 (citing *Medina v. Seiling*, No. 14-cv-6034 (VSB), 2018 WL 1603857, at *7 (S.D.N.Y. Mar. 29, 2018)). But the *Medina* plaintiff did not send just "a few inquiries." Rather, the plaintiff sent an inquiry about the defendant's identity "at least once a month" for almost *two years*. *Medina*, 2018 WL 1603857, at *7 (emphasis omitted). The plaintiff also submitted a records request to the police department, made "numerous requests" to the criminal court that oversaw his case, and made "numerous requests" to the law library where he was incarcerated. *Id.* Rapaport has not come close to exercising the same level of diligence.

Rapaport next relies on a case where, according to him, the court found diligence based on "a single contacting" of a person with knowledge of the John Doe's identity. Opp'n at 14 (citing *Ceara v. Deacon*, 68 F. Supp. 3d 402 (S.D.N.Y. 2014)). Once again, Rapaport mischaracterizes the authority. In *Ceara*, while the plaintiff made an inquiry to the Inspector General for the identity of the defendant, he had also previously filed a grievance about the matter to the state police who had the Inspector General investigate the matter. *Ceara*, 68 F. Supp. 3d at 404. Moreover, the *Ceara* plaintiff filed his complaint sufficiently before the limitations period ran so that the court could issue a *Valentin* order during the limitations period directing the New York State Attorney General to disclosure of the defendant's identity within 60 days.[3] *Id.* Neither *Medina* nor *Ceara* suggests that diligence is a "low" standard, and each underscores Rapaport's lack of diligence, which requires dismissal. *See Bumpus*, 883 N.Y.S.2d at 104 ("Any failure to exercise due diligence to ascertain the Jane Doe's' name subjects the complaint to dismissal as to that party.")

Unlike the numerous attempts of the plaintiff-prisoners to identify the defendants in *Medina* and *Ceara*, Rapaport, a graduate from a top law school, points to a scattering of conversations with Defendant Epstein as evidence of his diligence. For the first conversation, which allegedly occurred on August 9, 2022, and shortly after the events complained of in the amended complaint, Rapaport characterizes it as an "uninterrupted and prepared monologue" wherein Epstein told Rapaport that his "career was destroyed." FAC ¶¶ 70–71. Although Rapaport insists that Epstein "attempted to cover up" the identities of Iyer and Garrett, *id.* ¶ 75, there is no indication in the complaint or elsewhere that Rapaport even asked about their names. In fact,

---

[3] When Rapaport attempts to compare himself to the *pro se* plaintiff in *Ceara*, he also ignores that the plaintiff there was incarcerated, and he thus had substantially fewer tools at his disposal to identify the defendant. *See Valentin v. Dinkins*, 121 F.3d 72, 75 (2d Cir. 1997) (noting that for an incarcerated plaintiff, "it is hard to see what investigative tools would be at his disposal to obtain further information" about a defendant's identity).

Rapaport's claim that this was an "uninterrupted and prepared monologue," *id.* ¶ 70, undermines any inference that he sought the Defendants' identities, as he apparently had no opportunity in this conversation to ask any questions.

That same day, Rapaport allegedly communicated with Epstein by email, where Epstein allegedly stated that "he had sent the compiled materials to Otis, and warned plaintiff not to pursue the matter further[.]" *Id.* ¶ 84. Once again, this allegation makes no reference to any steps Rapaport took to learn Defendants' identities.

Rapaport then did nothing for nearly one year, when he allegedly had lunch with Epstein on July 28, 2023—the day before the limitations period expired. *Id.* ¶ 80. Here again, however, Rapaport does not allege that he asked Epstein any questions about Defendants' identities. He simply asked whether Epstein had "any corrections or additions" to his draft complaint. *Id.* And, although Rapaport accuses Epstein (again) of covering up Defendants' identities, the complaint alleges that Epstein simply "stated that he did not want to be involved in any way." *Id.* ¶ 83. The complaint does not allege that Rapaport asked Epstein during this conversation about Defendants' identities.

These are the only conversations Rapaport identifies as allegedly aimed at learning Defendants' identities prior to the running of the limitations period. But none of them demonstrates any diligence, as Rapaport fails to allege that he *ever* asked about Defendants' identities. Moreover, Rapaport then waited *months* before seeking any discovery from either Epstein or the Federalist Society, and he then waited several *more* months—nearly a year after the limitations period expired—to file the first amended complaint. *See* MTD at 5–6.

