**Reply to Consolidated Reply-Opposition of Defendants Iyer and Garrett**

# Table of Contents

PRELIMINARY STATEMENT....................................................................................................1

ARGUMENT…………………………………………………………………………………….6

    The Standard for Diligent Efforts in CPLR § 1024 Relating-Back........................................6

    The Plaintiff Manifestly Exercised Diligent Efforts Far in Excess of the Standard Required..............8

    The Statute of Limitations is Prematurely Asserted to Avoid Even Minimal Discovery.....................11

CONCLUSION..............................................................................................................................13

**PRELIMINARY STATEMENT**

    Defendants Iyer and Garrett clearly wish to discuss every topic under the sun other than the fact that they were identified, in response to a third-party subpoena served upon the Federalist Society, as the forgers and fabricators of the vicious and career-ending defamations against the plaintiff that are the subject of this action. As they ignored and selectively addressed the pleadings against them previously, they continue to do so now. The allegations of defamation they refer to as "unfounded" in their introduction, are proven by exhibits already in the record, that they have ignored for months and in many filings, and their assertion to the contrary at the head of their reply-opposition demonstrates deny them credibility. They describe the plaintiff as "flippant" for arguing that the exhibits in the record, which they themselves still ignore, and that demonstrate that it is indeed obvious that they are liable for defamation as both the fabricators and disseminators of defamations against the plaintiff. True to their prior tortious actions, defendants Iyer and Garrett continue to disparage and personally attack the plaintiff, offering non-sequiturs to the Court that border on frivolous chicanery. They begin by asserting that "Rapaport fails to back up those harmful accusations", even as Exhibit 2 and 3 were obtained pursuant to a subpoena from the Federalist Society, and proves the origin of the second version of the forged image to be defendant Iyer, and the transmitter to the Federalist Society to be defendant Garrett. The two even reference an action brought against a republisher of their vile defamations[1], only to further demonstrate the grave injuries they have caused as the fabricators and forgers of the defamations, rather than mitigate their own culpability.

    As far as non-sequiturs, in *Iyer and Garrett Reply-Opposition* at 10 they incredibly claim that the filing of a different lawsuit on September 27, 2024, which includes defendants Iyer and Garrett

---

1    The republication in X, formerly known as Twitter, and other internet sites was carried out by Abigail Finkelman, who is the defendant in *Rapaport v. Finkelman* 24-cv-05942 (SDNY)

among others in part due to the federal criminal ramifications of their malicious tortious actions[2] which are the cause of action of this case, somehow prevented them from appreciating that they were the Does identified as the defamers described on or after July 28, 2023. How this could be possible is just flabbergasting. Defendants Iyer and Garrett also unseriously represent that the plaintiff was "waiting" to name them as defendants as he was actually investigating and obtaining and enforcing subpoenas to identify them while they were hiding, and could have identified themselves as the Doe defendants at any time. Arguably, defendant Iyer had a duty to identify himself as a Doe defendant because in applying for admission to the bar, a standard question asks of status as a defendant in civil litigation is asked by New York, where he is admitted and most licensing jurisdictions. Upon inquiry to all bars of the United States, defendant Garrett is not admitted to any bar despite passing the Uniform Bar Exam.

Due to being unable to defend the allegations actually brought against them, defendants Iyer and Garrett have concocted alternate allegations meant to appear unreasonable, that were never made by the plaintiff, through cherry-picked quotations such as the term "cabal", which was used by other lawyers and law students to describe the notorious mistreatment of the plaintiff by a known group, but was never used by the plaintiff. Exhibits 2 and 3, demonstrate cooperation and coordination among the defendants, evidencing a conspiracy that was manifestly acted upon, and that needs no "theory" to be believed. The plaintiff's claims brought forth in the original *pro se* Doe complaint have proved to be remarkably accurate, and the subpoena to the Federalist Society proved fruitful. In a related case, the

