UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GIDEON RAPAPORT,

                                  Plaintiff,

                -against-

AJAY SRINIVASAN IYER, et al.,

                                  Defendants.

23-CV-6709 (JGLC)

**OPINION AND ORDER**

JESSICA G. L. CLARKE, United States District Judge:

Plaintiff Gideon Rapaport, now proceeding *pro se*, is a former summer associate at the law firm of Kirkland & Ellis LLP, and a recent graduate of New York University School of Law ("NYU Law"). Plaintiff filed this action on July 28, 2023 against three John Does—a Reddit.com user, a Top-Law-Schools.com user, and a current or former NYU Law student. The original complaint alleged that the John Does engaged in a conspiracy to defame his character and ruin his professional reputation by spreading rumors on law school website forums. After conducting discovery to ascertain the identity of these individuals, Plaintiff, with the assistance of counsel, filed an Amended Complaint on May 24, 2024 amending the case caption to list the names of the John Doe defendants, and asserting similar causes of action premised on the same alleged defamatory statements and conspiracy.

Defendants now move to dismiss this action, asserting, among other things, that Plaintiff has failed to state any claims against them, and that his claims are barred by applicable statutes of limitation and legal immunities. Plaintiff subsequently filed a motion for leave to amend his complaint to survive dismissal to which he attached a proposed seconded amended complaint. For the reasons set forth below, Defendants' motions to dismiss are GRANTED in part and DENIED in part, and Plaintiff's motion for leave to amend is partially GRANTED. The Court

provides further directives to Plaintiff regarding amending his complaint in this case and a related case in the Conclusion Section. In addition, Plaintiff's application to disqualify counsel is DENIED because any potential conflict has been waived.

## BACKGROUND

The following facts are, unless otherwise noted, taken from the Amended Complaint and presumed to be true for the purposes of this Order. *See J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004).

During the summer of 2022, Plaintiff was a summer associate at the law firm Kirkland & Ellis, LLP ("K&E"). ECF No. 38 ("Amended Complaint" or "AC") ¶ 1. On July 15, 2022, Plaintiff attended a get together for members of the NYU Law Federalist Society. ¶ 31. Defendants Ajay Iyer and Zach Garrett (collectively, "Student Defendants") also attended. *Id.* At the get together, Plaintiff alleges he told Student Defendants that he would be attending the James Kent Academy in early August. *Id.* The James Kent Academy is a fellowship sponsored by the Federalist Society's faculty division. *Id.* ¶ 21. Defendant Richard Epstein wrote a recommendation letter for Plaintiff in support of his candidacy for the fellowship. *Id.* ¶ 60.

A few weeks later, on July 28, 2022, Defendant Iyer photographed a guard desk at the lobby of 601 Lexington Avenue (where Kirkland & Ellis is located). *Id.* ¶ 35. Defendant Iyer then digitally altered the photograph to replace it with a picture of Plaintiff's face and the following text:

DO NOT ADMIT
GIDEON RAPAPORT
KIRKLAND AND ELLIS

*Id.; see* ECF No. 38-1. Plaintiff alleges that Iyer then posted the altered image online on two internet sites: Reddit.com and Top-Law-Schools.com. *Id.* ¶ 37. These postings included

assertions, from anonymous users, that Plaintiff had been fired for sexual harassment and banned from the K&E building. *Id.* ¶ 38. Anonymous users on both websites also made assertions about Plaintiff's "personality, habits, mannerisms, modes of dress and pastimes"—namely, that he "celebrat[ed]" the *Dobbs* ruling (the 2022 Supreme Court decision overturning *Roe v. Wade*) and that he is a "racist." *Id.* ¶ 38; ECF No. 38-3 at RAPAPORT0004–05. On July 29, 2022, Defendant Garrett "presented" the online materials to Peter Redpath and Kate Alcantara, Directors of the Student Division at the Federalist Society. *Id.* ¶¶ 42–43. Garrett also presented the materials to Defendant Epstein around the same time. *Id.* ¶ 45. Neither Mr. Redpath nor Ms. Alcantara took any further action. *Id.* ¶ 44.

On July 29, 2022, Defendant Iyer returned to the guard desk at 601 Lexington Avenue to take another photograph, which he used to make a second image that was "more technically sophisticated." *Id.* ¶ 48; ECF No. 38-2. Iyer sent the second image to Garrett and Professor Epstein. *Id.* ¶ 50. On August 2, 2022, Defendant Garrett again contacted Mr. Redpath and Ms. Alcantara, writing "[a]s I mentioned to you over the weekend, my understanding is that Gideon Rapaport was fired from his summer associate position at Kirkland & Ellis NY last week for sexually harassing a practice assistant or an attorney." *Id.* ¶¶ 54, 55. Garrett also wrote Plaintiff had been "banned from entering the building" and included the manipulated photo Defendant Iyer had created in his correspondence. *Id.* ¶ 56. Again, neither Mr. Redpath nor Ms. Alcantara took any further action. *Id.* ¶ 61. Defendant Epstein, however, forwarded the email containing these statements to Lee Otis.[1] *Id.* ¶ 63.

---

[1] The Amended Complaint does not specify Lee Otis's occupation or position, but Otis appears to be Senior Vice President and Faculty Director of The Federalist Society for Law and Public Policy Studies. ECF No. 11 at 1.

That same day, Ms. Otis had a call with Defendant Iyer in which he repeated the statements from Garrett's August 2 email. *Id.* ¶ 64. On the evening of August 2, 2022, Otis had a telephone conversation with Plaintiff, in which Plaintiff came to learn about the photographs, online posts, and email statements for the first time. *Id.* ¶¶ 65–66. But, Plaintiff was unaware of who made the photographs, online posts and email statements. Plaintiff subsequently authorized K&E's Director of Human Resources, Steven Goldblatt, to disclose any information about his prior employment. Goldblatt informed Ms. Otis that Plaintiff had not been fired for sexual harassment or banned from the K&E building. *Id.* ¶¶ 67–69. On August 9, 2022, after Plaintiff completed the James Kent fellowship, Defendant Epstein called Plaintiff and told him, among other things, his career "was destroyed," that he would be removed from his forthcoming journal editorial position, and that Epstein would no longer associate with him in order to protect his reputation. *Id.* ¶ 71. Defendant Epstein also admitted to Plaintiff that he had forwarded the materials to Lee Otis, but warned Plaintiff not to pursue the matter further and that he would "not get a second chance" from anyone. *Id.* ¶ 84. Epstein subsequently told unnamed "others" that Plaintiff was "frequently absent from his classes." *Id.* ¶ 88*.* Plaintiff also contends, because of "disparagement" by Epstein, that he lost a paid contractor position and a position at the Manhattan Institute. *Id.* ¶¶ 140, 141.

On July 28, 2023, shortly before filing this suit, Plaintiff met with Defendant Epstein. He asked Defendant Epstein to review the complaint later filed in this case, and asked if Epstein had any corrections or changes to the proposed draft. *Id.* ¶¶ 80–82. Epstein maintained he did not want to be involved. *Id.* ¶ 83.