Rapaport's lack of diligence is confirmed by the fact that courts have consistently found even greater efforts to be insufficient to demonstrate diligence. For example, a New York appellate

court held that a complaint should have been dismissed as untimely where a plaintiff sought discovery before the statute of limitations ran, yet "failed to promptly seek further discovery" after receiving "less than adequate" responses. *Temple v. New York Cmty. Hosp.*, 933 N.Y.S.2d 321, 323 (2d Dep't 2011). And another court in this district held that even when the plaintiff claimed that the defense counsel was "stonewalling" her "efforts to identify 'John Doe,' she could have timely pursued alternative avenues for obtaining discovery." *Barrett v. City of Newburgh*, No. 13-cv-4118 (NSR), 2017 WL 1102672, at *6 (S.D.N.Y. Mar. 23, 2017), *aff'd*, 720 F. App'x 29 (2d Cir. 2017). The *Barrett* court further noted that the plaintiff "continued to serve all discovery requests on the same—allegedly uncooperative—counsel," which demonstrated a lack of diligence. *Id.* In this light, Rapaport's scant conversations (a year apart) with Epstein are a far cry from the diligent efforts required by New York law.

Further, nothing in Rapaport's proposed second amended complaint alters this analysis. Aside from the information described above, Rapaport simply states that he sought information from Epstein "three separate times at the law school during September 2022." Second Am. Compl. ("SAC") SAC ¶ 189 (ECF No. 78). Even then, Rapaport still does not allege that he *ever* asked Epstein about which students were involved in the alleged events. Rather, Rapaport claims that he wrote Epstein about biblical metaphors and tried to "persuade defendant Epstein to do the right thing" by citing lyrics from an ABBA song. SAC ¶¶ 192–93. That clearly does not show a diligent effort to learn Defendants' identities. Also, while Rapaport contends that Epstein deceived him in those conversations, Rapaport also alleges that Epstein only stated that this situation was Rapaport's fault. *Id.* ¶ 189. It is unclear how that alleged statement is deceptive or a roadblock to Rapaport's ascertaining the Defendants' identities through alternative means.

8

Rapaport also now alleges that he attempted "to delicately obtain any information from Peter Redpath or Kate Alcantara, or other individuals," which Rapaport claims was "unsuccessful."  SAC ¶ 199.  Once again, Rapaport fails to identify a single detail of those conversations, and his "delicately obtain" language suggests that he made no explicit effort to ascertain the Defendants' identities.

Thus, Rapaport cannot meet the first requirement of Section 1024, as he failed at each turn to exercise diligence.  For that reason alone, Rapaport's claims should be dismissed with prejudice, as he has now filed three complaints, each of which makes clear that he did not diligently seek Defendants' identities.  *See Bumpus*, 883 N.Y.S.2d at 104 ("Any failure to exercise due diligence to ascertain the 'Jane Doe's' name subjects the complaint to dismissal as to that party.").

*Second*, Rapaport also cannot satisfy the second requirement of Section 1024—that he "file a timely complaint that fairly apprises the party that she is the intended defendant."  *Fisher*, 2011 WL 4899920, at *4 (cleaned up).  All Rapaport says for this element is that Iyer and Garrett should have been on notice based on Exhibit 3 to the first amended complaint, and that "[i]f the Federalist Society could identify defendants Iyer and Garrett based on the Original Complaint, surely they could have done [sic] appraised themselves of the accusations against them."  Opp'n at 8–9, 15.  These arguments also fail.

Most obviously, they fail because Exhibit 3 was not attached to the original complaint.  And, in any event, that exhibit is an email from Garrett to Peter Redpath and Kate Alcantra, none of whom is mentioned in the original complaint.  The only person mentioned in the original complaint from the Federalist Society is Lee Otis, and Rapaport admits that, as early as August

2022, he knew Epstein was the one who spoke to Lee Otis. FAC ¶ 84. This would thus provide no notice to Iyer or Garrett.[4]

Relatedly, Rapaport's suggestion that the Federalist Society could identify Iyer and Garrett is irrelevant and misplaced. Rather, the Federalist Society produced documents a year and several months after the events and following a subpoena. The Federalist Society's responding to a specific discovery request says nothing about whether Rapaport's original complaint "fairly apprised" Iyer or Garrett that they were the intended defendants, especially considering that Iyer and Garrett deny all allegations of fraud, forgery, or other wrongdoing in Rapaport's complaint.

Moreover, the original complaint discussed numerous issues involving the targeted defendants, including Title IX complaints and people "experiment[ing] with a few different fictional victim characters" to promote a sexual harassment claim. Compl. ¶¶ 23, 30 (ECF No. 1). The amended complaint, naming Iyer and Garrett, discusses none of this, as these are actions unrelated to them. So, it is unclear how Iyer and Garrett were supposed to be on notice that they were the intended defendants.