---

2   The plaintiff's complete confidence in the applicability, plausibility and ultimate success of Racketeer Influenced and Corrupt Organization Act civil claims was reinforced by coincidentally coming across a Supreme Court amicus brief written by defendant Iyer and Garrett's counsel, Cristina Martinez Squiers of Scharr-Jaffe LLP. Brief amici curiae of Chamber of Commerce of the United States of America, et al. in *Medical Marijuana, Inc. v. Horn* 23-365. Therein, Schaerr-Jaffe LLP at *Id.* 14 described the state of the law in the Second Circuit is such that "...RICO becomes an all-purpose federal tort statute, available whenever a plaintiff can plead at least two predicate acts that could be characterized as wire fraud—as little as an advertisement and an email. See *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 239 (1989); see also 18 U.S.C. §1961(5)…" Notably the claims in the related case that defendants Iyer and Garrett reference are not dependent on the Second Circuit's broad interpretation in *Horn* for personal physical injuries, as injury was directly to business and property. Furthermore, although the broad scope of RICO is accurately described in that amicus brief, the comparison of RICO to tort intended to minimize and criticize RICO merely demonstrates ignorance. The common law of tort originated at a time and in a manner that definitionally constrain it from adequately addressing the needs that necessitated later judicially developed or statutorily enacted bodies of law such as anti-trust, restitution, unjust enrichment, equity and RICO that complement rather than displace or duplicate tort. https://www.supremecourt.gov/DocketPDF/23/23-365/318154/20240716114639044_Horn%20Amici%20Brief%20of%20Chamber%20of%20Comm%20et%20al%207.16.24.pdf

plaintiff also accurately identified Abigail Finkelman as the operator of the anonymous @clapifyoulikeme X account used to defame him, invade his privacy, and also abuse countless others.

Generously provided with many months by waiver and stipulated extensions, and in multiple filings, defendants Iyer and Garrett have failed to respond to the factual allegations against them, as supported by exhibits of their own writings and forgeries, and have particularly ignored Exhibit 3, in which defendant Garrett transmitted the second version of the defamatory image to the Federalist Society, and identified defendant Iyer as the source of that digitally manipulated forged defamatory image. To make matters worse for any credibility they may expect to have, they have filed contradictory sworn affidavits ECF No. 75-1,2 denying all wrongdoing individually or jointly, despite being exposed, by their own tortious writings and forgeries already exhibit, in which defendant Garrett identifying defendant Iyer as the forger.

By effectively abandoning most of their bogus protestations of implausibility contained in their motion to dismiss, where they ludicrously asserted that defendant Garrett's annotated copies of specific web pages saved at a particular moment represent all relevant material that was ever on the internet to the exclusion of any other, they have made their last refuge from liability in the statute of limitations.

As a threshold matter, defendants Iyer and Garrett's arguments as to the statute of limitations should not be accepted by the Court, because whether as a matter of dishonesty or incompetence, they did not address in their reply to the motion to dismiss address, or demonstrate in any way, the applicability of CPLR § 1024 in a way to clearly and convincingly show why the case should be dismissed at the motion to dismiss stage, before which affirmative defenses are normally made. Defendants seeking a 12(b)(6) dismissal on the grounds of an affirmative defense such as the statute of limitations, must meet a heightened standard, and their motion to dismiss was facially defective due to a failure to exhaustively foreclose any merit the case may have as is required of them. Defendant's Iyer and Garrett's statute of limitations analysis was confined to *Frederique v. Cnty. of Nassau,* No. CV 11-1746(WDW), 2014 WL 12841638 (E.D.N.Y. 2014), a case which did not even contemplate CPLR §

1024 at all, which is the correct and obvious manner of relating-back in this jurisdiction under these facts. Their consolidation of their reply to the opposition to their motion to dismiss, and opposition to a motion seeking leave to amend, may have just been a cynical attempt to get a second bite at the apple, while continuing to waste time and resources with their meritless attempts at dismissal, and desperation to avoid discovery.

Even if their arguments, made for the first time in their consolidated filing where to be accepted, statutory provisions CPLR § 203 and 1024 invoked by FRCP 15(c)(1)(A), will prevent defendants Iyer and Garrett from being rewarded for concealing their evil machinations against the innocent plaintiff, who made extraordinarily diligent efforts to uncover their identities far in excess of those which that judicially-crafted standard requires. The plaintiff was not successful until he received subpoenas duces tecum to the Federalist Society and Kirkland & Ellis LLP from this Court, because he was met by fraud, deception, silence and veiled threats of being prevented from being able to graduate law school and sit for the bar exam, which he finished writing on July 26, 2023, two days before filing. Although the diligent efforts standard does not require hypothetical success 'but for' fraud or active concealment, it is true in this case that 'but for' defendant Epstein's fraud, misdirection and chilling threats, and the active concealment of defendant Iyer and Garrett's tortious conduct by all three co-defendants, the plaintiff would have discovered the true names of the defendants.