Plaintiff filed this action *pro se* on July 28, 2023 against three John Does—the people he alleges created the fake photographs and wrote the online posts—asserting claims for defamation

and other similar state law claims. ECF No. 1. On September 28, 2023, Plaintiff moved for a 90-day extension of time to effectuate service. ECF No. 7. On October 2, 2023, the Court granted this request and extended the service deadline to January 24, 2024. ECF No. 8.

On November 22, 2023, Plaintiff sought leave to conduct expedited discovery for the limited purpose of identifying and effectuating service on the John Doe defendants. ECF Nos. 10, 11. On January 2, 2024, the Court approved limited document subpoenas tailored to that purpose. ECF No. 21. In that same order, the Court also extended Plaintiff's deadline to serve the summons and complaint on Defendants to 45 days after Plaintiff received information from the third-party subpoenas. *Id.* On April 29, 2024, Plaintiff, who was then represented by counsel, informed the Court that he received responses to the subpoenas on March 15, 2024, stated his intention to file an amended complaint, and sought an extension to effectuate service of the amended complaint, which the Court granted. ECF Nos. 34, 35, 37. Plaintiff filed the Amended Complaint on May 24, 2024, and asserted claims for defamation, intentional infliction of emotional distress ("IIED"), injurious falsehood, false light and invasion of privacy, and civil conspiracy against all defendants (the "Omnibus Claims"). AC ¶¶ 90–127. Plaintiff also asserted claims for fraud and tortious interference with economic advantage against Defendant Epstein only. *Id.* ¶¶ 128–142. On May 27, 2024, and June 11, 2024, Plaintiff sent waivers of service to Student Defendants and Defendant Epstein, respectively. ECF Nos. 39, 42, 43. On June 17, 2024, Defendant Epstein executed a waiver of service of the Amended Complaint. ECF No. 39. Student Defendants also executed a waiver of service of the Amended Complaint on June 25, 2024. ECF Nos. 42, 43.

Defendant Epstein and Student Defendants filed the instant motions to dismiss on August 12 and August 16, respectively. ECF Nos. 50, 51 ("Epstein Mem."), 53, 54 ("Students Mem.").

On September 13, 2024, Plaintiff filed a motion to disqualify counsel for Student Defendants, arguing, among other things, that they would have differing interests and affirmative defenses in the litigation. ECF No. 66. On September 27, 2024, Plaintiff sought leave to file a second amended complaint, ECF No. 77, which the parties briefed jointly with Defendants' motions to dismiss. All these motions are ripe for the Court's consideration and will be resolved by this Order.

The Court notes that Plaintiff Rapaport has also commenced two related actions involving similar assertions and alleged tortious conduct, both of which remain pending. On August 5, 2024, Plaintiff filed an action against Abigail Finkelman as sole defendant, alleging claims for defamation and false light and invasion of privacy based on Finkelman allegedly retweeting and resharing the faked photographs at issue in this case. *See* Complaint, *Rapaport v. Finkelman*, No. 24-CV-5942 (S.D.N.Y. Aug. 5, 2024), ECF No. 1. And on September 27, 2024, Plaintiff filed an action against multiple individuals, including all of the Defendants in this case, alleging civil RICO violations and attempted monopolization in violation of the Sherman Act, arising out of substantially the same conduct asserted in this case. *See* Complaint, *Rapaport v. Epstein, et al.,* No. 24-CV-7439 (S.D.N.Y. Sept. 27, 2024), ECF No. 1.

## LEGAL STANDARD

In reviewing a motion to dismiss under Rule 12(b)(6), the Court must "constru[e] the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008) (internal citation omitted). A claim will survive a Rule 12(b)(6) motion only if the plaintiff alleges facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that a defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678. If a complaint does not state a plausible claim for relief, it must be dismissed. *Id*. at 679.

    *Pro se* complaints "must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (internal citation omitted). "Such a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Hughes v. Rowe*, 449 U.S. 5, 10 (1980) (internal citation omitted); *see also Boykin v. KeyCorp.*, 521 F.3d 202, 216 (2d Cir. 2008) ("[D]ismissal of a pro se claim as insufficiently pleaded is appropriate only in the most unsustainable of cases."). Because Plaintiff is proceeding *pro se*, the Court must liberally construe his Amended Complaint[2] and interpret it "to raise the strongest claims that it suggests." *Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486, 489 (2d Cir. 2018) (internal quotation marks omitted).

## DISCUSSION

    The Court first considers whether New York or New Jersey law applies to Plaintiff's claims, concluding that choice of law rules require the Court to apply the former. Second, the

---

[2] While Plaintiff filed the Amended Complaint with the assistance of counsel, he has proceeded *pro se* for the vast majority of this action, including in filing the original complaint and opposing the Defendants' motions to dismiss. Accordingly, the Court finds it appropriate to apply this more lenient standard.

Court assesses whether Plaintiff's claims against Student Defendants are timely, and concludes that his claims are not time-barred and "relate back" to the original complaint within the meaning of Federal Rule of Civil Procedure 15, but only to the extent they rely on the online internet posts (the fake photograph and website statements). Third, the Court concludes that Plaintiff has failed to state a claim for defamation because his allegations are contradicted by exhibits to the Amended Complaint, and because he does not plead, with specificity, whether and which Student Defendant made which statements on the online forums. Fourth, the Court dismisses Plaintiff's IIED, civil conspiracy, and injurious falsehood claims as duplicative. Fifth, the Court finds that neither Section 230 of the Communications Decency Act ("CDA") nor the common interest privilege, immunizes Defendant Epstein from liability for Plaintiff's remaining fraud and tortious interference claims against him. Sixth, the Court considers Plaintiff's independent claims against Epstein for fraud and tortious interference, concluding that neither has been adequately pled. Finally, the Court denies Plaintiff's motion to disqualify Student Defendants' counsel, and also *sua sponte* consolidates this action with a related action (*Rapaport v. Epstein, et al.,* No. 24-CV-7439) in the interest of judicial economy and efficiency.

Notwithstanding the Court's dismissal of the claims, the Court will allow Plaintiff, in accordance with the Second Circuit's broad and liberal reading of Rule 15 (especially as to *pro se* litigants), to file an amended complaint to address the deficiencies with certain of his claims.

## I.    New York Law Applies to This Action and Plaintiff's False Light and Invasion of Privacy Claim Is Dismissed with Prejudice

Plaintiff purports to rely on New York law for the majority of his claims. However, he attempts to invoke New Jersey law solely with respect to his false light and invasion of privacy claim. AC ¶¶ 115–116. According to Plaintiff, New Jersey "redresses the violation of a right of privacy which is not afforded by the State of New York to its citizens, but which pertains to

protecting private figures from intrusion into their lives by publicity that places them in a false light." *Id.* ¶ 116. Plaintiff therefore argues New Jersey law applies to this specific claim and asks this Court to apply the doctrine of dépeçage—the practice of applying different states' substantive law to different issues in the same action. ECF No. 79 ("Students MTD Opp.") at 23–25. As set forth below, the Court disagrees and will only apply New York law.