Muddying the waters further, Rapaport's proposed second amended complaint, as well as his new lawsuit accusing a large group of people of RICO and antitrust violations, undermines any notion that Iyer and Garrett should have been on notice. According to Rapaport, he was actually harmed by a large group of NYU students—a "cabal"—that collectively sought to deprive him of an elite clerkship. SAC ¶¶ 29, 201. Rapaport also now alleges that other female students, not

---

[4] Consider, in contrast, the notice given through the John Doe complaint in *Ceara*, 68 F. Supp. 3d at 411–12. In that case, the complaint stated that the defendant had been working in a specific location in a specific correctional facility on the date of the underlying incident. The complaint further included the name of the defendant's brother, and it described the underlying incident in detail. With this information, the court concluded that it sufficiently put the defendant on notice of the allegations. *Id.* at 411–12 (concluding that the original complaint "describe[d] with particularity the date, time, and location of the alleged … incident").

Defendants, accused him of sexual harassment.[5]  SAC ¶ 171 ("She told the doorman, while in view of high definition security cameras that face outward from the entrance, that the plaintiff had been 'creeping' on her earlier that night.").  Considering the growing list of people Rapaport claims "engage[d] in illegal and even criminal activity to obtain power, gang up on each other, especially through student organizations, file false reports and complaints and engage in forgery and fraud on a brazen and massive scale," it is unclear how Iyer and Garrett would have been on notice that the original complaint concerned them.  *See* Compl. ¶ 22, *Rapaport v. Epstein, et al.,* No. 1:24-cv-07439-JGLC (S.D.N.Y. Sept. 27, 2024), ECF No. 1.  Rapaport thus fails the second requirement of Section 1024.

*Third*, Rapaport plainly cannot satisfy Section 1024's final requirement, which is likely why he ignores it.  This element requires a plaintiff to identify and serve the previously unknown defendant within 120 days of filing suit.  *See Fisher*, 2011 WL 4899920, at *4.  Rapaport did not identify and serve Iyer or Garrett until he filed his first amended complaint in May 2024—nine months (roughly 270 days) after filing his original complaint.  Rapaport does not even attempt to justify his delay.  When a plaintiff fails to meet this requirement and does "not seek a good cause or interest of justice extension," courts dismiss the complaint as untimely.  *See id.* at *4; *see also Strada v. City of New York*, No. 11-cv-5735 (MKB), 2014 WL 3490306, at *5 (E.D.N.Y. July 11, 2014) (collecting cases).

---

[5] As Rapaport's proposed second amended complaint confirms, it is not entirely unreasonable that someone would find Rapaport's statements to be inappropriate.  After all, he informed Defendant Epstein that he was traveling to Finland because of the "AAA-grade shiksas over there although the cuisine is not very good, and they are at a premium compared to the Slavic variety."  SAC, Ex. 4; *see also Shiksa, Merriam-Webster Dictionary*, https://www.merriam-webster.com/dictionary/shiksa (last visited Oct. 30, 2024) (a disparaging term for "a non-Jewish girl or woman"); *see also Todaro v. Siegel Fenchel & Peddy, P.C.*, No. 04-cv-2939 (JS/WDW), 2009 WL 3150408 (E.D.N.Y. Sept. 25, 2009) (noting that "'Shiksa' is used often as a disparaging term referring to a non-Jewish girl or woman").

Because Rapaport fails to satisfy any of Section 1024's requirements, his claims against Iyer and Garrett do not relate back and they are therefore untimely.