Defendants Iyer and Garrett offer rank speculation and sophistic extrapolation to confabulate a "diligent effort" standard custom-tailored to defeat this plaintiff that contradicts the law and practices of the Courts of the State of New York. Their confabulation is demonstrably false and incorrect because it relies upon factors that have not been considered by the Courts of New York, such as their assertion that the plaintiff must be held to a much higher standard because he attended law school, ignores many inconvenient precedents, and is further applied by them in ignorance of inconvenient facts that clearly show that the plaintiff's efforts were the paradigm of diligent effort.

In another demonstration of their culpability and lack of credibility, defendants Iyer and Garrett claim that the original John Doe *pro se* complaint would not provide them with notice of their own culpability if they had read it. This is obviously ridiculous because the Federalist Society, in responding to a third-party subpoena and relying upon that complaint to search for responsive materials, was able to identify them as the proper defendants. Defendants Iyer and Garrett must know their own actions of fabricating, disseminating and forwarding the defamations better than the Federalist Society, especially as legally trained graduates of an 'elite' law school[3] that must clearly understand the ramifications of their actions. The Federalist Society selected one email and its attachments to be provided in their subpoena response out of potentially tens of millions of emails possessed by an organization of that size and age.

Rather than allege insufficient notice from the part of the original John Doe complaint that the Federalist Society provided subpoenas in response to, which discussed the act of packaging and forwarding the defamatory materials to the James Kent Academy of the Federalist Society (not specifically Lee Otis in that paragraph) they seize upon the specific mention of Lee Otis (who is the head of the Federalist Society Faculty Division) in a different paragraph. Yet defendants Iyer and Garrett themselves also sought to ensure that the defamatory materials would reach Lee Otis through the Student Division, as defendant Garrett wrote in Exhibit 3, and it actually did reach Lee Otis through co-defendant Epstein, who has already admitted in writing to sending it to her, and who received it himself from defendants Iyer and Garrett.

Defendants Iyer and Garrett, represented by Schaerr-Jaffe LLP who appear keen to litigate the claims of putative defendant Pallaki who is not their client[4], irrelevantly attempt to conflate issues pertaining to his liability with their own. Most egregious of which is their assertion that any civil

---

[3] A fact they share in common with the plaintiff, and one that they incorrectly rely upon to demand an impossibly high standard of diligent efforts of him.
[4] Further demonstrating their lack of care for minimal ethical standards as are at issue by their inherently and irremediably conflicted concurrent representations of defendant Iyer and defendant Garrett that threatens to undermine the integrity of these proceedings, resulting in a motion to disqualify having been brought.

conspiracy is rendered impossible if one party, working toward the same purpose through unlawful overt acts in cooperation, does not personally know every other party. Furthermore, they ignore the obvious possibility that defendants Iyer, Garrett and Epstein may be in a civil conspiracy with each other, as conclusively demonstrated by Exhibit 3 and defendant Epstein's cover-up operation on their behalf, while defendants Iyer and Pallaki may be in another, related, civil conspiracy with each other.

## ARGUMENT

### The Standard for Diligent Efforts in CPLR § 1024 Relating-Back

The "diligent effort" requirement is a judicially-crafted standard, not present in the text of CPLR § 1024, that demands of plaintiffs to allege at the pleading and dismissal stage that they have diligent efforts to discover the true names of the unknown parties. Defendants Iyer and Garrett misrepresent this standard beyond recognition through their sophistic extrapolations from many cases in which the diligent efforts *were* found to be undertaken by plaintiffs far in excess of the actual requirement, and for that reason did not require a thorough analysis of the minimum required by the standard. Furthermore, the plaintiff far exceeds the minimum requirement of the standard, and exercised more due diligence manifest in both persistence, accuracy and sophistication than many others who were successful in relating-back their claims against John Does who hid from justice.