"When a federal court sits in diversity, it applies the choice of law rules of the forum state . . . ." *Chau v. Lewis,* 771 F.3d 118, 126 (2d Cir. 2014). In New York, a choice of law analysis is only required "[w]here the applicable law from each jurisdiction provides different substantive rules." *Curley v. AMR Corp.,* 153 F.3d 5, 12 (2d Cir. 1998). "In the absence of substantive difference . . . a New York court will dispense with choice of law analysis; and if New York is among the relevant choices, New York courts are free to apply it." *Int'l Bus. Machs. Corp. v. Liberty Mut. Ins. Co.,* 363 F.3d 137, 143 (2d Cir. 2004). Here, a conflict plainly exists with respect to the false light and invasion of privacy claim, because New York does not recognize this claim as cognizable. *Satz v. Org. for Resol. of Agunot Inc.*, No. 23-CV-36 (MKV), 2024 WL 1330011, at *10 (S.D.N.Y. Mar. 28, 2024) (collecting cases). The Court must therefore conduct a choice of law analysis.

"In general, under New York choice of law principles 'the law of the place of the tort governs.'" *Fisher v. APP Pharms*., *LLC*, 783 F. Supp. 2d 424, 428 (S.D.N.Y. 2011) (quoting *Padula v. Lilarn Prop. Corp.,* 84 N.Y.2d 519, 522 (1994)). A court must endeavor to apply the law of the jurisdiction having the "most significant" relationship to the transaction and parties *Press v. Primavera*, 685 F. Supp. 3d 216, 226–27 (S.D.N.Y. 2023). In short, a court should give effect to the "law of the jurisdiction with the strongest interest in the resolution of the particular

issue presented." *Fed. Hous. Fin. Agency v. Ally Fin. Inc.,* No. 11-CV-7010 (DLC), 2012 WL 6616061, at *5 (S.D.N.Y. Dec. 19, 2012) (internal citation omitted).

Here, New York has the "strongest interest" in the resolution of this matter. According to the Amended Complaint, Student Defendants (NYU Law students) and Defendant Epstein (a resident of New York and a professor at NYU Law) conspired to ruin Plaintiff's reputation with allegedly defamatory statements regarding his employment at K&E's New York office, which were purportedly distributed to members of the NYU Law Federalist Society, and disseminated online more broadly. Moreover, Plaintiff concedes New York law should apply to all but one of his claims (false light). Students MTD Opp. at 24.

Still, Plaintiff claims that New Jersey law should apply to the false light and invasion of privacy claim because it is his "local community." *Id.* To be sure, courts have generally instructed that in a defamation action, the choice of law analysis can be resolved by reference to the plaintiff's domicile. *See*, *e.g., Catalanello v. Kramer,* 18 F. Supp. 3d 504, 512 (S.D.N.Y. 2014). However, this "presumptive rule" does not apply where "some other state has a more significant relationship to the issue or the parties." *Id.* (cleaned up). Here, Plaintiff has conceded that New York law should apply to his defamation claim and brings a slew of other claims also under New York law. It is clear that Plaintiff views New York as having the most significant relationship to the issues and parties in this case.

Plaintiff's position thus makes clear that he merely wishes to avail himself of a cause of action that New York does not recognize. Indeed, if Plaintiff truly believed New Jersey had the greatest interest in the allegations from the Amended Complaint, he would advocate that it should apply across the board because the same conduct underlies all his claims. The Court therefore concludes that New York law applies. *See Satz*, 2024 WL 1330011, at *10 (S.D.N.Y.

Mar. 28, 2024) (dismissing false light claim, even though Plaintiff resided in New Jersey, because the parties were deemed to have consented to New York law); *Konikoff v. Prudential Ins. Co. of America*, 234 F.3d 92, 98 (2d Cir. 2000) (applying New York law where parties "clearly" and "tacitly" agreed it governed).

For substantially similar reasons, the Court declines to invoke the doctrine of dépeçage, which allows a Court to apply the law of different states to distinct issues. *See Seidel v. Houston Cas. Co.*, 375 F. Supp. 2d 211, 219 n.13. (S.D.N.Y. 2005). "The [d]epacage doctrine recognizes that in a single action different states may have different degrees of interests with respect to different operative facts and elements of a claim or defense." *2002 Lawrence R. Buchalter Alaska Tr. v. Philadelphia Fin. Life Assur. Co.*, 96 F. Supp. 3d 182, 200 (S.D.N.Y. 2015) (quoting *Simon v. Philip Morris Inc.*, 124 F. Supp. 2d 46, 75 (E.D.N.Y. 2000)). This case, however, does not involve, for instance, multiple overlapping issues and parties from multiple jurisdictions. As discussed above, the conduct at issue almost exclusively occurred in New York. *Cf. Simon v. Philip Morris Inc.*, 124 F. Supp. 2d 46, 75 (E.D.N.Y. 2000) (applying dépeçage in nationwide class action on numerous overlapping issues of damages and liability). Accordingly, and because Plaintiff does not cite any authority requiring a different result, the Court will apply New York law, and therefore dismisses Plaintiff's claim for false light and invasion of privacy with prejudice. *See Satz*, 2024 WL 1330011, at *10.

## II.    Plaintiff's Omnibus Claims Are Timely with Respect to Certain Defamatory Statements

Student Defendants argue that Plaintiff's claims for defamation, injurious falsehood, IIED, and civil conspiracy (the Omnibus Claims) are time-barred because he did not file the Amended Complaint until May 24, 2024, far outside the applicable one-year statute of limitations which ended by September 1, 2023 at the latest. Students Mem. at 3–6. Plaintiff

disagrees, arguing that statute of limitations is an affirmative defense, and so a complaint need not affirmatively negate or challenge such defenses. Students MTD Opp. at 11–12. Plaintiff also asserts that the Amended Complaint "relates back" to the original complaint pursuant to Federal Rule of Civil Procedure 15 and New York Civil Practices Law and Rules §§ 203(f) and 1024. *Id.* at 13–14. The Court considers these issues below.

### A. Affirmative Defenses at Motion to Dismiss Stage

As an initial matter, the Court rejects Plaintiff's argument concerning affirmative defenses. He argues that Defendants' invocation of the applicable statute of limitations constitutes an affirmative defense, and a complaint need not anticipate and affirmatively plead facts in avoidance of such defenses. Students MTD Opp. at 11 (citing *Michael Grecco Prods., Inc. v. RADesign, Inc*., 112 F.4th 144, 149–50 (2d Cir. 2024)). This argument misconstrues applicable law. To be sure, "[t]he lapse of a limitations period is an affirmative defense that a defendant must plead and prove." *Staehr v. Hartford Fin. Servs. Grp*., 547 F.3d 406, 425 (2d Cir. 2008) (citing Fed. R. Civ. P. 8(c)(1)). "However, a defendant may raise an affirmative defense in a pre-answer Rule 12(b)(6) motion if the defense appears on the face of the complaint." *Id*. Here, it is clear from the face of the Amended Complaint that Plaintiff filed it outside the applicable statute of limitations for the Omnibus Claims, and the Court therefore must conduct a relation back analysis to ascertain whether they ought to be dismissed as to all Defendants.[3]

---

[3] While Defendant Epstein did not specifically raise timeliness in his motion to dismiss, the Court may nonetheless consider, and if applicable, dismiss the claims as untimely as against all Defendants. *See Narayanan v. Garland*, No. 22-CV-5661 (EK), 2023 WL 6307872, at *4 (E.D.N.Y. Sept. 28, 2023) (dismissing untimely claims even where the defense was not raised by certain defendants); V.*E.C. Corp. of Delaware v. Hilliard*, No. 10-CV-2542 (VB) 2011 WL 7101236, at *11 (S.D.N.Y. Dec. 13, 2011) (sua sponte dismissing untimely conversion claim) (collecting Second Circuit cases).