**B.**     **The court should resolve the issue of timeliness now.**

In a last-ditch effort to avoid the statute of limitations, Rapaport claims (at 11) that it is premature to address this issue now, as timeliness is an affirmative defense that must await discovery. For this point, Rapport relies on *Michael Grecco Prods., Inc. v. RADesign, Inc.*, 112 F.4th 144 (2d Cir. 2024), which considered when a copyright infringement claim accrues, *id.* at 154. Rapaport makes no effort to explain why that has any bearing here. Moreover, Rapaport ignores that the Second Circuit has explicitly stated that "a defendant may raise an affirmative defense in a pre-answer Rule 12(b)(6) motion if the defense appears on the face of the complaint." *Clark v. Hanley*, 89 F.4th 78, 94 (2d Cir. 2023) (quoting *Whiteside v. Hover-Davis, Inc.,* 995 F.3d 315, 319 (2d Cir. 2021)). Under that guidance and applying the federal and New York relation-back rules discussed above, courts consistently dismiss complaints as untimely. *See, e.g.*, *Temple*, 933 N.Y.S.2d at 322–23 ("Any failure to exercise due diligence to ascertain the '[John] Does' name subjects the complaint to dismissal as to that party."); *JCG v. Ercole*, No. 11-cv-6844 (CM/JLC), 2014 WL 1630815, at *15 (S.D.N.Y. Apr. 24, 2014) ("For these reasons, Defendants' motion to dismiss on statute of limitations grounds should be granted."), *report and recommendation adopted*, 2014 WL 2769120 (S.D.N.Y. June 18, 2014); *Williams v. United States*, No. 07-cv-3018 (RJS/THK), 2010 WL 963474, at *12 (S.D.N.Y. Feb. 25, 2010) ("The failure to act diligently to ascertain the unidentified defendant's name 'subjects the complaint to dismissal as to that party.'"), *report and recommendation adopted,* 2010 WL 963465 (S.D.N.Y. Mar. 16, 2010). As shown above and in Defendants' motion to dismiss, the untimeliness of Rapaport's claims is clearly evident from the face of the complaint, and dismissal is appropriate.

For these reasons, Rapaport fails to demonstrate that any of his claims are timely, and nothing about his proposed second amended complaint changes that fact. Additionally, Rapaport fails to identify any reason that this issue needs to await discovery. Rather, the Court should dismiss all claims against Defendants Iyer and Garrett now as untimely.

## II.    The First Amended Complaint Fails to State a Claim.

Even if Rapaport's claims were timely, they must still be dismissed for failure to state a claim. *See* MTD at 6–17. Rapaport largely ignores this fact, focusing instead on the statute of limitations and his belief that other NYU students were out to get him (relying on many allegations that do not appear in his complaint). When Rapaport finally gets around to addressing the sufficiency of his pleading, he merely retorts that his claims are so "obvious" they should be permitted to proceed. *See* Opp'n at 1, 17, 20, 21. Unsurprisingly, Rapaport fails to identify a single case where a plaintiff's characterization of his own claims as "obvious" satisfies the applicable pleading standards. And for good reason—if a plaintiff's beliefs about his own claims were enough, that would render meaningless the pleading standards the Supreme Court announced in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Rather, at each turn, Rapaport's claims fail.

### A.    Rapaport's defamation claim fails.

As to Rapaport's defamation claim, Defendants identified a host of reasons why that claim must be dismissed—the complaint's exhibits undermine the allegation that various online posts were defamatory, as *none* of the posts identified Rapaport or included his photograph; Rapaport relies on time-barred allegations; the common interest privilege protects Defendants' discussions; and Rapaport cannot demonstrate malice or even negligence on the part of either Iyer or Garrett. MTD at 14–21. In response, Rapaport fails to address most of these points, relying instead on a series of misguided arguments. Rapaport first states (at 18) that defamation claims are not

13

disfavored, and he argues that they are not to be disposed of at the pleadings stage.  He then argues (at 17) that his defamation claims are "obvious," pointing generically to his "entire First Amended Complaint."  Finally, he contends (at 15–16) that Defendants' assertion of the common interest privilege is premature and irrelevant because his complaint sufficiently alleges actual malice.  Rapaport is incorrect on each point.

1.  To begin, Defendants did not suggest that *defamation* claims are disfavored.  Rather, they stated that intentional infliction of emotional distress claims are disfavored.  *See* MTD at 7 (citing *Sesto v. Slaine*, 171 F. Supp. 3d 194, 201–02 (S.D.N.Y. 2016)).  Rapaport's response about whether defamation claims are favored or disfavored is therefore irrelevant.

Nor is it premature to dispose of the defamation claim.  Indeed, "New York courts encourage the resolution of defamation claims at the pleading stage, so as not to protract litigation through discovery and trial and thereby chill the exercise of constitutionally protected freedoms." *Id.* at 14 (quoting *Ganske v. Mensch*, 480 F. Supp. 3d 542, 551 (S.D.N.Y. 2020)).  Rapaport's only response is an unexplained statement (at 18) that *Ganske* "fl[ies] in the face of" *Palin v. New York Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019).  But Rapaport misreads *Palin*, where the Second Circuit held that "the district court erred in relying on facts outside the pleadings to dismiss the complaint."  *Id.* at 807.  That has no bearing here.  Moreover, *Palin* is entirely consistent with *Ganske*: If a defamation claim fails the plausibility test based on the complaint's allegations, it should be dismissed—especially because constitutionally protected freedoms are at stake in defamation claims.  The Court should do so here.