Diligent effort was approved for a plaintiff that alleged to have utilized internet search engines to attempt discover the true names of the Doe defendants *DeMarzo v. Cuba Hill Elementary Sch.*, 220 A.D.3d 917, 919-20 (2d Dep't 2023). In *A.S. v. Erie County.*, 219 A.D.3d 1694, 196 N.Y.S.3d 825 (2023) a plaintiff satisfied the diligent efforts requirement by alleging two inquiries for county records relating to foster care shortly before the statute of limitations. Proper notice has been found when referring to a landscaping tortfeasor as "John Doe Tree Company" *Tobin v. St. Paul's Lutheran Evangelical Church*, 1987, 136 Misc.2d 801, 519 N.Y.S.2d 93 (Sup.Ct.N.Y.Co.) or to police officers engaging in an unlawful and destructive search of a home as "those individuals who accompanied

Detective Sierra into plaintiffs' apartment and participated in the illegal acts hereinafter alleged" *Henderson-Jones v. City of New York*, 2011, 87 A.D.3d 498, 928 N.Y.S.2d 536 (1st Dep't).

As demonstrated *supra* by *DeMarzo* and *A.S. v. Erie County*, diligent efforts for CPLR § 1024 serve as quite a low bar, and this is in harmony with the purpose of the statute, which is to prevent the harsh effects of the statutes of limitations upon plaintiffs who are genuinely ignorant as to the identities of the true names of the defendants, and have made real efforts to learn the true names of the defendants. Defendants Iyer and Garrett, who concealed their activities through anonymous online postings, and private communications that were designed and tended to jointly implicate those who relied upon them, such as defendant Epstein who was initially deceived but later joined as co-conspirator, and made significant contributions to the cover-up efforts to deceive the plaintiff, which became in his own interest.

To probe the standard from the other direction, in reviewing cases that courts did allow relating-back per CPLR § 1024, a court refused to find due diligence when a patient in a medical malpractice suit only made two "half-hearted" attempts to obtain his medical records *after* the statute of limitations had taken effect *Dooley v. Columbia Presbyterian Med. Ctr.*, No. 06 CIV. 5644 (JCF), 2009 WL 129941 (S.D.N.Y. Jan. 16, 2009). In contrast, the *A.S. v. Erie County* court allowed relating-back when the plaintiff only made two attempts, which were not described as particularly forceful or determined shortly before the statute of limitations had run. The records in *Dooley* clearly identified the Doe anesthesiologist sought, and the plaintiff could have demanded them at any time per state and federal law before his claims became time-barred.  The plaintiff in the instant case was not entitled as a matter of right to demand (except through eventual subpoenas issued by the Court) any record or testimony that would have identified the Doe defendants, and all of his diligent efforts, which far exceeded two attempts, to discover their identities were met by fraud, avoidance, silence and intimidation.

<u>The Plaintiff Manifestly Exercised Diligent Efforts Far in Excess of the Standard Required</u>

Defendants Iyer and Garrett's dishonest and deceptive arguments demonstrate that they will seize upon and contort beyond recognition anything due to desperation. They simply cannot resist seizing upon descriptive elements of allegations, and waste no opportunity to spin volumes of yarn about trivialities meant to distract the Court from the important issues, and as a means to selectively and inconsistently address the factual allegations of the complaints at issue. This is especially egregious as they have demanded hyper-particularity and opposed obvious inferences that even a small child could make, only to complain about additional allegations being added in the Second Amended Complaint, providing additional background information[5]. They seize upon the plaintiff's last-resort appeals to defendant Epstein's sense of morality or concern about spiritual judgment, which he made by referring to the impressive statute built on a clay foundation which gave way to ruin in the dream of the biblical Daniel, or the lyrical reference of a song describing a foolish man "dragging on feet of clay, never knowing he's astray". Both of these attempts, which followed four attempts, were calculated to encourage defendant Epstein to tell the truth, and dissuade him from risking a potentially tortious cover-up.

In retrospect it is clear that defendant Epstein acted to mitigate not only his own liability, but also to protect his own legacy and ability to recommend in the future in the wake of the defamations and forgeries created by his recommended students, defendants Iyer and Garrett. Such last-resort appeals were not the only attempts to obtain the true names of the Does from defendant Epstein, and followed a phone call, an email (to which defendant Epstein responded in writing with both fraud as to defendants Iyer and Garrett and an incredible admission of his own liability), multiple in person inquiries, and preceded a final presentation of the draft complaint, on July 28, 2023, to defendant Epstein.