### B. "Relation Back" Analysis

In New York, a one-year statute of limitations period applies to claims for defamation, IIED, and injurious falsehood. *See Conte v. Cnty. of Nassau*, 596 F. App'x 1, 4–5 (2d Cir. 2014) (summary order). New York does not recognize an independent tort of civil conspiracy, and so this claim adopts the statute of limitations applicable to the underlying tort, meaning it would also be one year. *See Deans v. Bank of Am.*, No. 10-CV-9582 (RJH), 2011 WL 5103343, at *3 (S.D.N.Y. Oct. 27, 2011) (internal citation omitted). Because Plaintiff alleges the relevant conduct occurred in July and August of 2022, *see generally* AC ¶¶ 31–71, the limitations period expired by September 1, 2023 at the latest.

Even though Plaintiff arguably filed the *original* complaint within the limitations period, the Amended Complaint requires its own timeliness analysis because it adds new claims and parties. The Amended Complaint updated the caption with the actual identities of the John Does, and courts have observed that replacing a "John Doe" with a named party in effect constitutes a change in the party sued. *Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013). As this Circuit has made clear, "John Doe" pleadings "cannot be used to circumvent statutes of limitations." *Chinese Am. Citizens All. Greater New York v. New York City Dep't of Educ.*, No. 20-CV-8964 (LAK), 2024 WL 1795390, at *3 (S.D.N.Y. Apr. 25, 2024) (citing *Hogan*, 738 F.3d at 517).

Instead, "John Doe" substitutions may only be accomplished when all the specifications for "relation back" under Rule 15 are met. *Id.* A plaintiff can demonstrate "relation back" under Rule 15 in at least two ways. *Id.* First, under Rule 15(c)(1)(C), relation back requires that the basic claim arose out of the conduct set forth in the original pleading, and, "within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment (i) received such notice of the action that it will not be prejudiced in defending on

the merits; and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the party's proper identity." FED. R. CIV. P. 15(c)(1)(C). Second, Rule 15(c)(1)(A), permits "relation back" when the "law that provides the applicable statute of limitations allows" it—which would be New York law in this case. FED. R. CIV. P. 15(c)(1)(A). The Court analyzes both portions of Rule 15 below.

### i.    Rule 15(c)(1)(C)

With respect to Rule 15(c)(1)(C), this Circuit has interpreted Rule 15 to "preclude relation back for amended complaints that add new defendants, where the newly added defendants were not named originally because the plaintiff did not know their identities." *Hogan*, 738 F.3d at 517. This is because lack of knowledge of a John Doe defendant's name does not constitute a "mistake of identity." *Id.* at 518 (citing *Barrow v. Wethersfield Police Dept.*, 66 F.3d 466, 470 (2d Cir. 1995)). As a result, courts have routinely held where, as here, an amended complaint identifies a John Doe defendant *after* the applicable statute of limitations, it does not relate back to the original complaint under Rule 15(c)(1)(C). *See Chinese Am. Citizens All.*, 2024 WL 1795390, at *5 (collecting cases). Accordingly, relation back under Rule 15(c)(1)(C) is not available to Plaintiff here.

### ii.    Rule 15(c)(1)(A)

Plaintiff can, however, establish the necessary requirements under Rule 15(c)(1)(A), which permits "relation back" when the law providing the applicable statute of limitations (here, New York law) allows it. *See Hogan*, 738 F.3d at 518. Plaintiff has pointed to Sections 203(f) and 1024 of the New York Civil Practice Law and Rules. Under CPLR § 1024, a party may seek relation back for a newly added defendant when the party originally lacked knowledge of their identity. N.Y. C.P.L.R. § 1024 (McKinney 2024). Relatedly, pursuant to CPLR § 203(f), "[a]

14

claim asserted in an amended pleading is deemed to have been interposed at the time the claims in the original pleading were interposed, unless the original pleading does not give notice of the transactions, occurrences, or series of transactions or occurrences, to be proved pursuant to the amended pleading." N.Y. C.P.L.R. § 203(f) (McKinney 2024).

Section 203 can be summarily rejected because the Court has already concluded the requirements for Rule 15(c)(1)(C) have not been meet. CPLR Section 203 "closely tracks" Rule 15 (c)(1)(C) of the Federal Rules of Civil Procedure, and a plaintiff may only add a new defendant under Section 203 if "the new party knew or should have known that, but for an *excusable mistake* by plaintiff as to the identity of the proper parties, the action would have been brought against him as well." *Cooper v. City of New York*, No. 17-CV-1517 (NGG), 2019 WL 3642996, at *19 (E.D.N.Y. Aug. 5, 2019) (internal citation omitted and emphasis added). As explained above, Plaintiff's failure to identify the John Does by name cannot be characterized as a mistake, and thus Section 203 similarly does not apply. *Vasconcellos v. City of New York*, No. 12-CV-8445 (CM), 2014 WL 4961441, at *8 (S.D.N.Y. Oct. 2, 2014) (concluding that plaintiff failed to satisfy Rule 15(c)(1)(C) and therefore "fail[ed] to satisfy the state's corollary [Section 203]" as well).

The Court next considers CPLR § 1024. To take advantage of this section, a party must (1) exercise due diligence, prior to the running of the statute of limitations, to identify the defendant by name; and (2) describe the John Doe party in such form as will fairly apprise the party that she is the intended defendant. *Jones v. City of New York*, 571 F. Supp. 3d 118, 130 (S.D.N.Y. 2021) (citing *Bumpus v. New York City Transit Auth.*, 66 A.D.3d 26, 29–30 (2d Dep't 2009)). In addition, because of the interaction between CPLR § 1024 and CPLR § 306-b, as a third requirement, a party must ascertain the identity of the unknown John Doe parties and

effectuate process upon them within 120 days from filing the action. *Bumpus*,66 A.D.3d at 31. However, the deadline may be extended, upon motion, for good cause or in the interest of justice. *Id.*; *see* N.Y. C.P.L.R. § 306-b (McKinney 2024).

With respect to the first element, a plaintiff must exercise due diligence before designating a defendant as "John Doe" by showing that he made diligent efforts to ascertain the identity of the unknown defendant *prior* to commencement of the action and up to and including the expiration of the applicable statute of limitations. *See Bumpus*, 66 A.D.3d at 29. As Plaintiff conceded in his original complaint, he had no idea who the John Does were at the time he filed the original complaint. AC ¶ 81. And in the Amended Complaint, Plaintiff does not allege sufficient steps he took prior to filing the original complaint in order to ascertain the identities of the John Does, aside from a single conversation with Defendant Epstein in August 2022 (*id.* ¶ 84) and a lunch meeting with Epstein (*id.* ¶¶ 80–83) the day he filed the original complaint on July 28, 2023. Students MTD Opp. at 12–13. Indeed, even after filing the original complaint, Plaintiff waited nearly four months before seeking leave of this Court to serve subpoenas to identify the John Does to effectuate service. *See* ECF Nos. 10, 11.