2.  Additionally, when Rapaport responds to the motion to dismiss with a generic reference to the entire first amended complaint, he fails to rebut the various reasons his defamation claim fails.  Indeed, parties "cannot simply dump papers on the court and expect the court to sift through

them to determine if some nugget is buried somewhere in that mountain. Judges are not like pigs, hunting for truffles buried in briefs or the record." *Westcon Grp., Inc. v. CCC Techs., Inc.*, No. 19-cv-02303 (PMH), 2022 WL 4134578, at *3 (S.D.N.Y. Sept. 12, 2022) (cleaned up), *recons. denied*, 2023 WL 2058709 (S.D.N.Y. Feb. 16, 2023). Rapaport has thus failed to address the fact that he cannot connect Iyer to any of the multiple users engaged in the cited conversations on Reddit and Toplawschools.com. Nor does he explain why the Court should assume any photos were posted on these internet threads, when no such photos are included in Rapaport's exhibits. Instead, Rapaport baldly asserts (at 9) that "Defendants Iyer and Garrett ridiculously pretend that no other threads could have existed on the internet." In other words, after filing three complaints, Rapaport still cannot identify any internet post identifying him, but he thinks there must be one out there somewhere that supports his claim. But, of course, he cannot rely on that kind of speculation to cross the plausibility line. *See In re Merrill*, No. 19-cv-6002 (LJL), 2021 WL 827190, at *13 (S.D.N.Y. Mar. 4, 2021) (holding that "sustain[ing] a claim based on rank speculation [is] prohibited by the Supreme Court's decisions in *Twombly* and *Iqbal*"), *aff'd sub nom. Gamma Traders-I LLC v. Merrill Lynch Commodities, Inc.,* 41 F.4th 71 (2d Cir. 2022).

Rapaport also fails to respond to Defendants' showing that several of the defamatory statements are untimely. MTD at 17–18. Rapaport therefore concedes this argument. *See Ventillo*, 2020 WL 7496294, at *12.

3. Finally, Rapaport is mistaken when he argues (at 16) that the first amended complaint shows "actual malice" and that the common interest privilege is therefore irrelevant. For this, Rapaport once again generically points to his entire complaint, and he claims (at 16) that Iyer and Garrett must have communicated with "deciders" within the Federalist Society and therefore acted with actual malice. But Rapaport offers nothing to connect these dots, and a plaintiff "cannot plead

malice simply by conclusorily labeling the statements so." *Grayson v. Ressler & Ressler*, 271 F. Supp. 3d 501, 515 (S.D.N.Y. 2017).

Moreover, the allegations Rapaport adds in the proposed second amended complaint undermine any inference of actual malice. In that pleading, Rapaport now claims that several other students were the ones allegedly behind the defamatory statements and the scheme to ruin his career, with Iyer and Garrett merely "subordinates" of those ring leaders. SAC ¶¶ 157, 178. While it is hard to keep track of the evolving allegations and the growing number of people Rapaport now believes were targeting him, one constant is that Rapaport has not, through three complaints, sufficiently pleaded actual malice on the part of either Iyer or Garrett.[6]

For each of these reasons, Rapaport fails to state a claim for defamation, and his proposed second amended complaint does not cure those deficiencies.

> ### B. Rapaport fails to identify special damages and thus cannot maintain a claim for injurious falsehood.

Defendants also showed (at 12–14) that Rapaport's injurious falsehood claim must be dismissed. For one, courts routinely dismiss such claims when they are duplicative of a defamation claim. *See* MTD at 12–13 (citing cases). Additionally, Rapaport fails to identify the "amount" of "actual losses" caused by the "alleged tortious act." *Id.* at 13. In response, Rapaport states (at 18), without any support, that this tort is "on an evolutionary branch very far from defamation." And he again points generally to his entire complaint to claim that his damages stem from the inability to find a job or seek admission to the bar. Opp'n at 19. None of these statements responds to the motion to dismiss.

---

[6] In fact, as Iyer and Garrett pointed out in their motion to dismiss, Rapaport has not even sufficiently pleaded negligence. *See* MTD at 20–21.

As to the overlap with defamation, Rapaport fails to explain why the authority Defendants identified (at 12–13) is incorrect or inapplicable. Rapaport merely repackaged his defamation claim as an injurious falsehood claim, and that is reason alone to dismiss this claim.