---

5   Furthermore, their bad faith opposition to the plaintiff's attempt to amend this case to include claims arising from similar facts under federal law, resulted in an extreme workload of the *pro se* plaintiff to prepare two oppositions, a motion seeking leave to amend, the Second Amended Complaint and an additional complex case whose claims were imminently subject to the statute of limitations.

Rather than a scattering of conversations, the plaintiff diligently and persistently attempted to extract from defendant Epstein, who actually knew the identities of defendants Iyer and Garrett as the tortfeasors, and utilized every means of persuasion such as by appealing to defendant Epstein's self-interest, friendship, loyalty, justice, morality and the possibility of spiritual judgment for covering up and magnifying a malevolent injury inflicted initially by defendants Iyer and Garrett.

Of all of the cases cited relating to diligent efforts, and upon diligent research no other case was found, in which a plaintiff went to such great and diligent efforts so as to draft an entire *pro se* complaint, detailing all of the allegations and background information that may be relevant, and presented such a draft to a person who actually knew the true names of the Doe defendants, and who turned out to be a defendant himself.

Instead of looking to cases where relating-back was denied, defendants Iyer and Garrett desperately look for cases where a very high degree of diligent effort was exercised by the plaintiff under different facts, and pull out those differences simply to find distinctions from the instant case. An example is their example of *Medina v. Seiling* as a case where an admirably persistent *pro se* plaintiff clearly made diligence efforts, to which relating-back per CPLR § 1024 was granted. Relating-back should be granted here, which was cited by this *pro se* plaintiff for the proposition that allegations of written inquiries alone are sufficient, not the question of their volume.

Furthermore *Medina* was a § 1983 claim, to which CPLR § 1024 applies through a policy decision of federal courts to allow more lenient state statutes of limitation to apply to those federal claims absent a federal statute, effectively converting CPLR § 1024 into a reason for federal equitable tolling. Every degree of sympathy and judicial understanding is rightly applied in *Medina* for a wronged prisoner who is limited, due to incarceration, from pursuing or investigating his legal rights, but *Medina* does not establish that others who are not prisoners are subject to a drastically higher standard as defendants suggest. *Medina* was accurately cited for a proposition uncontestable by defendants Iyer and Garrett, that a plaintiff is not required to provide anything more than allegations as

to their own efforts at the current stage, and that allegations of unanswered requests for information are sufficient to show diligence. Although this *pro se* plaintiff's situation is different from that of the pro se plaintiff in *Medina*, this plaintiff was restricted in his freedom of action by a credible fear that he would be summarily removed from law school and prevented from writing the bar exam, as defendant Epstein had chillingly warned him that this could happen to him at any time and that he should keep a very low profile. Furthermore, the plaintiff's inquiries also amount to roughly one per month, which include inquiries and investigations in which the plaintiff utilized his freedom of movement to go to places and gatherings where he could find witnesses who he could ask for information, or who could offer it to him personally if he did not know of any reason to ask them. The plaintiff received some testimony and information but nothing that provided him with the true names of the defendants.

Defendants Iyer and Garrett underhandedly attempt to turn the plaintiff's honesty and transparency with this Court against him. The plaintiff has always had a duty to mitigate injury according to basic tort principles, and a further responsibility to prevent third parties from destroying evidence. The plaintiff exercised diligent efforts, which were occasionally cautious in a manner not contradicting their diligence, in order to prevent the destruction of evidence, such as spoliation of the email and attachments that would eventually be received from the Federalist Society pursuant to subpoenas. The plaintiff also sought to avoid significant retaliation to be taken against him, as defendant Epstein had chillingly warned him that he could be prevented from completing his law degree and writing the bar exam at any time and with no 'due process'.

The plaintiff had six total inquiries with defendant Epstein, including one which produced a written and fraudulent denial, another which resulted in defendant Epstein screaming at the plaintiff to leave his office after the plaintiff accused him of betrayal, and the final one in which defendant Epstein read the entire *pro se* complaint and provided no information other than a few excited utterances expressing shock. The plaintiff also asked Lee Otis, who refused to disclose who had sent the Federalist Society or her of the defamations on August 2, 2022.  The plaintiff discussed the matter with Peter

Redpath who provided no information on November 9, 2022, after writing to him about his belief that a member of the NYU Federalist Society was culpable on August 2 receiving no response. The plaintiff also spoke to four different rank and file members of the Federalist Society who had some information about the underlying transactions and occurrences giving rise to this action in Texas, Washington D.C. and New York, in September, November and December respectively.