Plaintiff now asserts—for the first time in his motion for leave to amend reply brief—that he made "six total inquiries" to Defendant Epstein and also spoke with Lee Otis and other "rank and file members" of the Federalist Society. ECF No. 96. at 12–13. While the Court is not *required* to consider these new allegations, it nonetheless opts to do so given the importance of these additions to the potential survival of the Omnibus Claims. *See Atadzhanov v. City of New York*, No. 21-CV-5098, 2022 WL 4331304, at *1 (S.D.N.Y. Sept. 19, 2022) (exercising discretion to consider new factual allegations brought by the *pro se* plaintiff in his opposition brief and sur-reply). These new allegations, while not extensive, are sufficient to demonstrate adequate

diligence prior to expiration of the limitations period. *See DeMarzo v. Cuba Hill Elementary Sch.*, 198 N.Y.S.3d 570, 572 (2d Dep't 2023) (finding adequate diligence where plaintiff conducted online searches).

Construing the allegations in the light most favorable to Plaintiff, who filed this action *pro se*, the original complaint can be read so as to satisfy the second element as well, but only with respect to defamation as it related to the faked photographs and online posts. The original complaint alleged that around July 30, 2022, John Does 1-3 conspired to perpetrate an "internet hoax," which included the forged document allegedly placed in the lobby of Kirkland and Ellis. ECF No. 1 ¶¶ 6–9. The original complaint described the forged document and internet posts with particularity, and therefore could be read to have fairly apprised Student Defendants they were the intended parties. *See Kennedy v. City of New York*, No. 12-CV-4166 (KPF), 2015 WL 6442237, at *5 (S.D.N.Y. Oct. 23, 2015) ("Courts have found that where a plaintiff provides specific contextual information, that may satisfy the description requirement of [CPLR] 1024.").

However, Student Defendants could not have been fairly apprised as to the other alleged defamatory statements, because they were not mentioned in the original complaint, which focused only on the "anonymous internet posts." *See, e.g.,* AC ¶¶ 13, 14, 16. "The main inquiry under Rule 15(c) is whether adequate notice has been given to the opposing party 'by the general fact situation alleged in the original pleading.'" *Pruiss v. Bosse*, 912 F. Supp. 104, 106 (S.D.N.Y. 1996) (quoting *Rosenberg v. Martin*, 478 F.2d 520, 526 (2d Cir. 1973)). And so where, as here, a Plaintiff sets forth "new instances of defamation," it will not relate back for the purposed of Rule 15(c), because it would essentially allow a plaintiff to circumvent the statute of limitations. *Id.* Indeed, the original complaint contains a myriad of allegations about the John Doe defendants (for instance, that they filed a false Title IX report and solicited false sexual harassment reports

from other K&E summer associates) that were removed from the Amended Complaint which also calls into question whether Student Defendants could have been reasonably apprised they were the intended targets. ECF No. 1 at ¶¶ 20–24. Accordingly, only the alleged defamatory statements posted on the internet (and any conduct relating to it) "relate back" under Rule 15. *See Cojocaru v. City Univ. of New York*, No. 19-CV-5428 (AKH), 2020 WL 5768723, at *4 (S.D.N.Y. Sept. 28, 2020) (collecting cases, and concluding no relation back, even though text messages concerned same general subject matter, because they were, among other things, a "separate publication [and] directed toward a different recipient.").

Finally, regarding the third element, Plaintiff consistently sought, and received, extensions to effectuate service. To satisfy the 120-day requirement, Plaintiff initially had to effectuate service of the original complaint by November 25, 2023. However, Plaintiff first sought, and received, in September 2023, an extension from this Court to effectuate service of the original complaint on or before January 24, 2024. *See* ECF Nos. 7, 8. Then, on January 2, 2024, the Court again extended Plaintiff's deadline to serve the summons and complaint on Defendants to until 45 days after Plaintiff received information from the third-party subpoenas. ECF No. 21. On April 29, 2024, Plaintiff, who was then represented by counsel, informed the Court that he received responses to the subpoenas on March 15, 2024, stated his intention to file an amended complaint, and sought an extension to effectuate service of the amended complaint. ECF No. 35. Plaintiff filed the Amended Complaint on May 24, 2024, and all Defendants effectuated waivers of service as to the Amended Complaint. Plaintiff thus satisfies the 120-day requirement in light of the Court's continued grant of extensions to effectuate serve in this action. ECF Nos. 38, 39, 42, 43.

Accordingly, Plaintiff has complied with the requirements under CPLR Section 1024, and his claims are not untimely, but only to the extent they arise from, or relate to, the faked photographs published online and any related online statements regarding Plaintiff being fired for sexual harassment. The other alleged defamatory statements are time-barred.

III.    **Plaintiff Fails to State a Claim for Defamation**

As an initial matter, and as mentioned above, the Court will only consider Plaintiff's defamation claim based on the alleged fake photographs and internet posts. Because only Student Defendants are alleged to have engaged in this conduct, the defamation claim is dismissed as against Defendant Epstein with prejudice.

Proceeding to the merits, Plaintiff asserts that the fake photograph published online, and the related statements purportedly made by Student Defendants on those online posts, are defamatory *per se*, and that he has suffered "special damages" by loss of economic opportunities and reputation. AC ¶¶ 90–100. Student Defendants argue that a review of Exhibit 3 to the Amended Complaint makes clear that the online posts did not actually contain the faked photograph, and that the Amended Complaint otherwise fails to allege the requisite factual specificity as to the other online statements. Student Defs. MTD at 14–20. The Court agrees.

"Defamation is 'the making of a false statement which tends to expose the plaintiff to public contempt, ridicule, aversion or disgrace, or induce an evil opinion of plaintiff in the minds of right-thinking persons, and to deprive plaintiff of their friendly intercourse in society." *3P-733, LLC v. Tawan Davis*, 135 N.Y.S.3d 27, 29–30 (1st Dep't 2020) (cleaned up). "There are two categories of defamation under New York law: libel, for written statements, and slander, for spoken statements." *Carroll v. Trump*, 650 F. Supp. 3d 213, 225 (S.D.N.Y. 2023). The Amended Complaint does not specify whether the alleged defamation is libel or slander, but does specify the following allegedly defamatory statements which the Court has not dismissed: (1) the faked

photograph from June 2022 purportedly published on the internet; and (2) statements made accompanying the online posts regarding the circumstances of Plaintiff's termination and certain of his alleged beliefs and political ideologies. AC ¶¶ 37–41. The Court thus understands that Plaintiff intended to assert a libel *per se* claim with respect to these statements.