Moreover, even though Rapaport purports to identify monetary damages in his proposed second amended complaint, those new allegations still come up short. For instance, Rapaport claims that the Bradley Fellowship was worth "at least $5,000," and "he had already applied for" it. SAC ¶ 79. But Rapaport does not allege that he *received* the fellowship. Instead, he alleges that someone (unclear who) "informed" him that he would receive the fellowship. *Id.* Even with all appropriate deference to a complaint's allegations, that vague allegation does not satisfy Rapaport's burden to plead special damages. From there, Rapaport adds speculation atop speculation, suggesting that the fellowship he applied for would have eventually led to an undefined summer position where he was perhaps to receive a stipend "between $10,000 and $15,000." SAC ¶ 80. Again, that is rank speculation.

Beyond those vague allegations, the proposed second amended complaint does not identify any specific amounts of damages. When a plaintiff claims special damages based on loss of employment and does not provide a specific amount of compensation lost, a court should dismiss a claim for injurious falsehood. *Daniels v. St. Luke's-Roosevelt Hosp. Ctr.*, No. 02-cv-9567 (KNF), 2003 WL 22410623, at *8 (S.D.N.Y. Oct. 21, 2003); *cf. Drug Rsch. Corp. v. Curtis Publ'g Co.*, 7 N.Y.2d 435, 441 (N.Y. 1960) (noting that when special damages must be pleaded, relying on "round figures, with no attempt at itemization, must be deemed to be a representation of general damages.").

### C.    There is no plausible civil conspiracy.

Rapaport also fails to identify any reason to keep his conspiracy claim alive. As Defendants demonstrated, this claim must be dismissed for several reasons: Rapaport fails to plausibly allege

any agreement between Defendants, *see* MTD at 10; he fails to identify any acts Defendants took in furtherance of an agreement, *see id.* at 11; and he fails to identify any non-speculative damages, *see id.* at 12.  Once again, Rapaport largely fails to address these shortcomings.  Instead, Rapaport again claims that the exhibits to the first amended complaint make the conspiracy claim "obvious." Opp'n at 20.  Beyond that, Rapaport contends that "[t]he only alternative to the explanation of conspiracy at this stage" is that Iyer "tricked defendant Garrett into doing his dirty work."  *Id.*  Of course, another alternative is that Garrett passed along information he saw, and neither he nor Iyer had anything to do with the creation of the photos or internet threads.  And other possible explanations abound, with Rapaport's inability to settle on a single theory confirming the implausibility of his allegations.  Indeed, plausibility demands more than mere possibility, and the existence of reasonable alternatives undermines the plausibility of a plaintiff's allegations.  *See Nusantara Found. Inc. v. U.S. Dep't of State*, 486 F. Supp. 3d 737, 742 (S.D.N.Y. 2020).  Thus, Rapaport fails to rebut the various reasons Defendants identified as requiring dismissal of Rapaport's conspiracy claim.

Further, the number of additional people Rapaport now claims worked together to tarnish his career also undermines the claim that Epstein conspired with Iyer and Garrett.  *See* SAC ¶¶ 118–19 (describing a trio of other students who allegedly sought "damage to be inflicted upon the Plaintiff"), 128 (stating that another student wanted to "humiliate the Plaintiff"), 164 (alleging that yet another student spread defamations about Rapaport), 171 (noting that someone else complained that Rapaport was "creeping" on her).  In fact, Rapaport seems now to allege that the members of the "conspiracy" were not even aware of each other or the substance of the alleged agreement.  *Id.* ¶ 20 ("Upon information and belief, he was and may still be unaware of the involvement of defendant Pallaki in the conspiracy, as he may have only interacted with defendants

Iyer and Garrett in relation to it."). Of course, conspirators cannot enter into an agreement if they don't know about each other. Rapaport's conflicting allegations render his conspiracy claim implausible, and because the second amended complaint does not alter this analysis, the Court should dismiss this claim and deny leave to amend.

### D.    Rapaport's subjective feelings cannot sustain a claim for intentional infliction of emotional distress.

As to the claim of intentional infliction of emotional distress ("IIED"), Defendants demonstrated that Rapaport has not come close to identifying sufficiently extreme and outrageous conduct. *See* MTD at 6–8. Defendants also showed that courts dismiss IIED claims where, as here, they are duplicative of defamation claims, *see id.* at 7, and Rapaport has not plausibly alleged that Iyer and Garrett possessed the requisite intent, *see id.* at 9.

In response, Rapaport argues (at 21–22) that he suffered "severe" harm and that he "would have preferred to have" other things happen to him, such as being falsely accused of arson or of having an affair with a bookkeeper.[7] But the standard for IIED's extreme and outrageous conduct "is an objective one." *Netzer v. Continuity Graphic Assocs., Inc.*, 963 F. Supp. 1308, 1327 (S.D.N.Y. 1997). And it "is so rigorous and difficult to satisfy that of the intentional infliction of emotional distress claims considered by this Court, every one has failed." *Id.* (cleaned up). Rapaport's allegations are no exception, and his subjective feelings are irrelevant. Rather, as Defendants showed, Rapaport has not come close to identifying conduct that satisfies this standard.