While providing plenty of criticism, defendants Iyer and Garrett have not demonstrated any other course of action that the plaintiff could have taken to unmask them as the proper defendants. Even if CPLR § 1024 did not clearly apply to the proper and paradigmatically diligent efforts of this *pro se* plaintiff, the plaintiff's lack of knowledge as to the true names of defendants was resultant of active concealment, fraud, intimidation and conspiracy, and for such purposes federal or state equitable tolling, or Rule 15(c)(1)(C) mistake induced by defendant Epstein's fraud, which prevented him from properly investigating or utilizing the clues at his disposal, would be also appropriate.

As far as they claim so as to have not been able to receive notice, even the caption of the original John Doe *pro se* complaint described the three Does as a Top-Law-Schools.com user, a Reddit.com user, and an NYU law student. Defendant Iyer, who forged and disseminated the defamations online with defendant Garrett should have been put on the most direct and obvious notice possible as to the first two, as was defendant Garrett due to the third Doe, described as an NYU law student who packaged and forwarded the defamatory materials to the Federalist Society, as demonstrated by Exhibits 2 and 3 being provided in response to a subpoena.

<u>The Statute of Limitations is Prematurely Asserted to Avoid Even Minimal Discovery</u>

According to the federal pleading practice and procedures, it is premature and improper to dismiss a case in response to an assertion of the statute of limitations unless it can be demonstrated that the statute of limitations *must* bar the action, because the statute of limitations is an affirmative defense. Rather than disproving existence of diligent efforts taken by the *pro se* plaintiff, the first amended

complaint, and the second amended complaint thoroughly and overwhelmingly demonstrate the plaintiff's diligent efforts far in excess of the standard as discussed *supra*.

In *Michael Grecco Prods., Inc. v. RADesign, Inc.*, 112 F.4th 144 (2d Cir. 2024) the Second Circuit reiterated "[t]he pleading requirements of the Federal Rules of Civil Procedure do not compel a litigant to anticipate potential affirmative defenses, such as the statute of limitations, and to affirmatively plead facts in avoidance of such defenses." *Clark v. Hanley*, 89 F.4th 78, 93–94 (2d Cir. 2023) (internal quotation marks and citation omitted). In fact, "[p]laintiffs are under no obligation to plead facts supporting or negating an affirmative defense in the complaint. *In Re: Nine West LBO Sec. Litig.*, 87 F.4th 130, 144 (2d Cir. 2023)" (original emphasis).

Defendants Iyer and Garrett prematurely assert the statute of limitations in a desperate plea to avoid discovery, during which even pinpoint compulsory inquiries will easily demonstrate their culpability. Due to the exhibits already in the record as a result of the subpoena required to identify them as the John Does, and the manifest fabrication, falsehood and forgery of the defamations conveyed by them, it is highly foreseeable that a summary judgment could be obtained against them for defamation, if such a summary judgment against them is not already possible.

Although liability and damages are closely linked, a case may begin with knowledge and allegation of a single instance of defamation being pleaded thus providing a cause of action, yet other defamations may be discovered revealing factual transactions and occurrences both relevant to the analysis of the exercise of due diligence during the relevant period, and the extent of concealment and deception undertaken to prevent identification. The latter cannot be known at the outset, prior to discovery, and demonstrate why the full amount of due diligence cannot be ascertained in the face of a premature assertion of the statute of limitations.

## CONCLUSION

The meritorious claims most currently and accurately stated in the proposed Second Amended Complaint brought by the plaintiff against defendants Iyer and Garrett, who were identified by the Federalist Society in response to subpoenas that unmasked them as the John Does who perpetrated a vile and malevolent defamation, including through forgery, must continue to discovery and trial on the merits.

/s/ Gideon Rapaport pro se
GideonRapaportLaw@outlook.com
(862) 213-0895
#627 1078 Summit Avenue
Jersey City, New Jersey, 07307