Under New York law, a claim for libel requires a plaintiff to allege (1) a written defamatory statement of fact concerning the plaintiff, (2) publication to a third-party, (3) the applicable level of fault, (4) falsity, and (5) special damages or a showing of libel *per se*. *Celle v. Filipino Rep. Enterprises Inc.*, 209 F.3d 163, 176 (2d Cir. 2000). A plaintiff can make a showing of "libel per se" if "it tends to expose the plaintiff to public contempt, ridicule, aversion or disgrace, or to induce an evil opinion of him in the minds of right-thinking persons." *Rinaldi v. Holt, Rinehart & Winston, Inc.*, 42 N.Y.2d 369, 379 (1977); *see also Nolan v. State,* 158 A.D.3d 186, 195, 69 N.Y.S.3d 277 (2018) ("A defamation plaintiff must plead special damages unless the defamation falls into any one of four per se categories: (1) statements charging the plaintiff with a serious crime; (2) statements that tend to injure the plaintiff in her trade, business or profession; (3) statements that impute to the plaintiff a 'loathsome disease'; and (4) statements that impute unchastity to a woman.").

The Court first considers the July 29, 2022 faked photograph attached as Exhibit 1 to the Amended Complaint. Plaintiff contends this fake photograph was posted online by Defendant Iyer on Reddit and Top-Law-Schools.com. AC ¶ 37; ECF No. 38-3. But while the Amended Complaint alleges Defendant Iyer posted the fake photograph to these websites, Exhibit 3 of the Amended Complaint—which Plaintiff refers to as the relevant internet posts for his claims— does not reflect that the fake photograph was actually ever posted. ECF No. 38-3 at RAPAPORT0002–13. Further, the email attached to the Amended Complaint (which is similarly

included in Exhibit 3) from Defendant Garrett to members of the Federalist Society links to the same Top-Law-Schools.com and Reddit.com threads. ECF No. 38-3 at RAPAPORT0001. The fact that the email attached to the Amended Complaint links to the same webpages further indicates that the "internet posts" Rapaport complains of are solely those contained in Exhibit 3.

"Allegations in the complaint that are 'contradicted by more specific allegations or documentary evidence' are not entitled to a presumption of truthfulness." *KatiRoll Co. v. Kati Junction, Inc*., 33 F. Supp. 3d 359, 365 (S.D.N.Y. 2014) (quoting *Kirkendall v. Halliburton*, 707 F.3d 173, 175 n. 1 (2d Cir. 2013)). Accordingly, because the Amended Complaint's exhibits contradict Plaintiff's allegations that the fake photograph was posted to the two websites, Plaintiff has not adequately alleged the photographs were published to a third party, and therefore fails to state a claim for defamation with respect to the faked photograph. *See Koulkina v. City of New York*, 559 F. Supp. 2d 300, 329 (S.D.N.Y. 2008) (where allegations were contradicted by documents attached to complaint, they were insufficient to defeat a motion to dismiss); *see also Richards v. Sec. Res.*, 133 N.Y.S.3d 12, 14 (1st Dep't 2020) (dismissing defamation claim where plaintiff failed to allege that the statements were made to a third party). To the extent Plaintiff alleges that other posts exist beyond those identified in Exhibit 3, as discussed later in this Order, he will be given leave to amend so as to cure this deficiency.

Considering next the statements by anonymous users on the internet posts, Plaintiff alleges the "postings were accompanied by false and defamatory statements that the plaintiff was fired for sexual harassment, was banned from the building and was accompanied by a significant amount of material about his personality, habits, mannerisms, modes of dress and pastimes." AC ¶ 38. The text of the posts also allegedly mentioned "plaintiff's political, ideological and jurisprudential beliefs." *Id.* ¶ 39. But Plaintiff does not allege which individual Defendant made

which statement. Indeed, Plaintiff does not directly allege that Student Defendants made these statements *at all*. Plaintiff states that the postings "were accompanied" by false and defamatory statements, yet only alleges the Student Defendants "produce[ed] two fake photographs" and "twice present[ed] them as genuine." AC ¶¶ 38, 94. This failure is fatal to Plaintiff's claim: to succeed on a claim for defamation, "[a] plaintiff must plead the defamatory statements with some particularity," which requires "a plaintiff to identify the allegedly defamatory statements, the person who made the statements, the time when the statements were made, and the third parties to whom the statements were published." *Unlimited Cellular, Inc. v. Red Points Sols. SL*, 677 F. Supp. 3d 186, 197 (S.D.N.Y. 2023) (cleaned up). At most, the Amended Complaint, read in the light most favorable to Plaintiff, could raise an inference that the Student Defendants anonymously authored the statements. But without being able to ascertain which Defendant made which statement, the Court cannot conduct the remaining analysis: for instance, the "fault" question would need to be analyzed differently as between Defendant Iyer and Defendant Garrett, and the Court is prevented from doing so given the inadequacy of Plaintiff's allegations.

In light of the foregoing, Plaintiff's defamation claim must therefore be dismissed. *See BCRE 230 Riverside LLC v. Fuchs*, 874 N.Y.S.2d 34, 36 (1st Dep't 2009) (dismissing defamation counterclaim where party failed to allege what false statements were and who made them).

## IV.    Plaintiff's Remaining Omnibus Claims Are Dismissed

Plaintiff's remaining Omnibus Claims can be summarily dismissed. Plaintiff's claim for civil conspiracy fails because he has failed to plead any defamation, and without an underlying tort, there can be no conspiracy claim. *See Williams v. Williams*, 53 N.Y.S.3d 152 (2d Dep't 2017) (concluding where plaintiff could not maintain underlying causes of action for fraud, unjust enrichment, or negligent and intentional infliction of emotional distress, plaintiff could similarly not maintain cause of action alleging civil conspiracy); *Arvanitakis v. Lester*, 44

22

N.Y.S.3d 71, 73 (2d Dep't 2016) ("A cause of action alleging conspiracy to commit a tort stands or falls with the underlying tort.").

In addition, Plaintiff's claims for IIED and injurious falsehood are dismissed as duplicative, given that they rely on the same allegations and conduct as the defamation claim. For example, with respect to Plaintiff's claim for injurious falsehood, he claims the "fake photographs and statements" caused him damages, which is the exact same conduct underlying his defamation claim. AC ¶ 102. And while Plaintiff tries to assert the IIED claim "is not duplicative" because "the faked photographs and false statements were only part of the defendants' campaign of destruction," he then goes on to state they are "evidence of their malicious intentions and sheer malevolence." AC ¶¶ 112. This allegation, too, makes clear the alleged tortious conduct underlying the IIED claim is identical to the defamation claim. Both claims are therefore dismissed as duplicative. *See Perez v. Violence Intervention Program*, 984 N.Y.S.2d 348, 349 (1st Dep't 2014) ("The remaining claims of injurious falsehood, tortious interference with prospective contractual/business relations, and intentional infliction of emotional distress should have been dismissed as duplicative of the defamation claim, as they allege no new facts and seek no distinct damages from the defamation claim."); *LoanStreet, Inc. v. Troia*, No. 21-CV-6166 (NRB), 2022 WL 3544170, at *8 (S.D.N.Y. Aug. 17, 2022) (dismissing injurious falsehood claim as duplicative where it related to same set of statements and alleged harm giving rise to the defamation claims).