---

[7] Oddly, Rapaport also tries to diminish the statements addressed in *M+J Savitt, Inc. v. Savitt*, No. 08-cv-8535 (DLC), 2009 WL 691278 (S.D.N.Y. 2009), by suggesting that it was less problematic to be accused of "f*****g the bookkeeper," *id.* at *14, because the bookkeeper "was apparently an outside contractor, or service provider rather than a coworker or employee," Opp'n at 21–22. To Rapaport, that apparently makes the accusation less harmful. Putting aside the absurdity of the suggestion that the bookkeeper's employment status matters, it remains the case that Rapaport has not come close to alleging any actions that rise anywhere close to those in *M+J*, and even the statements in that case were insufficient to support an IIED claim.

E.    **The fact that Rapaport resides in New Jersey is not enough to save the claim for false light and invasion of privacy.**

Finally, Rapaport tries to save his New Jersey claim for false light by relying on *Catalanello v. Kramer*, 18 F. Supp. 3d 504 (S.D.N.Y. 2014), and invoking the doctrine of depeçage. Opp'n at 23–24. But neither *Catalanello* nor depeçage helps Rapaport. In *Catalanello*, the court noted that the choice-of-law analysis was a "close call" given that there were connections in the case to Missouri, Massachusetts, New York, and New Jersey. 18 F. Supp. 3d at 512–13. Thus, the court defaulted to the plaintiff's home state. *Id.* Further, the court noted that this analysis would apply to the plaintiff's defamation claim as well.

But here, Rapaport is trying to have it both ways—applying New York law to his defamation claim (and all other claims) but New Jersey law only to his false light claim. *Catalanello* does not support that argument, as this case does not involve multiple states. Everything, except Rapaport's home address, is connected to New York. Although Rapaport claims (at 24) that New Jersey is his "local community," his complaints undermine that claim. His alleged damages arise from not being able to join the New York bar, all of the parties have connections to New York, and Rapaport's second amended complaint goes to great lengths to discuss Rapaport's social life in New York. *See* SAC ¶ 167 (describing Rapaport's enjoyment of "the social scene of Manhattan"). Indeed, the second amended complaint mentions New York nearly 30 times, while it only mentions New Jersey twice—once referring to Rapaport's home address and then generically reciting the elements of this claim. SAC ¶¶ 234, 236. *Catalanello* is thus irrelevant, and the connection here to New York is unmistakable.

This case's undeniable connection to New York also makes the doctrine of depeçage irrelevant. "In a legal setting, depeçage is a court's application of different state laws to different issues in a legal dispute; choice of law on an issue-by-issue basis." Christopher G. Stevenson,

*Depecage: Embracing Complexity to Solve Choice-of-Law Issues*, 37 Ind. L. Rev. 303, 304–05 (2003) (cleaned up).  The doctrine is appropriate where "in a single action different states may have different degrees of interests with respect to different operative facts and elements of a claim or defense."  *Simon v. Philip Morris Inc.*, 124 F. Supp. 2d 46, 75 (E.D.N.Y. 2000).  A classic example of the proper use of the doctrine was the Eastern District of New York's treatment of the numerous issues of damages and liability in a nationwide class action against the major tobacco companies.  *Id.* at 75–76.

In stark contrast to that example, this case does not involve a nationwide class action where numerous states have an interest in protecting their citizens.  As noted above, everything about this case stems from Rapaport's time at NYU School of Law and his desire to be a licensed lawyer in New York.  New Jersey law, under depeçage or otherwise, does not apply.

### III.    The Court Should Deny Leave to Amend the Complaint Again.

In a final attempt to keep this case alive, Rapaport asks the Court to allow him to amend his complaint yet again.  However, as Defendants demonstrated above, the proposed second amended complaint does not save a single one of Rapaport's claims, and he fails to provide any reason to delay the inevitable dismissal of his claims.  Rather, as shown through his proposed second amended complaint, Rapaport is intent on continuing to file pleadings and motions that are littered with disparaging remarks, and which are becoming increasingly frivolous.[8]

Although under Rule 15(a), a court "should freely give leave to amend when justice so requires," there are numerous reasons a court may deny leave to amend.  *Wood v. Mike Bloomberg*

---

[8] Indeed, Rapaport's filings have already resulted in a sanctions motion in another case pending before this Court. *See* Def.'s Mot. for Rule 11 Sanctions Against Pl. Rapaport & Pl.'s Former Counsel Richard A. Altman & the Law Off. of Richard A. Altman, *Rapaport v. Finkelman,* No. 1:24-cv-05942-JGLC (S.D.N.Y. Oct. 21, 2024) (ECF Nos. 20–22). Rapaport's continued reliance on frivolous and malicious filings in this case may well require a similar motion here.