## V.    Plaintiff's Remaining Claims Against Defendant Epstein Are Not Barred by Section 230 or the Common Interest Privilege

Defendant Epstein argues he is immune, under Section 230 of the Communications Decency Act, from liability for "defamation, false light, IIED, injurious falsehood, and any other claim premised on him having allegedly forwarded emails received from others." Epstein Mem.

at 7. Second, Epstein argues that he is immune from suit for the defamation claim by invoking the common interest privilege and New York's Anti-SLAPP law, both of which require a finding of actual malice. *Id.* at 5–14. As an initial matter, the Court need not address Epstein's argument regarding the common interest privilege because Epstein only intended this argument as a defense to defamation, and Plaintiff's defamation claim has now been dismissed with prejudice as untimely as against Epstein.

The Court also need not address whether Section 230 immunity applies, because any conferred immunity would not bar Plaintiff's claim for fraud and tortious interference, which are the only remaining claims against Epstein. Section 230 of the Communications Decency Act provides that "[n]o . . . user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C § 230(c)(1). Section 230 further provides that "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent" with it. *Id.* § 230(e)(3). Plaintiff alleges Epstein engaged in defamation by "further circulating" an email from Student Defendants (which contained allegedly defamatory statements) to other members of the Federalist Society which Epstein "knew to be false." AC ¶ 95. But while Epstein's forwarding of the relevant emails may have been relevant to Plaintiff's defamation claim, this conduct does not form the basis for Plaintiff's fraud and tortious interference claims. Rather, Plaintiff alleges Epstein "knowingly lied" about the identities of Student Defendants when asked, and that he "repeated his disparagement at every possible opportunity to anyone who would listen." AC ¶¶ 130–131, 139.

Because these allegations embrace and depend on conduct beyond just Epstein's emails, Section 230 would not prevent liability, because doing so would not be "inconsistent" with the

statute. The Court therefore must consider Plaintiff's remaining claims against Defendant Epstein on the merits.

## VI.    Plaintiff Fails to State a Claim for Tortious Interference

To state a claim for tortious interference with economic advantage under New York law, a plaintiff must prove that (1) there is a business relationship between the plaintiff and a third party; (2) the defendant, knowing of that relationship, intentionally interferes with it; (3) the defendant acts with the sole purpose of harming the plaintiff, or, failing that level of malice, uses dishonest, unfair, or improper means; and (4) the relationship is injured. *See Dardashtian v. Gitman*, No. 17-CV-4327 (LLS), 2017 WL 6398718, at *8 (S.D.N.Y. Nov. 28, 2017) (citing *Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 547 F.3d 115, 132 (2d Cir. 2008)).

Plaintiff does not plead sufficient facts to support this claim. Plaintiff merely alleges, in conclusory fashion, that Epstein "repeated his disparagement at every possible opportunity to anyone who would listen." AC ¶ 139. But the Complaint does not identify the substance of any "disparagement" aside from an assertion that Epstein told unnamed and unspecified "others" that Plaintiff was "frequently absent from his classes." *Id.* ¶ 88. Nor does Plaintiff allege Epstein had any awareness of Plaintiff's "contractor position" or his position with the Manhattan Institute, *id.* ¶¶ 140– 141, let alone that Epstein intentionally sought to interfere with those relationships. Plaintiff also provides no information about these positions, mentioning them only in two sentences in the Amended Complaint.

Even assuming Epstein spoke to any entities or individuals associated with these positions—a fact which the Amended Complaint does not allege—Plaintiff does not allege what Epstein communicated to them. *See Evliyaoglu Tekstil A.S. v. Turko Textile LLC*, 2020 WL 7774377, at *2 (S.D.N.Y. Dec. 30, 2020) (dismissing tortious interference claim because, among

other things, plaintiff failed to allege what defendant stated to third parties). Accordingly, because the Amended Complaint contains little more than "unadorned, the defendant-unlawfully-harmed-me accusations," Plaintiff has failed to state a claim for tortious interference, and the claim is dismissed. *Id.* at *2 (cleaned up) (citing *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 110–11, 115 (2d Cir. 2010)).

## VII.    Plaintiff Fails to State a Claim for Fraud

Plaintiff has also failed to state a plausible fraud claim against Defendant Epstein. Under New York law, Plaintiff must allege: (1) a material misrepresentation or omission of fact; (2) made by defendant with knowledge of its falsity; (3) intent to defraud; (4) reasonable reliance on the part of the plaintiff; and (5) resulting damage to the plaintiff. *Skyline Risk Management, Inc. v. Legakis*, 733 F. Supp. 3d 316, 329–30 (S.D.N.Y. 2024) (citing *Structured Cap. Sols., LLC v. Commerzbank AG*, 177 F. Supp. 3d 816, 836 (S.D.N.Y. 2016)). "A plaintiff may bring a fraud claim based on an omission rather than an affirmative misrepresentation only 'if the non-disclosing party has a duty to disclose.'" *Harris v. Pfizer Inc.*, 586 F. Supp. 3d 231, 241 (S.D.N.Y. 2022) (quoting *Remington Rand Corp. v. Amsterdam-Rotterdam Bank*, N.V., 68 F.3d 1478, 1483 (2d Cir. 1995)). In addition, Federal Rule of Civil Procedure 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b).

Plaintiff has not pleaded sufficient facts to satisfy these elements. Here, the gravamen of Plaintiff's fraud claim is that Epstein failed to disclose something to him and thereby omitted a material fact: the identities of Student Defendants. As a result, Plaintiff must allege some duty to disclose by Defendant Epstein, which the Amended Complaint fails to do. Instead, Plaintiff merely insists no "fiduciary duty" is necessary to substantiate his claim. ECF No. 76 ("Epstein

MTD Opp.") at 27–28. Moreover, the Amended Complaint also does not allege, beyond conclusory assertions, that Epstein had any intent to defraud Plaintiff or harm him (or hinder his ability to file suit).

The fraud claim also fails because Plaintiff does not allege compensable damages as a result of the fraud. To sustain a fraud claim, Plaintiff must allege he sustained some pecuniary loss as a result. *Ithaca Cap. Invs. I S.A. v. Trump Panama Hotel Mgmt. LLC*, 450 F. Supp. 3d 358, 369 (S.D.N.Y. 2020) (internal citation omitted). Indeed, a plaintiff can only recover the actual pecuniary loss sustained as a direct result of the alleged fraud. *Joseph v. Mobileye, N.V.*, 225 F. Supp. 3d 210, 218 (S.D.N.Y. 2016) (internal citations omitted). Here, Plaintiff only alleges Defendant Epstein "knowingly lied" about the identities of Student Defendants, which "delay[ed]" his investigation "to determine and identify the true and proper defendants . . . ." AC ¶¶ 130, 133. But Plaintiff did not suffer any actionable injury: Defendant Epstein's failure to disclose the identities of Student Defendants left Plaintiff in the exact same situation as he began, and similarly left him free to exhaust other options to identify Student Defendants. Epstein's non-disclosure did not inhibit or otherwise prevent Plaintiff from proceeding as he eventually did by filing subpoenas. The Amended Complaint does not allege, for example, that Epstein sent Plaintiff on a wild-goose chase by giving him incorrect names or that he falsely promised, in an effort to string Plaintiff along, that he would eventually inform Plaintiff the identities of Student Defendants and failed to do so.