*2020, Inc.*, 343 F.R.D. 470, 473 (S.D.N.Y. 2023) (cleaned up). The analysis typically involves four factors: (1) undue delay, (2) bad faith, (3) futility of amendment, or (4) undue prejudice. *Id.* All four factors favor Defendants, and Rapaport's brief motion for leave (ECF No. 77) fails to show otherwise.

*First*, Rapaport's untimely claims show undue delay. Rapaport waited nearly nine months to file the first amended complaint, which as explained above, was too late for statute of limitations purposes. Now, five months later, he proposes another complaint that contains different allegations concerning many other students at NYU—all of which were available to him at the time of his original complaint. *See* SAC ¶¶ 118–19, 128, 164, 171. Rapaport provides no reason for waiting to include these new allegations. The only explanation is a lack of diligence.

*Second*, and relatedly, these new allegations demonstrate bad faith. Across 30 new pages of factual allegations, Defendants Iyer and Garrett are barely mentioned. *See generally* SAC at 22–41. Instead, Rapaport uses these extra pages to malign anyone who offended him during law school. Of course, merely being offended by someone during law school does not create a cause of action. And, because these allegations are not connected to his legal claims, they are plainly asserted in bad faith.

*Third*, the added allegations fail for futility. As detailed above, the new allegations do not save any of Rapaport's claims. Most importantly, Rapaport's new complaint clearly shows that all of his claims are time barred. One reason "for denying leave to amend is where the amendment would be futile, and one way an amendment can be futile is by being outside the applicable statute of limitations. *Nkansah v. United States*, No. 18-cv-10230 (PAC/SLC), 2021 WL 5493214, at *2 (S.D.N.Y. Nov. 23, 2021). For the remainder of the claims, Rapaport still fails to state a plausible claim for relief. In fact, some of the added allegations make his previous claims even weaker, such

as the new allegation that the members of the "conspiracy" were unaware of who was involved and about the subject of the purported agreement. *See, e.g.*, SAC ¶ 20. Where, as here, the "proposed amendments would fail to cure prior deficiencies or to state a claim," the motion to amend should be denied as futile. *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012).

*Fourth*, Rapaport's new complaint would prejudice Defendants. Since the outset of this case, Defendants have been litigating a moving target. Rapaport's original complaint included many irrelevant factual allegations and did not name any defendants. His first amended complaint, filed by counsel, was much shorter and targeted. Now, again as a *pro se* litigant, Rapaport proposes to add nearly 30 pages of new allegations, nearly all of which are irrelevant and unrelated to the claims. Allowing Rapaport to continue to change the parties and factual allegations in this case is unfair to Defendants who must continue to expend time and resources pointing out why his claims still fail.

Accordingly, the Court should deny Rapaport's motion for leave.

## CONCLUSION

There are a host of reasons to dismiss Rapaport's claims. As shown above, the claims against Iyer and Garrett are untimely as they do not relate back to the original complaint, and Rapaport fails to show otherwise. Aside from timeliness, Rapaport's claims also fail because they are entirely implausible. Here again, Rapaport offers the Court no answer other than his own *ipse dixit*. Moreover, Rapaport has underscored the implausibility of his claims by proposing a second amended complaint that relies on even less plausible theories of a "cabal" of NYU students out to get him.

For these reasons, the Court should dismiss Rapaport's claims against Iyer and Garrett. Additionally, the Court should deny Rapaport's request to amend his complaint, as Rapaport has

confirmed that he intends to use such filings to levy serious and unsupported accusations against various people.  Because Rapaport has now confirmed that he cannot support such spurious accusations, the Court should deny Rapaport's request for leave.

October 31, 2024                                     Respectfully submitted,

                                                    _/s/ Brian J. Field_____
                                                    Brian J. Field*
                                                       (D.C. Bar No. 985577)
                                                    SCHAERR | JAFFE LLP
                                                    1717 K Street NW, Suite 900
                                                    Washington, DC 20006
                                                    Telephone: (202) 787-1060
                                                    Facsimile: (202) 776-0136
                                                    Email: bfield@schaerr-jaffe.com

                                                    *Admitted _pro hac vice_

                                                    _Counsel for Defendants_
                                                    _Ajay Srinivasan Iyer and_
                                                    _Zachary George Garrett_