Nonetheless, Plaintiff argues a delay in exercising legal rights is cognizable for a fraud claim, citing *Lawrence v. Houston,* 172 A.D.2d 923 (3d Dep't 1991). Epstein MTD Opp. at 28. But *Lawrence* is plainly distinguishable: there, the defendant advised plaintiff he should not retain a lawyer because he would settle with plaintiff directly when the plaintiff (who was then

27

then 15) turned 21. 172 A.D. 2d at 923. Plaintiff rejected the eventual settlement offer as too low, and ended up filing a lawsuit, alleging that the delay caused him damages because evidence was not preserved in the interim which impacted his ability to prevail at trial. *Id.* Here, in contrast, Plaintiff could have filed this action and sought expedited discovery (as he eventually did) at any point. Plaintiff has thus failed to adequately plead a fraud claim against Defendant Epstein, and it therefore must be dismissed.

## VIII.   Plaintiff's Motion to Disqualify Student Defendants' Counsel Is Denied

The Court denies Plaintiff's request to disqualify Schaerr Jaffe LLP, counsel for Student Defendants, based on the potential for any adverse and conflicting interests. ECF No. 68. The Court need not address the underlying substance of Plaintiff's assertions because any conflict that may exist between Defendants Garrett and Iyer are waived, given both have consented to be represented by Schaerr Jaffe. Indeed, Student Defendants each filed sworn declarations to this effect. ECF Nos. 75-1, 75-2. Accordingly, Plaintiff's motion for disqualification is denied.

## IX.   Plaintiff's Motion for Leave to Amend Is Granted in Part and Denied in Part

Plaintiff's motion for leave to amend is partially granted. "Leave to amend should be freely given, and a *pro se* litigant in particular should be afforded every reasonable opportunity to demonstrate that [he] has a valid claim." *Atherley v. N.Y.C. Dep't of Educ.*, No. 23-CV-383 (JGLC), 2024 WL 1345741, at *13 (S.D.N.Y. Mar. 29, 2024) (internal citation omitted). The Second Circuit interprets Rule 15 of the Federal Rules of Civil Procedure liberally "consistent with [its] strong preference for resolving disputes on the merits." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) (internal quotation marks and citation omitted); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) ("If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded

an opportunity to test his claim on the merits."). However, "[l]eave may be denied 'for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party.'" *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).

The Court finds that permitting Plaintiff to amend the complaint would not be futile, overly prejudicial, or cause undue delay. *Loc. 3599, N.Y.C. Dep't of Env't Prot. Tech. Pro. Emps. v. City of New York*, No. 23-CV-1035 (JGLC), 2024 WL 966077, at *16 (S.D.N.Y. Mar. 6, 2024). Although Plaintiff amended his complaint once, he has not previously had an opportunity to cure the deficiencies of which he is now on notice. And based on a cursory review of his proposed SAC, some pleading deficiencies have already been addressed, including, for example, more allegations relevant to his tortious interference claim against Defendant Epstein. *See* ECF No. 78 ¶¶ 101–104. Accordingly, the Court will permit Plaintiff to file a second amended complaint with respect to the defamation (based on the internet postings), civil conspiracy, fraud, and tortious interference claims only. Further directives with respect to this amended complaint are in the Conclusion Section.

## X.    The Court *Sua Sponte* Consolidates This Action with its Related Action

Finally, the Court *sua sponte* consolidates this action with *Rapaport v. Epstein, et al.,* No. 24-cv-7439 (the "Related Action") for all purposes. By order dated March 5, 2025 in the Related Action (ECF No. 54), the Court noted that it was inclined to consolidate these two matters given the overlapping parties, issues, and claims, and stated that it would provide further instructions with respect to consolidation in this Order. The Court now does so.

Rule 42 of the Federal Rules of Civil Procedure permits a court to consolidate cases that "involve a common question of law or fact." Fed. R. Civ. P. 42(a)(2). "In assessing whether consolidation is appropriate in given circumstances," a court "should consider both equity and

judicial economy." *Devlin v. Transp. Commc'ns Int'l Union*, 175 F.3d 121, 130 (2d Cir. 1999). District courts enjoy substantial discretion in deciding whether and to what extent to consolidate cases and may even consolidate cases *sua sponte*. *See Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990). Here, the Court sees no concern regarding, potential confusion, prejudice, or risks to impartiality of a trial, and as noted, consolidation would promote efficiency. *Id.* Because the Court has granted Plaintiff leave to amend certain claims in this action, and Plaintiff has been given an opportunity to elect to file another complaint in the Related Action, in the interest of efficiency and economy, the Court determines consolidation is appropriate. *See Stauffer v. Trump*, No. 24-CV-5698 (LTS), 2024 WL 3876307, at *3 (S.D.N.Y. Aug. 19, 2024).

While the Court finds consolidation of this matter with the Related Action promotes judicial efficiency and economy, the Court does not, at this time, consolidate this action with the *Finkelman* action. However, the Court may consider consolidation as to that action at a later time.

## CONCLUSION

For the reasons stated above, the Court GRANTS Student Defendants' motion to dismiss, and GRANTS in part and DENIES in part Defendant Epstein's motion to dismiss. Plaintiff's false light and invasion of privacy, injurious falsehood, and IIED claims are DISMISSED with prejudice, and the other claims are DISMISSED without prejudice as set forth in this Order. Plaintiff's motion to disqualify Student Defendants' counsel is also DENIED.

The Clerk of Court is respectfully directed to consolidate this action with the Related Action (*Rapaport v. Epstein, et al.,* No. 24-CV-7439) and to designate that action as the lead case given all the parties have been named therein. Plaintiff is directed to file a single, amended complaint (which Plaintiff shall title the "First Consolidated Amended Complaint") that may (1)

address any deficiencies with respect to his defamation claim based on the internet posts, his claim for civil conspiracy, and his tortious interference and fraud claims against Defendant Epstein as set forth herein; and (2) amend or otherwise correct the claims raised in the Related Action. Defendants in both actions will then have an opportunity to renew any motions to dismiss they intend to file thereafter. For the avoidance of doubt, the Court emphasizes this First Consolidated Amended Complaint must include all allegations and claims that Plaintiff seeks to raise related to the conduct at issue against the Defendants in both actions (including, for instance, his civil RICO and antitrust claims, even if Plaintiff does not intend to amend those claims or allegations). Plaintiff shall file the First Consolidated Amended Complaint, consistent with this Order, on or before **May 2, 2025**. In light of the motions to dismiss in both actions, the Court warns Plaintiff that further amendments are unlikely to be granted.

The Clerk of Court is further, and respectfully, directed to terminate ECF Nos. 50, 53, and 77.

Dated:  March 31, 2025
        New York, New York

SO ORDERED.

JESSICA G. L. CLARKE
United States District Judge